# EXHIBIT
# 2

# ABA STANDARDS *and* RULES *of* PROCEDURE *for* APPROVAL *of* LAW SCHOOLS

## 2014–2015



AMERICAN BAR ASSOCIATION

Section of Legal Education
and Admissions to the Bar

Cover design by Tamara Kowalski/ABA Publishing.

Page Layout by Quadrum Solutions.

The 2014-2015 ABA Standards and Rules of Procedure for Approval of Law Schools were adopted by the Council of the ABA Section and Legal Education and Admissions to the Bar and concurred in by the ABA House of Delegates in August 2014.

© 2014 American Bar Association. Permission is granted to reprint, but not for profit, all or part of this publication, provided reference is made to this publication. All other rights reserved.

To order copies of this publication contact the ABA Service Center at 800.285.2221 or order online at www.ababooks.org. The ABA product code number for this publication is 529008414ED. The price for this publication is $15.00.

This publication is also available in its entirety at the Section's Web page: www.americanbar.org/legaled.

Printed in the United States of America.

18 17 16 15 14  5 4 3 2 1

Cataloging-in-Publication Data is on file with the Library of Congress

ISBN: 978-1-62722-872-5

Discounts are available for books ordered in bulk. Special consideration is given to state bars, CLE programs, and other bar-related organizations. Inquire at Book Publishing, ABA Publishing, American Bar Association, 321 N. Clark Street, Chicago, Illinois 60654-7598.

www.ShopABA.org

# Contents

Introduction to the 2014-2015 Edition.........................................................................................v

Preface ...........................................................................................................................................vii

Definitions ....................................................................................................................................xi

2014-2015 Standards for Approval of Law Schools (Revised Standards) .................................1

Rules of Procedure for Approval of Law Schools ....................................................................47

Key Word Index .........................................................................................................................79

2013-2014 Standards for Approval of Law Schools................................................................89

Criteria for Approval of Foreign Summer and Intersession Programs

Established by ABA-Approved Law Schools.........................................................................145

Criteria for Accepting Credit for Student Study at a Foreign Institution ..............................153

Criteria for Approval of Foreign Semester and Year-Long Study Abroad

Programs Established by ABA-Approved Law Schools .......................................................157

Section Bylaws..........................................................................................................................165

Appendix 1: Statement on Academic Freedom and Tenure....................................................179

Appendix 2: LSAC Cautionary Policies Concerning LSAT Scores .......................................181

Appendix 3: Guidance on Interpretation 301-6 .....................................................................183

# Introduction to the *2014-2015 ABA Standards and Rules of Procedure for Approval of Law Schools*

The 2014-2015 edition of the ABA Standards and Rules of Procedure book is substantially different than its predecessors. These changes are the consequence of several developments, the most important of which is the adoption by the Council of a revised set of Standards and restated Rules of Procedure.

The intention is to produce a book that will be useful to law school faculty and administrators and to those who volunteer their time in the ABA Law School Accreditation Project.

**This book includes:**

- The revised Standards and Rules that resulted from the 2008-2014 Comprehensive Review of the Standards that were concurred in by the ABA House of Delegates in August 2014. These Standards became effective on August 12, 2014, at the conclusion of the ABA Annual Meeting.

- The Standards that were operative in 2013-2014, prior to the Council's action adopting new and revised Standards. Because it will take time for schools and our processes to adjust to the new Standards, these prior Standards will continue to be important.

- The revised and new Rules of Procedure for Approval of Law Schools, which have been adopted by the Council and concurred in by the ABA House of Delegates. They became effective on August 12, 2014.

The Section's website (www.americanbar.org/legaled) also includes a redlined copy showing the changes to the prior Standards. You can find it on the Standards for Approval of Law school page. There is also considerable history of the Standards review process on the Standards Review Committee page.

Other changes from prior editions include an updated Preface and the deletion of the Preamble. The Statement of Ethical Practices have been folded into the Internal Operating Practices (IOPs). The IOPs, the Council Statements, and the Consultant's Memos (renamed Guidance Memos) are no longer included the book but can be found on the Standards page of the Section's website: http://www.americanbar.org/groups/legal_education/resources/standards.html.

Both the new and prior Standards are included in this publication because there are a number of transition issues with which the Council, Accreditation Committee, and schools with site visits in the next three years will have to deal. The Managing Director's Office will be providing guidance to schools on these matters, and that guidance will be posted on the Section's website. At the time this publication goes to press, that guidance is still being developed.

# Preface

## Scope of Accrediting Authority

All jurisdictions have set minimal educational requirements to qualify a person for eligibility to sit for the bar examination. Almost all rely exclusively on ABA approval of a law school to determine whether the jurisdiction's legal education requirement for admission to the bar is satisfied. In all states, graduation from an ABA-approved law school is sufficient to meet these requirements although a small number of states have now added requirements in addition to the ABA requirements. Whether a jurisdiction requires education at an ABA-approved law school is a decision made by a jurisdiction's highest court and its bar admission authority and not by the Council or the ABA. The Council and the ABA believe, however, that every candidate for admission to the bar should have graduated from a law school approved by the ABA and that every candidate for admission should be examined by public authority to determine fitness for admission.

Since 1952, the Council of the Section of Legal Education and Admissions to the Bar (the Council) of the American Bar Association (the ABA) has been approved by the United States Department of Education as the recognized national agency for the accreditation of programs leading to the J.D. degree. United States Department of Education rules require an accrediting agency within a professional association to operate separately and independently from the association of which it is part. Therefore, it is the Council and its Accreditation Committee not the ABA that are the recognized accreditor. Nonetheless, for ease of reference, law schools accredited by the Council are referred to as "ABA-approved."

## History

The ABA in 1879 established the Standing Committee on Legal Education and Admissions to the Bar as one of the ABA's first committees. In 1893, the Section of Legal Education and Admissions to the Bar was established as the Association's first section. Recognizing the need to take further steps to improve legal education, the Section leadership played the major role in creating the Association of American Law Schools (AALS) in 1900. Today, the AALS is a law school membership organization with membership requirements different from the Standards. The AALS is not an accrediting agency.

In 1921 the American Bar Association promulgated it first *Standards for Legal Education*. At the same time, the ABA began to publish a list of ABA-approved law schools that met the ABA Standards.

## Revisions of the Standards, Interpretations and Rules of Procedure through 1996

*The Revisions of the Early 1970s*
A major revision of the 1921 Standards was undertaken in the early 1970s. After an extensive comment process, the revised Standards and the Rules of Procedure were adopted by the Section of Legal Education and Admissions to the Bar in August, 1972, and were approved by the ABA House of Delegates in February, 1973.

*Ramsey Commission*
In 1988 Judge Henry Ramsey, Jr., of the Alameda County, California, Superior Court and Chair-Elect of the Section, was asked to chair a study of the accreditation process. As a result of the work of the Ramsey Commission, a number of revisions to the Rules of Procedure were adopted in 1989.

*Department of Justice Consent Decree*
In June 1995, the United States Department of Justice filed a civil antitrust suit against the ABA, alleging violations of antitrust laws in the accreditation program. The civil suit was concluded by a final Consent Decree that was approved in June 1996. It included a number of requirements concerning the Standards, which the Council subsequently approved. The Consent Decree was in force for a period of ten years and expired by its own terms on June 25, 2006. The Council has determined, however, that after the expiration of the Consent Decree, accreditation processes and procedures will continue to observe the substantive provisions of the Consent Decree.

*The Wahl Commission and the 1996 Revisions of the Standards*
In 1992, the Council launched a formal revision of the Standards and their Interpretations. In the midst of that review, in April 1994, the Council established the Commission to Study the Substance and Process of the American Bar Association's Accreditation of American Law Schools. Justice Rosalie E. Wahl of the Supreme Court of Minnesota, and a former chair of the Section, accepted appointment as Commission chair. The Wahl Commission's mandate was to conduct a thorough, independent examination of all aspects of law school accreditation by the ABA. On the basis of hearings, solicited written comments, and surveys, the Commission prepared a report for submission at the 1995 annual meeting of the ABA.

The Consent Decree, however, required that the ABA establish a special commission to determine whether the Standards, Interpretations, and Rules of Procedure should be revised in some respects. It was agreed by the Department of Justice and the ABA that the Wahl Commission's mandate would be enlarged to include these matters and that the Commission's tenure would be continued. In response to this additional mandate, in November 1995 the Wahl Commission submitted a supplement to its August 1995 report.

The four-year revision process that began in 1992 and culminated with the work of the Wahl Commission focused both on the form and the substance of the Standards and Interpretations. After extensive opportunity for comment, the revised Standards were approved by the Council and adopted by the House of Delegates in August, 1996.

## Review of the Standards, Interpretations and Rules of Procedure Since 1996

Proposed revisions to the Standards, Interpretations and Rules of Procedure are subject to an extensive public comment process. Proposed revisions are widely distributed for comment, and comment is solicited by letter and e-mail, and at public hearings. Proposed revisions are then carefully considered in light of the comment received before any final action is taken.

The Council, with the assistance of the Standards Review Committee, regularly reviews and revises the Standards and Interpretations to ensure that they are appropriate requirements for current legal education programs and that they focus on matters that are central to the provision of quality legal education. A comprehensive review of the Standards and Interpretations was undertaken during 1996–2000. Another

such comprehensive review was undertaken from 2003 through 2006. The most recent comprehensive review commenced in fall 2008. The Council approved the revisions in June 2014 and they were concurred in by the House of Delegates in August 2014.

In the summer of 2004, the Council appointed a Rules Revision Committee, chaired by Provost E. Thomas Sullivan of the University of Minnesota (a former chair of the Section), to undertake and recommend a comprehensive revision of the Rules. In June 2005 the Council accepted the Committee's report and shortly thereafter distributed for comment a proposed comprehensive revision of the Rules. The Council adopted the comprehensive revision of the Rules of Procedure in December 2005 and the House of Delegates concurred in those revisions in February 2006. The Rules of Procedure have undergone a thorough review as part of the most recent comprehensive review of the Standards (2008-2014) and were concurred in by the House of Delegates in August 2014.

## Council Responsibility

The Council grants provisional and full ABA approval to law schools located in the United States, its territories, and possessions. It also adopts the Standards for Approval of Law Schools and the Interpretations of those Standards, and the Rules of Procedure that govern the law school accreditation process. The Council also must grant prior acquiescence in any major changes that are proposed by an approved law school and may impose sanctions for noncompliance with the Standards.

## ABA House of Delegates Responsibility

In August 2010, the role of the ABA House of Delegates in accreditation matters was revised in order to comply with new Department of Education requirements regarding appeals. Prior to August 2010, a school that was denied provisional or full approval by the Council was able to file an appeal to the House of Delegates. The House of Delegates could either concur in the Council's decision or refer that decision back to the Council for further consideration. A decision of the Council was final after referral from the House of Delegates a maximum of two times in the case of decisions denying provisional or full approval, or once in the case of decisions to withdraw approval from a school. As a result of the changes in August 2010, the House of Delegates no longer has a role in the appeals process. (See Rule 57 and IOP 19.)

Any decision of the Council to adopt any revisions to the Standards, Interpretations or Rules of Procedure must be reviewed by the House of Delegates. The House either concurs in those revisions or refers them back to the Council for further consideration. The Council's decision after the second referral back is final.

## Contents of This Publication

*Standards and Interpretations*
The Standards contain the requirements a law school must meet to obtain and retain ABA approval. Interpretations that follow the Standards provide additional guidance concerning the implementation of a particular Standard.

*Rules of Procedure*
The Rules of Procedure govern the accreditation process and the process through which decisions concerning the status of individual schools are made. The Rules also contain provisions related to the operation of the Office of the Managing Director.

*Criteria for Approval of Foreign Programs*

Under its authority to adopt rules implementing the Standards, the Council has adopted criteria for the approval of studies or activities leading to credit for the J.D. degree that are undertaken outside the United States. Those Criteria include the Criteria for Approval of Foreign Summer and Intersession Programs, the Criteria for Approval of Semester and Year-Long Study Abroad Programs, and the Criteria for Accepting Credit for Student Study at a Foreign Institution. The Council has delegated to the Accreditation Committee the authority to approve programs under the Criteria.

*Additional Procedures and Guidelines* (Available online at: http://www.americanbar.org/groups/legal_education/resources/standards.html)

Internal Operating Practices provide direction concerning the operation of accreditation functions and other activities of the Office of the Managing Director. Council Statements are positions that the Council has taken on various matters that do not have the force of a mandatory Standard or Interpretation. Guidance Memos are issued periodically to assist schools in coming into compliance with the Standards.

# Definitions

As used in the Standards, Interpretations, and Rules of Procedure:

(1) "Accreditation Committee" or "Committee" means the Accreditation Committee of the Section.

(2) "Approved law school" means a fully approved law school that the Council or Accreditation Committee has determined meets the requirements of Standard 103 or a provisionally approved law school that the Council or the Accreditation Committee has determined meets the requirements of Standard 102.

(3) "Association" means the American Bar Association.

(4) "Branch campus" means a type of separate location at which a student may earn more than two-thirds of the credit hours that the law school requires for the award of a J.D.

(5) "Council" means the Council of the Section.

(6) "Dean" means the chief administrative officer of a law school and includes an acting or interim dean.

(7) "Full-time faculty member" means an individual whose primary professional employment is with the law school, who is designated by the law school as a full-time faculty member, who devotes substantially all working time during the academic year to responsibilities described in Standard 404(a), and whose outside professional activities, other than those described in Standard 404(a), if any, do not unduly interfere with his or her responsibilities as a full-time faculty member.

(8) "Governing board" means a board of trustees, board of regents, or comparable body that has ultimate policy making authority for a law school or the university of which the law school is a part.

(9) "House" means the House of Delegates of the American Bar Association.

(10) "Interpretations" mean the Interpretations of the Standards for Approval of Law Schools.

(11) "J.D. degree" means the professional degree in law granted upon completion of a program of legal education that is governed by the Standards.

(12) **"Managing Director"** means the Managing Director of the Section of Legal Education and Admissions to the Bar of the American Bar Association.

(13) **"President"** means the chief executive officer of a university or, if the university has more than one administratively independent unit, of the independent unit. If a law school is not part of a university, "president" refers to the chief executive officer of any entity that owns the law school, if there is such a person, or else the Chair of the Board of Directors of the law school.

(14) **"Probation"** is a public status indicating that a law school is not being operated in compliance with the Standards and is at risk of having its approval withdrawn.

(15) **"Rules"** mean the Rules of Procedure for Approval of Law Schools.

(16) **"Section"** means the Section of Legal Education and Admissions to the Bar of the American Bar Association.

(17) **"Separate location"** means a location within the United States at which the law school offers more than sixteen credit hours of the program of legal education and that is not in reasonable proximity to the law school's main location.

(18) **"Standards"** mean the Standards for Approval of Law Schools.

(19) **"University"** means a post-secondary educational institution, whether referred to as a university, college, or by any other name, that confers a baccalaureate degree (and may grant other degrees).

# 2014-2015 Standards for Approval of Law Schools (Revised Standards)

## Contents

**Chapter 1: General Purposes and Practices** ........................................................................................ 3

Standard 101. Basic Requirements for Approval ................................................................... 3

Standard 102. Provisional Approval ...................................................................................... 3

Standard 103. Full Approval ................................................................................................... 4

Standard 104. Provision of Information by Law Schools to Accreditation Committee and Council ........ 5

Standard 105. Acquiescence for Major Change in Program or Structure ................................ 5

Standard 106. Separate Locations and Branch Campuses ...................................................... 6

Standard 107. Variances ........................................................................................................ 7


**Chapter 2: Organization and Administration** ................................................................................. 9

Standard 201. Law School Governance ................................................................................. 9

Standard 202. Resources for Program ................................................................................. 10

Standard 203. Dean .............................................................................................................. 10

Standard 204. Self Study ...................................................................................................... 11

Standard 205. Non-Discrimination and Equality of Opportunity .......................................... 11

Standard 206. Diversity and Inclusion ................................................................................. 12

Standard 207. Reasonable Accommodation for Qualified Individuals with Disabilities ........................ 13


**Chapter 3: Program of Legal Education** ........................................................................................ 15

Standard 301. Objectives of Program of Legal Education ................................................... 15

Standard 302. Learning Outcomes ....................................................................................... 15

Standard 303. Curriculum .................................................................................................... 16

Standard 304. Simulation Courses and Law Clinics ............................................................ 17

Standard 305. Field Placements and Other Study Outside the Classroom ........................... 18

Standard 306. Distance Education ........................................................................................ 19

Standard 307. Studies, Activities, and Field Placements Outside the United States ............. 20

Standard 308. Academic Standards ...................................................................................... 20

Standard 309. Academic Advising and Support ................................................................... 21

Standard 310. Determination of Credit Hours for Coursework ............................................ 21

Standard 311. Academic Program and Academic Calendar .................................................. 21

Standard 312. Reasonably Comparable Opportunities ......................................................... 23

1

Standard 313. Degree Programs in Addition to J.D. ............................................................. 23
Standard 314. Assessment of Student Learning ................................................................... 23
Standard 315. Evaluation of Program of Legal Education, Learning Outcomes,
     and Assessment Methods ............................................................... 24
Standard 316. Bar Passage ................................................................................................. 24

**Chapter 4: The Faculty** ...................................................................................................... 27
Standard 401. Qualifications .............................................................................................. 27
Standard 402. Size of Full-Time Faculty ........................................................................... 27
Standard 403. Instructional Role of Faculty ...................................................................... 28
Standard 404. Responsibilities of Full-Time Faculty ......................................................... 28
Standard 405. Professional Environment ........................................................................... 29

**Chapter 5: Admissions and Student Services** ................................................................. 31
Standard 501. Admissions ................................................................................................. 31
Standard 502. Educational Requirements ........................................................................... 32
Standard 503. Admission Test ........................................................................................... 33
Standard 504. Qualifications for Admission to the Bar ...................................................... 33
Standard 505. Granting of J.D. Degree Credit for Prior Law Study .................................... 34
Standard 506. Enrollment of Non-Degree Candidates ........................................................ 34
Standard 507. Student Loan Programs ............................................................................... 34
Standard 508. Student Support Services ............................................................................. 35
Standard 509. Required Disclosures ................................................................................... 35
Standard 510. Student Complaints Implicating Compliance with the Standards ................... 36

**Chapter 6: Library and Information Resources** .............................................................. 39
Standard 601. General Provisions ...................................................................................... 39
Standard 602. Administration ............................................................................................ 40
Standard 603. Director of the Law Library ......................................................................... 40
Standard 604. Personnel .................................................................................................... 41
Standard 605. Services ...................................................................................................... 41
Standard 606. Collection ................................................................................................... 41

**Chapter 7: Facilities, Equipment, and Technology** ......................................................... 45
Standard 701. General Requirements ................................................................................. 45
Standard 702. Facilities ..................................................................................................... 46

# CHAPTER 1
# General Purposes and Practices

## Standard 101. BASIC REQUIREMENTS FOR APPROVAL

(a)  A law school seeking approval by the Council shall demonstrate that it is being operated in compliance with the Standards.

(b)  Approval of a law school by the Council is not transferable. A transfer of all, or substantially all, of the academic programs or assets of (1) a law school, or (2) a university or college of which the law school is a part does not include the transfer of the law school's approval.

## Standard 102. PROVISIONAL APPROVAL

(a)  The Council shall grant provisional approval to a law school if at the time the school seeks such approval it demonstrates that it has achieved substantial compliance with the Standards and presents a reliable plan for bringing the law school into full compliance with each of the Standards within three years after receiving provisional approval. In order to demonstrate that it has a reliable plan to come into full compliance with the Standards within three years after receiving provisional approval, a law school must clearly state the specific actions that it

plans to take to bring the school into full compliance and demonstrate that there is a reasonable probability that such actions will be successful. A provisionally approved law school may apply for full approval no earlier than two years after receiving provisional approval and must obtain full approval within five years after receiving provisional approval.

(b)  The Council may withdraw provisional approval if the Council determines that the law school is no longer in substantial compliance with the Standards, is not making adequate progress toward achieving full compliance with each of the Standards, or is no longer able to demonstrate that there is a reasonable probability that the school will achieve full compliance with each of the Standards within the allotted time frame.

(c)  If five years have elapsed since the law school was provisionally approved and the Council has not granted full approval, provisional approval shall terminate. Before the end of the five-year period in an extraordinary case and for good cause shown, the Council may extend the time within which the law school must obtain full approval.

(d)  A provisionally approved law school shall not offer a post-J.D. degree program or other non-J.D. degree program, offer a program in a country outside the United States, or seek to establish a separate location.

(e)  A provisionally approved law school shall state that it is provisionally approved in all of its printed and electronic materials describing the law school and its program and in any other publication that references the law school's approval by the Council.

(f)  A law school seeking provisional approval shall make its status clear in any printed and electronic materials describing the law school and its program and in any other publication that references the law school's approval status. At a minimum, the law school shall state the following in all such communications:

The law school is not currently approved by the Council of the Section of Legal Education and Admissions to the Bar of the American Bar Association and makes no representation to any applicant that it will receive approval from the Council before the graduation of any matriculating student.

(g)  A law school seeking provisional approval shall not delay conferring a J.D. upon a student in anticipation of obtaining approval. An approved law school may not retroactively grant a J.D. degree as an approved school to a student who graduated from the law school before its approval.

## Interpretation 102-1
*Plans to achieve substantial compliance with any of the Standards are not sufficient to demonstrate substantial compliance.*

# Standard 103. FULL APPROVAL

(a)  The Council shall grant full approval to a provisionally approved law school if at the time the school seeks such approval it demonstrates that it is in full compliance with each of the Standards. Plans to achieve full compliance with any Standard are not sufficient to demonstrate full compliance.

(b) A law school granted approval under this Standard remains approved unless the Council withdraws that approval.

## Standard 104. PROVISION OF INFORMATION BY LAW SCHOOLS TO ACCREDITATION COMMITTEE AND COUNCIL

A law school shall furnish a completed annual questionnaire, self-study, site evaluation questionnaire, and such other information as the Accreditation Committee or Council may require. This information must be complete, accurate, and not misleading, and must be submitted in the form, manner, and time frame specified by the Council.

## Standard 105. ACQUIESCENCE FOR MAJOR CHANGE IN PROGRAM OR STRUCTURE

(a) Before a law school makes a major change in its program of legal education or organizational structure, it shall obtain the acquiescence of the Council for the change. A major change in program or structure that requires application for acquiescence includes:

(1) Acquiring another law school, program, or educational institution;

(2) Acquiring or merging with another university by the parent university where it appears that there may be substantial impact on the operation of the law school;

(3) Transferring all, or substantially all, of the program of legal education or assets of the approved law school to another law school or university;

(4) Merging or affiliating with one or more approved or unapproved law schools;

(5) Merging or affiliating with one or more universities;

(6) Materially modifying the law school's legal status or institutional relationship with a parent institution;

(7) A change in control of the school resulting from a change in ownership of the school or a contractual arrangement;

(8) A change in the location of the school that could result in substantial changes in the faculty, administration, student body, or management of the school;

(9) Establishing a branch campus;

(10) Establishing a separate location;

(11) A significant change in the mission or objectives of the law school; and

(12) The addition of courses or programs since the most recent AC period, such as that represent a significant departure from existing offerings or method of delivery since the last most recent accreditation period including combined undergraduate and J.D. programs, such as 2/4, 4/2 programs, and programs leading to a J.D. and a first-degree program at foreign institution; instituting a new full-time or part-time division; or changing from a full-time to a part-time program or from a part-time to a full-time program;

    **(13)** The addition of a permanent location at which the law school is conducting a teach-out for students at another law school that has ceased operating before all students have completed their program of study;

    **(14)** Contracting with an educational entity that is not certified to participate in Title IV, HEA programs, that would permit a student to earn 25 percent or more of the course credits required for graduation from the approved law school;

    **(15)** Establishing a new or different program leading to a degree other than the J.D. degree;

    **(16)** A change in program length measurement from clock hours to credit hours; and

    **(17)** A substantial increase in the number of clock or credit hours required for graduation.

**(b)** The Council shall grant acquiescence only if the law school demonstrates that the change will not detract from the law school's ability to remain in compliance with the Standards.

## Standard 106. SEPARATE LOCATIONS AND BRANCH CAMPUSES

**(a)** A law school that offers a separate location shall provide:

    **(1)** Full-time faculty adequate to support the curriculum offered at the separate location and who are reasonably accessible to students at the separate location;

    **(2)** Library resources and staff that are adequate to support the curriculum offered at the separate location and that are reasonably accessible to the student body at the separate location;

    **(3)** Academic advising, career services and other student support services that are adequate to support the student body at the separate location and that are reasonably equivalent to such services offered to similarly situated students at the law school's main location;

    **(4)** Access to co-curricular activities and other educational benefits adequate to support the student body at the separate location; and

    **(5)** Physical facilities and technological capacities that are adequate to support the curriculum and the student body at the separate location.

**(b)** In addition to the requirements of section (a), a branch campus must:

    **(1)** Establish a reliable plan that demonstrates that the branch campus is reasonably likely to be in substantial compliance with each of the Standards within three years of the effective date of acquiescence as required by Rule 22;

    **(2)** Comply with instructional requirements and responsibilities as required by Standard 403(a) and Standard 404(a); and

    **(3)** Offer reasonably comparable opportunities for access to the law school's program of legal education, courses taught by full-time faculty, student services, co-curricular programs, and other educational benefits as required by Standard 311.

**(c)** A law school is not eligible to establish a separate location until at least four years after the law school is granted initial full approval.

### Interpretation 106-1

*"Separate location" and "branch campus" as used in this Standard are defined terms that apply only to locations at which a law school offers more than sixteen credits of the program of legal education.*

### Interpretation 106-2

*A law school with more than one location may have one dean for all locations.*

## Standard 107. VARIANCES

(a)  A law school proposing to make any change that is or may be inconsistent with one or more of the Standards may apply to the Council for a variance only on one of the following bases:

   (1)  A law school may apply for a variance in response to extraordinary circumstances in which compliance with the relevant Standard or Standards would create or constitute extreme hardship for the law school and/or its students. In such cases, the law school must demonstrate that: i) the proposed variance is consistent with the general purposes and objectives of the overall Standards, and ii) the anticipated benefits of granting the variance outweigh any anticipated harms to the law school's program or its students.

   The variance, if granted, will be for a term certain and limited to the expected duration of the extraordinary circumstances on the basis of which it was granted. It may be extended once for a further term certain, but only if the extraordinary circumstances persist and are beyond the control of the law school.

   The decision granting a variance on this basis may require the law school to report to the Managing Director, the Accreditation Committee, or the Council regularly as specified in the decision.

   (2)  In all variance applications that do not fall within subsection (a)(1), the law school must demonstrate that: i) the proposed variance is consistent with the general purposes and objectives of the overall Standards, ii) the proposed changes or actions that are the basis for the requested variance are experimental or innovative and have the potential to improve or advance the state of legal education, and iii) the anticipated benefits of granting the variance outweigh any anticipated harms to the law school's program or its students.

   The variance, if granted, shall be for a term certain and can be extended once, with the extension being for a further term certain or indefinite, but subject to revocation on the basis of either a change in the showing made by the law school when the variance was granted or a change in circumstances.

   The decision granting a variance on this basis may require the law school to report to the Managing Director, the Accreditation Committee or the Council regularly as specified in the decision.

(b)  If the changes that are the subject of the application for a variance constitute or come to constitute a major change in programs or structure under Standard 105 or 106, then the law school shall seek acquiescence by the Council in order to initiate or continue the changes.

(c)  A variance, when granted, is school specific and shall be based on and limited to the facts and circumstances that existed at the law school at the time it applied for the variance.

# CHAPTER 2

# Organization and Administration

## Standard 201. LAW SCHOOL GOVERNANCE

(a)  The dean and the faculty shall have the primary responsibility and authority for planning, implementing, and administering the program of legal education of the law school, including curriculum, methods of instruction and evaluation, admissions policies and procedures, and academic standards.

(b)  The dean and the faculty shall recommend the selection, retention, promotion, and tenure (or granting of security of position) of members of the faculty.

(c)  The dean and the faculty shall each have a significant role in determining educational policy.

(d)  The policies of a university that are applicable to a law school shall be consistent with the Standards. The law school shall have separate policies where necessary to ensure compliance with the Standards.

(e)  A law school that is not part of a university shall be governed by a board with responsibility and authority for ensuring operation of the law school in compliance with the Standards.

## Standard 202. RESOURCES FOR PROGRAM

**(a)**   **The current and anticipated financial resources available to the law school shall be sufficient for it to operate in compliance with the Standards and to carry out its program of legal education.**

**(b)**   **A law school that is part of a university shall obtain at least annually from its university an accounting and explanation for all charges and costs assessed against resources generated by the law school and for any use of resources generated by the law school to support non-law school activities and central university services.**

**(c)**   **A law school is not in compliance with the Standards if its current financial condition has a negative and material effect on the school's ability to operate in compliance with the Standards; or to carry out its program of legal education.**

**(d)**   **A law school is not in compliance with the Standards if its anticipated financial condition is reasonably expected to have a negative and material effect on the school's ability to operate in compliance with the Standards; or to carry out its program of legal education.**

**(e)**   **A law school shall be given the opportunity to present its recommendations on budgetary matters to the university administration before the budget for the law school is submitted to the governing board for adoption.**

### Interpretation 202-1

*"Resources generated" includes law school tuition and fees, appropriated support, endowment restricted to the law school, gifts to the law school, and revenue from grants, contracts, and property of the law school.*

## Standard 203. DEAN

**(a)**   **A law school shall have a full-time dean with the authority and support necessary to discharge the responsibilities of the position.**

**(b)**   **Except in extraordinary circumstances, a dean shall also hold appointment as a member of the faculty with tenure.**

**(c)**   **The dean shall be selected by the university or the governing board of the law school, as appropriate, which shall have and follow a procedure for decanal appointment or reappointment that assures meaningful involvement by the faculty or a representative body of the faculty in the selection of a dean.**

### Interpretation 203-1

*Except for good cause, a dean should not be appointed or reappointed to a new term over the stated objection of a substantial majority of the faculty.*

### Interpretation 203-2

*In the appointment of an interim or acting dean, the university or the governing board of the law school, as appropriate, should follow a procedure that assures meaningful consultation with the faculty or a representative body of the faculty.*

## Interpretation 203-3

*The extension of an interim or acting dean's service beyond two years is a regular decanal appointment or reappointment for the purposes of Standard 203(c).*

# Standard 204. SELF STUDY

**Before each site evaluation visit the law school shall prepare a self-study comprised of (a) a completed site evaluation questionnaire, (b) a statement of the law school's mission and of its educational objectives in support of that mission, (c) an assessment of the educational quality of the law school's program, (d) an assessment of the school's continuing efforts to improve educational quality, (e) an evaluation of the school's effectiveness in achieving its stated educational objectives, and (f) a description of the strengths and weaknesses of the law school's program of legal education.**

## Interpretation 204-1

*The evaluation of the school's effectiveness and description of its strengths and weaknesses should include a statement of the availability of sufficient resources to achieve the school's mission and its educational objectives.*

# Standard 205. NON-DISCRIMINATION AND EQUALITY OF OPPORTUNITY

**(a)  A law school shall not use admission policies or take other action to preclude admission of applicants or retention of students on the basis of race, color, religion, national origin, gender, sexual orientation, age, or disability.**

**(b)  A law school shall foster and maintain equality of opportunity for students, faculty, and staff, without discrimination or segregation on the basis of race, color, religion, national origin, gender, sexual orientation, age, or disability.**

**(c)  This Standard does not prevent a law school from having a religious affiliation or purpose and adopting and applying policies of admission of students and employment of faculty and staff that directly relate to this affiliation or purpose so long as (1) notice of these policies has been given to applicants, students, faculty, and staff before their affiliation with the law school, and (2) the religious affiliation, purpose, or policies do not contravene any other Standard, including Standard 405(b) concerning academic freedom. These policies may provide a preference for persons adhering to the religious affiliation or purpose of the law school, but may not be applied to use admission policies or take other action to preclude admission of applicants or retention of students on the basis of race, color, religion, national origin, gender, sexual orientation, age, or disability. This Standard permits religious affiliation or purpose policies as to admission, retention, and employment only to the extent that these policies are protected by the United States Constitution. It is administered as though the First Amendment of the United States Constitution governs its application.**

**(d)  Non-discrimination and equality of opportunity in legal education includes equal employment opportunity. A law school shall communicate to every employer to whom it furnishes assistance and facilities for interviewing and other placement services the school's firm expectation that the employer will observe the principles of non-discrimination and equality of opportunity on**

**the basis of race, color, religion, national origin, gender, sexual orientation, age and disability in regard to hiring, promotion, retention and conditions of employment.**

### Interpretation 205-1
*A law school may not require applicants, students, faculty or employees to disclose their sexual orientation, although they may provide opportunities for them to do so voluntarily.*

### Interpretation 205-2
*So long as a school complies with Standard 205(c), the prohibition concerning sexual orientation does not require a religiously affiliated school to act inconsistently with the essential elements of its religious values and beliefs. For example, Standard 205(c) does not require a school to recognize or support organizations whose purposes or objectives with respect to sexual orientation conflict with the essential elements of the religious values and beliefs held by the school.*

### Interpretation 205-3
*Standard 205(d) applies to all employers, including government agencies, to which a school furnishes assistance and facilities for interviewing and other placement services. However, this Standard does not require a law school to implement its terms by excluding any employer unless that employer discriminates unlawfully.*

### Interpretation 205-4
*The denial by a law school of admission to a qualified applicant is treated as made upon the basis of race, color, religion, national origin, gender, sexual orientation, age, or disability if the basis of denial relied upon is an admission qualification of the school that is intended to prevent the admission of applicants on the basis of race, color, religion, national origin, gender, sexual orientation, age, or disability though not purporting to do so.*

### Interpretation 205-5
*The denial by a law school of employment to a qualified individual is treated as made upon the basis of race, color, religion, national origin, gender, sexual orientation, age, or disability if the basis of denial relied upon is an employment policy of the school that is intended to prevent the employment of individuals on the basis of race, color, religion, national origin, gender, sexual orientation, age, or disability though not purporting to do so.*

## Standard 206. DIVERSITY AND INCLUSION

(a) **Consistent with sound legal education policy and the Standards, a law school shall demonstrate by concrete action a commitment to diversity and inclusion by providing full opportunities for the study of law and entry into the profession by members of underrepresented groups, particularly racial and ethnic minorities, and a commitment to having a student body that is diverse with respect to gender, race, and ethnicity.**

(b) **Consistent with sound educational policy and the Standards, a law school shall demonstrate by concrete action a commitment to diversity and inclusion by having a faculty and staff that are diverse with respect to gender, race, and ethnicity.**

## Interpretation 206-1

*The requirement of a constitutional provision or statute that purports to prohibit consideration of gender, race, ethnicity, or national origin in admissions or employment decisions is not a justification for a school's non-compliance with Standard 206. A law school that is subject to such constitutional or statutory provisions would have to demonstrate the commitment required by Standard 206 by means other than those prohibited by the applicable constitutional or statutory provisions.*

## Interpretation 206-2

*In addition to providing full opportunities for the study of law and the entry into the legal profession by members of underrepresented groups, the enrollment of a diverse student body promotes cross-cultural understanding, helps break down racial, ethnic, and gender stereotypes, and enables students to better understand persons of different backgrounds. The forms of concrete action required by a law school to satisfy the obligations of this Standard are not specified. If consistent with applicable law, a law school may use race and ethnicity in its admissions process to promote diversity and inclusion. The determination of a law school's satisfaction of such obligations is based on the totality of the law school's actions and the results achieved. The commitment to providing full educational opportunities for members of underrepresented groups typically includes a special concern for determining the potential of these applicants through the admission process, special recruitment efforts, and programs that assist in meeting the academic and financial needs of many of these students and that create a favorable environment for students from underrepresented groups.*

# Standard 207. REASONABLE ACCOMMODATION FOR QUALIFIED INDIVIDUALS WITH DISABILITIES

(a) **Assuring equality of opportunity for qualified individuals with disabilities, as required by Standard 205, requires a law school to provide such students, faculty and staff with reasonable accommodations consistent with applicable law.**

(b) **A law school shall adopt, publish, and adhere to written policies and procedures for assessing and handling requests for reasonable accommodations made by qualified individuals with disabilities.**

## Interpretation 207-1

*Applicants and students shall be individually evaluated to determine whether they meet the academic standards requisite to admission and participation in the law school program. The use of the term "qualified" in the Standard requires a careful and thorough consideration of each applicant and each student's qualifications in light of reasonable accommodations. Reasonable accommodations are those that are consistent with the fundamental nature of the school's program of legal education, that can be provided without undue financial or administrative burden, and that can be provided while maintaining academic and other essential performance standards.*

# CHAPTER 3
# Program of Legal Education

## Standard 301. OBJECTIVES OF PROGRAM OF LEGAL EDUCATION

(a)   A law school shall maintain a rigorous program of legal education that prepares its students, upon graduation, for admission to the bar and for effective, ethical, and responsible participation as members of the legal profession.

(b)   A law school shall establish and publish learning outcomes designed to achieve these objectives.

## Standard 302. LEARNING OUTCOMES

A law school shall establish learning outcomes that shall, at a minimum, include competency in the following:

(a)   Knowledge and understanding of substantive and procedural law;

(b)   Legal analysis and reasoning, legal research, problem-solving, and written and oral communication in the legal context;

(c)   Exercise of proper professional and ethical responsibilities to clients and the legal system; and

(d)   Other professional skills needed for competent and ethical participation as a member of the legal profession.

*Interpretation 302-1*

*For the purposes of Standard 302(d), other professional skills are determined by the law school and may include skills such as, interviewing, counseling, negotiation, fact development and analysis, trial practice, document drafting, conflict resolution, organization and management of legal work, collaboration, cultural competency, and self-evaluation.*

*Interpretation 302-2*

*A law school may also identify any additional learning outcomes pertinent to its program of legal education.*

# Standard 303. CURRICULUM

**(a)  A law school shall offer a curriculum that requires each student to satisfactorily complete at least the following:**

    **(1) one course of at least two credit hours in professional responsibility that includes substantial instruction in the history, goals, structure, values, and responsibilities of the legal profession and its members;**

    **(2) one writing experience in the first year and at least one additional writing experience after the first year, both of which are faculty supervised; and**

    **(3) one or more experiential course(s) totaling at least six credit hours. An experiential course must be a simulation course, a law clinic, or a field placement. To satisfy this requirement, a course must be primarily experiential in nature and must:**

        **(i)  integrate doctrine, theory, skills, and legal ethics, and engage students in performance of one or more of the professional skills identified in Standard 302;**

        **(ii)  develop the concepts underlying the professional skills being taught;**

        **(iii)  provide multiple opportunities for performance; and**

        **(iv)  provide opportunities for self-evaluation.**

**(b)  A law school shall provide substantial opportunities to students for:**

    **(1) law clinics or field placement(s); and**

    **(2) student participation in pro bono legal services, including law-related public service activities.**

*Interpretation 303-1*

*A law school may not permit a student to use a course to satisfy more than one requirement under this Standard. For example, a course that includes a writing experience used to satisfy the upper-class writing requirement [see 303(a)(2)] cannot be counted as one of the experiential courses required in Standard 303(a)(3).*

### Interpretation 303-2

*Factors to be considered in evaluating the rigor of a writing experience include the number and nature of writing projects assigned to students, the form and extent of individualized assessment of a student's written products, and the number of drafts that a student must produce for any writing experience.*

### Interpretation 303-3

*Rule 6.1 of the ABA Model Rules of Professional Conduct encourages lawyers to provide pro bono legal services primarily to persons of limited means or to organizations that serve such persons. In addition, lawyers are encouraged to provide pro bono law-related public service. In meeting the requirement of Standard 303(b)(2), law schools are encouraged to promote opportunities for law student pro bono service that incorporate the priorities established in Model Rule 6.1. In addition, law schools are encouraged to promote opportunities for law students to provide over their law school career at least 50 hours of pro bono service that complies with Standard 303(b)(2). Pro bono and public service opportunities need not be structured to accomplish any of the outcomes required by Standard 302. Standard 303(b)(2) does not preclude the inclusion of credit-granting activities within a law school's overall program of law-related pro bono opportunities so long as law-related non-credit bearing initiatives are also part of that program.*

### Interpretation 303-4

*Law-related public service activities include (i) helping groups or organizations seeking to secure or protect civil rights, civil liberties, or public rights; (ii) helping charitable, religious, civic, community, governmental, and educational organizations not able to afford legal representation; (iii) participating in activities providing information about justice, the law or the legal system to those who might not otherwise have such information; and (iv) engaging in activities to enhance the capacity of the law and legal institutions to do justice.*

## Standard 304. SIMULATION COURSES AND LAW CLINICS

(a)  A simulation course provides substantial experience not involving an actual client, that (1) is reasonably similar to the experience of a lawyer advising or representing a client or engaging in other lawyering tasks in a set of facts and circumstances devised or adopted by a faculty member, and (2) includes the following:

   (i)  direct supervision of the student's performance by the faculty member;

   (ii)  opportunities for performance, feedback from a faculty member, and self-evaluation; and

   (iii)  a classroom instructional component.

(b)  A law clinic provides substantial lawyering experience that (1) involves one or more actual clients, and (2) includes the following:

   (i)  advising or representing a client;

   (ii)  direct supervision of the student's performance by a faculty member;

   (iii)  opportunities for performance, feedback from a faculty member, and self-evaluation; and

   (iv)  a classroom instructional component.

## Standard 305. FIELD PLACEMENTS AND OTHER STUDY OUTSIDE THE CLASSROOM

(a) A law school may grant credit toward the J.D. degree for courses that involve student participation in studies or activities in a format that does not involve attendance at regularly scheduled class sessions, including courses approved as part of a field placement program, moot court, law review, and directed research.

(b) Credit granted for such a course shall be commensurate with the time and effort required and the anticipated quality of the educational experience of the student.

(c) Each student's educational achievement in such a course shall be evaluated by a faculty member. When appropriate a school may use faculty members from other law schools to supervise or assist in the supervision or review of a field placement program.

(d) The studies or activities shall be approved in advance and periodically reviewed following the school's established procedures for approval of the curriculum.

(e) A field placement program shall include:

    (1) a clear statement of its goals and methods, and a demonstrated relationship between those goals and methods and the program in operation;

    (2) adequate instructional resources, including faculty teaching in and supervising the program who devote the requisite time and attention to satisfy program goals and are sufficiently available to students;

    (3) a clearly articulated method of evaluating each student's academic performance involving both a faculty member and the site supervisor;

    (4) a method for selecting, training, evaluating, and communicating with site supervisors;

    (5) for field placements that award three or more credit hours, regular contact between the faculty supervisor or law school administrator and the site supervisor to assure the quality of the student educational experience, including the appropriateness of the supervision and the student work;

    (6) a requirement that each student has successfully completed instruction equivalent to 28 credit hours toward the J.D. degree before participation in the field placement program; and

    (7) opportunities for student reflection on their field placement experience, through a seminar, regularly scheduled tutorials, or other means of guided reflection. Where a student may earn three or more credit hours in a field placement program, the opportunity for student reflection must be provided contemporaneously.

(f) A law school that has a field placement program shall develop, publish, and communicate to students and site supervisors a statement that describes the educational objectives of the program.

*Interpretation 305-1*
*Regular contact may be achieved through in-person visits or other methods of communication that will assure the quality of the student educational experience.*

*Interpretation 305-2*
*A law school may not grant credit to a student for participation in a field placement program for which the student receives compensation. This Interpretation does not preclude reimbursement of reasonable out-of-pocket expenses related to the field placement.*

## Standard 306. DISTANCE EDUCATION

(a)  A distance education course is one in which students are separated from the faculty member or each other for more than one-third of the instruction and the instruction involves the use of technology to support regular and substantive interaction among students and between the students and the faculty member, either synchronously or asynchronously.

(b)  Credit for a distance education course shall be awarded only if the academic content, the method of course delivery, and the method of evaluating student performance are approved as part of the school's regular curriculum approval process.

(c)  A law school shall have the technological capacity, staff, information resources, and facilities necessary to assure the educational quality of distance education.

(d)  A law school may award credit for distance education and may count that credit toward the 64 credit hours of regularly scheduled classroom sessions or direct faculty instruction required by Standard 310(b) if:

  (1)  there is opportunity for regular and substantive interaction between faculty member and student and among students;

  (2)  there is regular monitoring of student effort by the faculty member and opportunity for communication about that effort; and

  (3)  the learning outcomes for the course are consistent with Standard 302.

(e)  A law school shall not grant a student more than a total of 15 credit hours toward the J.D. degree for courses qualifying under this Standard.

(f)  A law school shall not enroll a student in courses qualifying for credit under this Standard until that student has completed instruction equivalent to 28 credit hours toward the J.D. degree.

(g)  A law school shall establish an effective process for verifying the identity of students taking distance education courses and that also protects student privacy. If any additional student charges are associated with verification of student identity, students must be notified at the time of registration or enrollment.

### Interpretation 306-1
*Technology used to support a distance education course may include, for example:*

    *(a) The Internet;*

    *(b) One-way and two-way transmissions through open broadcast, closed circuit, cable, microwave, broadband lines, fiber optics, satellite, or wireless communications devices;*

    *(c) Audio and video conferencing; or*

    *(d) Video cassettes, DVDs, and CD-ROMs, if the cassettes, DVDs, or CD–ROMs are used in a course in conjunction with any of the technologies listed in paragraphs (a) through (c).*

### Interpretation 306-2
*Methods to verify student identity as required in Standard 306(g) include, but are not limited to (i) a secure login and pass code, (ii) proctored examinations, and (iii) other technologies and practices that are effective in verifying student identity. As part of the verification process, a law school shall verify that the student who registers for a class is the same student that participates and takes any examinations for the class.*

## Standard 307. STUDIES, ACTIVITIES, AND FIELD PLACEMENTS OUTSIDE THE UNITED STATES

**(a)** **A law school may grant credit for (1) studies or activities outside the United States that are approved in accordance with the Rules of Procedure and Criteria as adopted by the Council and (2) field placements outside the United States that meet the requirements of Standard 305 and are not held in conjunction with studies or activities that are approved in accordance with the Rules of Procedure and Criteria as adopted by the Council.**

**(b)** **The total credits for student participation in such studies or activities may not exceed one-third of the credits required for the J.D. degree.**

### Interpretation 307-1
*The three Criteria adopted by the Council are the Criteria for Approval of Foreign Summer and Intersession Programs Established by ABA-Approved Law Schools, the Criteria for Approval of Foreign Semester and Year-Long Study Abroad Programs Established by ABA-Approved Law Schools, and the Criteria for Accepting Credit for Student Study at a Foreign Institution.*

### Interpretation 307-2
*For purposes of Standard 307, a brief visit to a country outside the United States that is part of a course offered and based primarily at the law school and approved through the school's regular curriculum approval process is not considered to be studies outside the United States.*

## Standard 308. ACADEMIC STANDARDS

**(a)** **A law school shall adopt, publish, and adhere to sound academic standards, including those for good standing, academic integrity, graduation, and dismissal.**

**(b)** **A law school shall adopt, publish, and adhere to written due process policies with regard to taking any action that adversely affects the good standing or graduation of a student.**

# Standard 309. ACADEMIC ADVISING AND SUPPORT

(a)  A law school shall provide academic advising for students that communicates effectively the school's academic standards and graduation requirements, and that provides guidance on course selection.

(b)  A law school shall provide academic support designed to afford students a reasonable opportunity to complete the program of legal education, graduate, and become members of the legal profession.

# Standard 310. DETERMINATION OF CREDIT HOURS FOR COURSEWORK

(a)  A law school shall adopt, publish, and adhere to written policies and procedures for determining the credit hours that it awards for coursework.

(b)  A "credit hour" is an amount of work that reasonably approximates:

(1)  not less than one hour of classroom or direct faculty instruction and two hours of out-of-class student work per week for fifteen weeks, or the equivalent amount of work over a different amount of time; or

(2)  at least an equivalent amount of work as required in subparagraph (1) of this definition for other academic activities as established by the institution, including simulation, field placement, clinical, co-curricular, and other academic work leading to the award of credit hours.

*Interpretation 310-1*
*For purposes of this Standard, fifty minutes suffices for one hour of classroom or direct faculty instruction. An "hour" for out-of-class student work is sixty minutes. The fifteen-week period may include one week for a final examination.*

*Interpretation 310-2*
*A school may award credit hours for coursework that extends over any period of time, if the coursework entails no less than the minimum total amounts of classroom or direct faculty instruction and of out-of-class student work specified in Standard 310(b).*

# Standard 311. ACADEMIC PROGRAM AND ACADEMIC CALENDAR

(a)  A law school shall have an academic year of not fewer than 140 days on which classes and examinations are regularly scheduled in the law school, extending into not fewer than eight calendar months. The law school shall provide adequate time for reading periods and breaks, but such time does not count toward the 140-day academic year requirement.

(b)  A law school shall require, as a condition for graduation, successful completion of a course of study of not fewer than 83 credit hours. At least 64 of these credit hours shall be in courses that require attendance in regularly scheduled classroom sessions or direct faculty instruction.

(c)  A law school shall require that the course of study for the J.D. degree be completed no earlier than 24 months and, except in extraordinary circumstances, no later than 84 months after a

**student has commenced law study at the law school or a law school from which the school has accepted transfer credit.**

**(d)   A law school shall not permit a student to be enrolled at any time in coursework that exceeds 20 percent of the total credit hours required by that school for graduation.**

**(e)   Credit for a J.D. degree shall only be given for course work taken after the student has matriculated in a law school. A law school may not grant credit toward the J.D. degree for work taken in a pre-admission program.**

**(f)   A law school shall adopt, publish, and adhere to a written policy requiring regular class attendance.**

## Interpretation 311-1
*A law school may not count more than five class days each week toward the 140-day requirement.*

## Interpretation 311-2
*(a)   In calculating the 64 credit hours of regularly scheduled classroom sessions or direct faculty instruction for the purpose of Standard 311(b), the credit hours may include:*

   *(1)   Credit hours earned by attendance in regularly scheduled classroom sessions or direct faculty instruction;*

   *(2)   Credit hours earned by participation in a simulation course or law clinic in compliance with Standard 304;*

   *(3)   Credit hours earned through distance education in compliance with Standard 306; and*

   *(4)   Credit hours earned by participation in law-related studies or activities in a country outside the United States in compliance with Standard 307.*

*(b)   In calculating the 64 credit hours of regularly scheduled classroom sessions or direct faculty instruction for the purpose of Standard 311(b), the credit hours shall not include any other coursework, including, but not limited to:*

   *(1)   Credit hours earned through field placements and other study outside of the classroom in compliance with Standard 305;*

   *(2)   Credit hours earned in another department, school, or college of the university with which the law school is affiliated, or at another institution of higher learning;*

   *(3)   Credit hours earned for participation in co-curricular activities such as law review, moot court, and trial competition; and*

   *(4)   Credit hours earned by participation in studies or activities in a country outside the United States in compliance with Standard 307 for studies or activities that are not law-related.*

## Interpretation 311-3
*Whenever a student is permitted on the basis of extraordinary circumstances to exceed the 84-month program limitation in Standard 311(c), the law school shall place in the student's file a statement signed by an appropriate law school official explaining the extraordinary circumstances leading the law school*

*to permit an exception to this limitation. Such extraordinary circumstances, for example, might include an interruption of a student's legal education because of an illness, family exigency, or military service.*

### Interpretation 311-4
*For purposes of Standard 311(c), the time for determining the commencement of law study is ordinarily the time when a student commences law study at any institution. For example, if a law school accepts transfer credit from another institution, the time begins when the student commenced study at the law school from which the transfer credit is accepted. If a law school accepts a student who has completed law studies at a law school outside the United States as permitted under Standard 505, only the time commensurate with the amount of credit given counts toward the length of study requirements of Standard 311(c).*

## Standard 312. REASONABLY COMPARABLE OPPORTUNITIES

**A law school providing more than one enrollment or scheduling option shall ensure that all students have reasonably comparable opportunities for access to the law school's program of legal education, courses taught by full-time faculty, student services, co-curricular programs, and other educational benefits. Identical opportunities are not required.**

## Standard 313. DEGREE PROGRAMS IN ADDITION TO J.D.

**A law school may not offer a degree program other than its J.D. degree program unless:**

**(a) the law school is fully approved;**

**(b) the Council has granted acquiescence in the program; and**

**(c) the degree program will not interfere with the ability of the law school to operate in compliance with the Standards and to carry out its program of legal education.**

### Interpretation 313-1
*Acquiescence in a degree program other than the J.D. degree is not an approval of the program itself and, therefore, a school may not announce that the program is approved by the Council.*

## Standard 314. ASSESSMENT OF STUDENT LEARNING

**A law school shall utilize both formative and summative assessment methods in its curriculum to measure and improve student learning and provide meaningful feedback to students.**

### Interpretation 314-1
*Formative assessment methods are measurements at different points during a particular course or at different points over the span of a student's education that provide meaningful feedback to improve student learning. Summative assessment methods are measurements at the culmination of a particular course or at the culmination of any part of a student's legal education that measure the degree of student learning.*

### Interpretation 314-2
*A law school need not apply multiple assessment methods in any particular course. Assessment methods are likely to be different from school to school. Law schools are not required by Standard 314 to use any particular assessment method.*

# Standard 315. EVALUATION OF PROGRAM OF LEGAL EDUCATION, LEARNING OUTCOMES, AND ASSESSMENT METHODS

**The dean and the faculty of a law school shall conduct ongoing evaluation of the law school's program of legal education, learning outcomes, and assessment methods; and shall use the results of this evaluation to determine the degree of student attainment of competency in the learning outcomes and to make appropriate changes to improve the curriculum.**

### *Interpretation 315-1*

*Examples of methods that may be used to measure the degree to which students have attained competency in the school's student learning outcomes include review of the records the law school maintains to measure individual student achievement pursuant to Standard 314; evaluation of student learning portfolios; student evaluation of the sufficiency of their education; student performance in capstone courses or other courses that appropriately assess a variety of skills and knowledge; bar exam passage rates; placement rates; surveys of attorneys, judges, and alumni; and assessment of student performance by judges, attorneys, or law professors from other schools. The methods used to measure the degree of student achievement of learning outcomes are likely to differ from school to school and law schools are not required by this standard to use any particular methods.*

# Standard 316. BAR PASSAGE

**(a)  A law school's bar passage rate shall be sufficient, for purposes of Standard 301(a), if the school demonstrates that it meets any one of the following tests:**

**(1)  That for students who graduated from the law school within the five most recently completed calendar years:**

**(i)   75 percent or more of these graduates who sat for the bar passed a bar examination; or**

**(ii)  in at least three of these calendar years, 75 percent of the students graduating in those years and sitting for the bar have passed a bar examination.**

**In demonstrating compliance under sections (1)(i) and (ii), the school must report bar passage results from as many jurisdictions as necessary to account for at least 70 percent of its graduates each year, starting with the jurisdiction in which the highest number of graduates took the bar exam and proceeding in descending order of frequency.**

**(2)  That in three or more of the five most recently completed calendar years, the school's annual first-time bar passage rate in the jurisdictions reported by the school is no more than 15 points below the average first-time bar passage rates for graduates of ABA-approved law schools taking the bar examination in these same jurisdictions.**

**In demonstrating compliance under section (2), the school must report first-time bar passage data from as many jurisdictions as necessary to account for at least 70 percent of its graduates each year, starting with the jurisdiction in which the highest number of graduates took the bar exam and proceeding in descending order of frequency. When more than one jurisdiction is reported, the weighted average of the results in each of the reported jurisdictions shall be used to determine compliance.**

**(b)** A school shall be out of compliance with this Standard if it is unable to demonstrate that it meets the requirements of paragraph (a)(1) or (2).

**(c)** A school found out of compliance under paragraph (b) and that has not been able to come into compliance within the two-year period specified in Rule 13(b) of the Rules of Procedure for Approval of Law Schools, may seek to demonstrate good cause for extending the period the law school has to demonstrate compliance by submitting evidence of:

   **(1)** The law school's trend in bar passage rates for both first-time and subsequent takers: a clear trend of improvement will be considered in the school's favor, a declining or flat trend against it.

   **(2)** The length of time the law school's bar passage rates have been below the first-time and ultimate rates established in paragraph A: a shorter time period will be considered in the school's favor, a longer period against it.

   **(3)** Actions by the law school to address bar passage, particularly the law school's academic rigor and the demonstrated value and effectiveness of its academic support and bar preparation programs: value-added, effective, sustained and pervasive actions to address bar passage problems will be considered in the law school's favor; ineffective or only marginally effective programs or limited action by the law school against it.

   **(4)** Efforts by the law school to facilitate bar passage for its graduates who did not pass the bar on prior attempts: effective and sustained efforts by the law school will be considered in the school's favor; ineffective or limited efforts by the law school against it.

   **(5)** Efforts by the law school to provide broader access to legal education while maintaining academic rigor: sustained meaningful efforts will be viewed in the law school's favor; intermittent or limited efforts by the law school against it.

   **(6)** The demonstrated likelihood that the law school's students who transfer to other ABA-approved schools will pass the bar examination: transfers by students with a strong likelihood of passing the bar will be considered in the school's favor, providing the law school has undertaken counseling and other appropriate efforts to retain its well-performing students.

   **(7)** Temporary circumstances beyond the control of the law school, but which the law school is addressing: for example, a natural disaster that disrupts operations or a significant increase in the standard for passing the relevant bar examination(s).

   **(8)** Other factors, consistent with a law school's demonstrated and sustained mission, which the school considers relevant in explaining its deficient bar passage results and in explaining the school's efforts to improve them.

# CHAPTER 4
# The Faculty

## Standard 401. QUALIFICATIONS

A law school shall have a faculty whose qualifications and experience enable the law school to operate in compliance with the Standards and carry out its program of legal education. The faculty shall possess a high degree of competence, as demonstrated by academic qualification, experience in teaching or practice, teaching effectiveness, and scholarship.

## Standard 402. SIZE OF FULL-TIME FACULTY

A law school shall have a sufficient number of full-time faculty to enable the law school to operate in compliance with the Standards and carry out its program of legal education. The number of full-time faculty necessary depends on (a) the size of the student body and the opportunity for students to meet individually with full-time faculty members; (b) the nature and scope of the program of legal education; and (c) the opportunities for the full-time faculty to adequately fulfill its teaching obligations, conduct scholarly research, participate effectively in the governance of the law school, and provide service to the legal profession and the public.

### *Interpretation 402-1*
*A full-time faculty member who is teaching an additional full-time load at another law school may not be considered as a full-time faculty member at either institution.*

*Interpretation 402-2*

*Regularly engaging in law practice or having an ongoing relationship with a law firm or other business creates a presumption that a faculty member is not a full-time faculty member under this Standard. This presumption may be rebutted if the law school is able to demonstrate that the individual has a full-time commitment to teaching, research, and public service, is available to students, and is able to participate in the governance of the law school to the same extent expected of full-time faculty.*

## Standard 403. INSTRUCTIONAL ROLE OF FACULTY

(a)   The full-time faculty shall teach substantially all of the first one-third of each student's coursework. The full-time faculty shall also teach during the academic year either (1) more than half of all of the credit hours actually offered by the law school, or (2) two-thirds of the student contact hours generated by student enrollment at the law school.

(b)   A law school shall ensure effective teaching by all persons providing instruction to its students.

*Interpretation 403-1*

*Efforts to ensure teaching effectiveness may include: orientation, guidance and mentoring for new faculty members; a faculty committee on effective teaching; class visits; critiques of videotaped teaching; institutional review of student course evaluations; colloquia on effective teaching; and recognition and use of creative scholarship in law school teaching methodology.*

## Standard 404. RESPONSIBILITIES OF FULL-TIME FACULTY

(a)   A law school shall adopt, publish, and adhere to written policies with respect to full-time faculty members' responsibilities. The policies shall require that the full-time faculty, as a collective body, fulfill these core responsibilities:

(1)   Teaching, preparing for classes, being available for student consultation about those classes, assessing student performance in those classes, and remaining current in the subjects being taught;

(2)   Participating in academic advising, creating an atmosphere in which students and faculty may voice opinions and exchange ideas, and assessing student learning at the law school;

(3)   Engaging in scholarship, as defined by the law school;

(4)   Service to the law school and university community, including participation in the governance of the law school, curriculum development, and other institutional responsibilities described in the Standards;

(5)   Service to the profession, including working with judges and practicing lawyers to improve the profession; and

(6)   Service to the public, including participation in pro bono activities.

(b)   The law school shall periodically evaluate the extent to which the faculty discharges its core responsibilities under the law school's policies and the contributions of each full-time faculty member to meeting the core responsibilities of the faculty.

# Standard 405. PROFESSIONAL ENVIRONMENT

**(a)**    **A law school shall establish and maintain conditions adequate to attract and retain a competent faculty.**

**(b)**    **A law school shall have an established and announced policy with respect to academic freedom and tenure of which Appendix 1 herein is an example but is not obligatory.**

**(c)**    **A law school shall afford to full-time clinical faculty members a form of security of position reasonably similar to tenure, and non-compensatory perquisites reasonably similar to those provided other full-time faculty members. A law school may require these faculty members to meet standards and obligations reasonably similar to those required of other full-time faculty members. However, this Standard does not preclude a limited number of fixed, short-term appointments in a clinical program predominantly staffed by full-time faculty members, or in an experimental program of limited duration.**

**(d)**    **A law school shall afford legal writing teachers such security of position and other rights and privileges of faculty membership as may be necessary to (1) attract and retain a faculty that is well qualified to provide legal writing instruction as required by Standard 302(a)(3), and (2) safeguard academic freedom.**

### Interpretation 405-1
*A fixed limit on the percent of a law faculty that may hold tenure under any circumstances violates the Standards.*

### Interpretation 405-2
*A law faculty as professionals should not be required to be a part of the general university bargaining unit.*

### Interpretation 405-3
*A law school shall have a comprehensive system for evaluating candidates for promotion and tenure or other forms of security of position, including written criteria and procedures that are made available to the faculty.*

### Interpretation 405-4
*A law school not a part of a university in considering and deciding on appointment, termination, promotion, and tenure of faculty members should have procedures that contain the same principles of fairness and due process that should be employed by a law school that is part of a university. If the dean and faculty have made a recommendation that is unfavorable to a candidate, the candidate should be given an opportunity to appeal to the president, chairman, or governing board.*

### Interpretation 405-5
*If the dean and faculty have determined the question of responsibility for examination schedules and the schedule has been announced by the authority responsible for it, it is not a violation of academic freedom for a member of the law faculty to be required to adhere to the schedule.*

### Interpretation 405-6
*A form of security of position reasonably similar to tenure includes a separate tenure track or a program of renewable long-term contracts. Under a separate tenure track, a full-time clinical faculty member, after a probationary period reasonably similar to that for other full-time faculty, may be granted tenure.*

*After tenure is granted, the faculty member may be terminated only for good cause, including termination or material modification of the entire clinical program. A program of renewable long-term contracts shall provide that, after a probationary period reasonably similar to that for other full-time faculty, during which the clinical faculty member may be employed on short-term contracts, the services of a faculty member in a clinical program may be either terminated or continued by the granting of a long-term renewable contract. For the purposes of this Interpretation, "long-term contract" means at least a five-year contract that is presumptively renewable or other arrangement sufficient to ensure academic freedom. During the initial long-term contract or any renewal period, the contract may be terminated for good cause, including termination or material modification of the entire clinical program.*

### Interpretation 405-7
*In determining if the members of the full-time clinical faculty meet standards and obligations reasonably similar to those provided for other full-time faculty, competence in the areas of teaching and scholarly research and writing should be judged in terms of the responsibilities of clinical faculty. A law school should develop criteria for retention, promotion, and security of employment of full-time clinical faculty.*

### Interpretation 405-8
*A law school shall afford to full-time clinical faculty members participation in faculty meetings, committees, and other aspects of law school governance in a manner reasonably similar to other full-time faculty members. This Interpretation does not apply to those persons referred to in the last sentence of Standard 405(c).*

### Interpretation 405-9
*Subsection (d) of this Standard does not preclude the use of short-term contracts for legal writing teachers, nor does it preclude law schools from offering fellowship programs designed to produce candidates for full-time teaching by offering individuals supervised teaching experience.*

# CHAPTER 5
# Admissions and Student Services

## Standard 501. ADMISSIONS

**(a)  A law school shall maintain sound admission policies and practices consistent with the Standards, its mission, and the objectives of its program of legal education.**

**(b)  A law school shall not admit an applicant who does not appear capable of satisfactorily completing its program of legal education and being admitted to the bar.**

**(c)  A law school shall not admit or readmit a student who has been disqualified previously for academic reasons without an affirmative showing that the prior disqualification does not indicate a lack of capacity to complete its program of legal education and be admitted to the bar. For every admission or readmission of a previously disqualified individual, a statement of the considerations that led to the decision shall be placed in the admittee's file.**

### Interpretation 501-1

*Among the factors to consider in assessing compliance with this Standard are the academic and admission test credentials of the law school's entering students, the academic attrition rate of the law school's students, the bar passage rate of its graduates, and the effectiveness of the law school's academic support program.*

### Interpretation 501-2

*Sound admissions policies and practices may include consideration of admission test scores, undergraduate course of study and grade point average, extracurricular activities, work experience, performance in other graduate or professional programs, relevant demonstrated skills, and obstacles overcome.*

## Standard 502. EDUCATIONAL REQUIREMENTS

**(a)** A law school shall require for admission to its J.D. degree program a bachelor's degree that has been awarded by an institution that is accredited by an accrediting agency recognized by the United States Department of Education.

**(b)** Notwithstanding subsection (a), a law school may also admit to its J.D. degree program:

    **1)** an applicant who has completed three-fourths of the credits leading to a bachelor's degree as part of a bachelor's degree/J.D. degree program if the institution is accredited by an accrediting agency recognized by the United States Department of Education; and

    **2)** a graduate of an institution outside the United States if the law school assures that the quality of the program of legal education of that institution is equivalent to that of institutions accredited by an accrediting agency recognized by the United States Department of Education.

**(c)** In an extraordinary case, a law school may admit to its J.D. degree program an applicant who does not satisfy the requirements of subsections (a) or (b) if the applicant's experience, ability, and other qualifications clearly demonstrate an aptitude for the study of law. For every such admission, a statement of the considerations that led to the decision shall be placed in the admittee's file.

**(d)** Within a reasonable time after a student registers, a law school shall have on file the student's official transcripts verifying all academic credits undertaken and degree(s) conferred.

### Interpretation 502-1

*Official transcript means: 1) a paper or electronic transcript certified by the issuing institution and delivered directly to the law school; or 2) a paper or electronic transcript verified by a third-party credential assembly service and delivered directly to the law school. With respect to electronic copies, it is sufficient for transcripts to be maintained at the law school or off-site by a third-party provider as long as the law school has access to the documents on demand.*

### Interpretation 502-2

*The official transcripts for any student admitted as a transfer student shall include verification of any academic credits undertaken at any other law school attended.*

## Standard 503. ADMISSION TEST

**A law school shall require each applicant for admission as a first-year J.D. degree student to take a valid and reliable admission test to assist the school and the applicant in assessing the applicant's capability of satisfactorily completing the school's program of legal education. In making admissions decisions, a law school shall use the test results in a manner that is consistent with the current guidelines regarding proper use of the test results provided by the agency that developed the test.**

### Interpretation 503-1
*A law school that uses an admission test other than the Law School Admission Test sponsored by the Law School Admission Council shall demonstrate that such other test is a valid and reliable test to assist the school in assessing an applicant's capability to satisfactorily complete the school's program of legal education.*

### Interpretation 503-2
*This Standard does not prescribe the particular weight that a law school should give to an applicant's admission test score in deciding whether to admit or deny admission to the applicant.*

### Interpretation 503-3
*(a)  It is not a violation of this Standard for a law school to admit no more than 10% of an entering class without requiring the LSAT from:*

*(1)  Students in an undergraduate program of the same institution as the J.D. program; and/or*

*(2)  Students seeking the J.D. degree in combination with a degree in a different discipline.*

*(b)  Applicants admitted under subsection (a) must meet the following conditions:*

*(1)  Scored at or above the 85th percentile on the ACT or SAT for purposes of subsection (a)(1), or for purposes of subsection (a)(2), scored at or above the 85th percentile on the GRE or GMAT; and*

*(2)  Ranked in the top 10% of their undergraduate class through six semesters of academic work, or achieved a cumulative GPA of 3.5 or above through six semesters of academic work.*

## Standard 504. QUALIFICATIONS FOR ADMISSION TO THE BAR

**(a)  A law school shall include the following statement in its application for admission and on its website:**

> **In addition to a bar examination, there are character, fitness, and other qualifications for admission to the bar in every U.S. jurisdiction. Applicants are encouraged to determine the requirements for any jurisdiction in which they intend to seek admission by contacting the jurisdiction. Addresses for all relevant agencies are available through the National Conference of Bar Examiners.**

**(b)  The law school shall, as soon after matriculation as is practicable, take additional steps to apprise entering students of the importance of determining the applicable character, fitness, and other requirements for admission to the bar in each jurisdiction in which they intend to seek admission to the bar.**

## Standard 505. GRANTING OF J.D. DEGREE CREDIT FOR PRIOR LAW STUDY

(a)  A law school may admit a student and grant credit for courses completed at another law school approved by the Council if the courses were undertaken as a J.D. degree student.

(b)  A law school may admit a student and grant credit for courses completed at a law school in the United States that is not approved by the Council if graduates of the law school are permitted to sit for the bar examination in the jurisdiction in which the school is located, provided that:

   (1)  the courses were undertaken as a J.D. degree student; and

   (2)  the law school would have granted credit toward satisfaction of J.D. degree requirements if earned at the admitting school.

(c)  A law school may admit a student and grant credit for courses completed at a law school outside the United States if the admitting law school would have granted credit towards satisfaction of J.D. degree requirements if earned at the admitting school.

(d)  A law school may grant credit toward a J.D. degree to a graduate of a law school in a country outside the United States for credit hours earned in an LL.M. or other post-J.D. program it offers if:

   (1)  that study led to successful completion of a J.D. degree course or courses while the student was enrolled in a post-J.D. degree law program; and

   (2)  the law school has a grading system for LL.M. students in J.D. courses that is comparable to the grading system for J.D. degree students in the course.

(e)  A law school that grants credit as provided in Standard 505(a) through (d) may award a J.D. degree to a student who successfully completes a course of study that satisfies the requirements of Standard 311 and that meets all of the school's requirements for the awarding of the J.D. degree.

(f)  Credit hours granted pursuant to subsection (b) through (d) shall not, individually or in combination, exceed one-third of the total required by the admitting school for its J.D. degree.

## Standard 506. ENROLLMENT OF NON-DEGREE CANDIDATES

Without requiring compliance with its admission standards and procedures, a law school may enroll individuals in a limited number of courses, as auditors, non-degree candidates, or candidates for a degree other than a law degree, only if such enrollment does not interfere with the ability of the law school to operate in compliance with the Standards and to carry out its program of legal education.

## Standard 507. STUDENT LOAN PROGRAMS

A law school shall demonstrate reasonable steps to minimize student loan defaults, including provision of debt counseling at the inception of a student's loan obligations and again before graduation.

*Interpretation 507-1*
*The student loan default rates of a law school's graduates, including any results of financial or compliance audits and reviews, are relevant in assessing the extent to which a law school complies with this Standard.*

*Interpretation 507-2*
*For a law school not affiliated with a university, the school's student loan cohort default rate is sufficient if it is not greater than 10% for any of the three most recently published annual cohort default rates.*

*Failure to comply with Title IV of the Higher Education Act of 1965, as amended, or having a student loan cohort default rate greater than the rate permitted by Title IV is cause for review of a law school's compliance with the Standards. A school shall demonstrate that it has resolved all areas of deficiency identified in financial or compliance audits, program reviews, or other information provided by the United States Department of Education.*

*Interpretation 507-3*
*A law school has complied with this Standard if the university of which the law school is a part takes the steps described in this Standard.*

# Standard 508. STUDENT SUPPORT SERVICES

**A law school shall provide all its students, regardless of enrollment or scheduling option, with basic student services, including maintenance of accurate student records, academic advising and counseling, financial aid and debt counseling, and career counseling to assist students in making sound career choices and obtaining employment. If a law school does not provide these student services directly, it shall demonstrate that its students have reasonable access to such services from the university of which it is a part or from other sources.**

# Standard 509. REQUIRED DISCLOSURES

**(a)  All information that a law school reports, publicizes, or distributes shall be complete, accurate and not misleading to a reasonable law school student or applicant. A law school shall use due diligence in obtaining and verifying such information. Violations of these obligations may result in sanctions under Rule 16 of the Rules of Procedure for Approval of Law Schools.**

**(b)  A law school shall publicly disclose on its website, in the form and manner and for the time frame designated by the Council, the following information:**

> **(1)  admissions data;**
>
> **(2)  tuition and fees, living costs, and financial aid;**
>
> **(3)  conditional scholarships;**
>
> **(4)  enrollment data, including academic, transfer, and other attrition;**
>
> **(5)  numbers of full-time and part-time faculty, professional librarians, and administrators;**
>
> **(6)  class sizes for first-year and upper-class courses; number of seminar, clinical and co-curricular offerings;**

(7)  **employment outcomes; and**

(8)  **bar passage data.**

(c)  **A law school shall publicly disclose on its website, in a readable and comprehensive manner, the following information on a current basis:**

(1)  **refund policies;**

(2)  **curricular offerings, academic calendar, and academic requirements; and**

(3)  **policies regarding the transfer of credit earned at another institution of higher education. The law school's transfer of credit policies must include, at a minimum:**

(i)  **A statement of the criteria established by the law school regarding the transfer of credit earned at another institution; and**

(ii)  **A list of institutions, if any, with which the law school has established an articulation agreement.**

(d)  **A law school shall distribute the data required under Standard 509(b)(3) to all applicants being offered conditional scholarships at the time the scholarship offer is extended.**

(e)  **If a law school makes a public disclosure of its status as a law school approved by the Council, it shall do so accurately and shall include the name and contact information of the Council.**

*Interpretation 509-1*
*Current curricular offerings, for the purposes of Standard 509(c), are only those courses offered in the current and past two academic years.*

*Interpretation 509-2*
*A law school may publicize or distribute information in addition to that required by this Standard, including, without limitation, the employment outcomes of its graduates, so long as such information complies with the requirements of subsection (a).*

*Interpretation 509-3*
*A conditional scholarship is any financial aid award, the retention of which is dependent upon the student maintaining a minimum grade point average or class standing, other than that ordinarily required to remain in good academic standing.*

*Interpretation 509-4*
*Articulation Agreement means a formal written agreement between a law school and another accredited university or institution providing for the transfer of defined academic credits between the parties to the agreement.*

# Standard 510. STUDENT COMPLAINTS IMPLICATING COMPLIANCE WITH THE STANDARDS

(a)  **A law school shall establish, publish, and comply with policies for addressing student complaints.**

(b)  **A law school shall maintain a record of student complaints submitted during the most recent accreditation period. The record shall include the resolution of the complaints.**

### Interpretation 510-1

*A "complaint" is a communication in writing that seeks to bring to the attention of the law school a significant problem that directly implicates the school's compliance with the Standards.*

### Interpretation 510-2

*A law school's policies on student complaints must address, at a minimum, procedures for filing and addressing complaints, appeal rights, if any, and timelines.*

# CHAPTER 6

# Library and Information Resources

## Standard 601. GENERAL PROVISIONS

(a) A law school shall maintain a law library that:

   (1) provides support through expertise, resources, and services adequate to enable the law school to carry out its program of legal education, accomplish its mission, and support scholarship and research;

   (2) develops and maintains a direct, informed, and responsive relationship with the faculty, students, and administration of the law school;

   (3) working with the dean and faculty, engages in a regular planning and assessment process, including written assessment of the effectiveness of the library in achieving its mission and realizing its established goals; and

   (4) remains informed on and implements, as appropriate, technological and other developments affecting the library's support for the law school's program of legal education.

(b)   A law school shall provide on a consistent basis sufficient financial resources to the law library to enable it to fulfill its responsibilities of support to the law school and realize its established goals.

# Standard 602. ADMINISTRATION

(a)   A law school shall have sufficient administrative autonomy to direct the growth and development of the law library and to control the use of its resources.

(b)   The director of the law library and the dean, in consultation with the faculty, shall determine library policy.

(c)   The director of the law library and the dean are responsible for the selection and retention of personnel, the provision of library services, and collection development and maintenance.

(d)   The budget for the law library shall be determined as part of, and administered in the same manner as, the law school budget.

### Interpretation 602-1

*This Standard envisions law library participation in university library decisions that may affect the law library. While it is preferred that the law school administer the law library, a law library may be administered as part of a university library system if the dean, the director of the law library, and the faculty of the law school are responsible for the determination of basic law library policies, priorities, and funding requests.*

# Standard 603. DIRECTOR OF THE LAW LIBRARY

(a)   A law school shall have a full-time director of the law library whose principal responsibilities are managing the law library and providing information resources in appropriate formats to faculty and students.

(b)   The selection and retention of the director of the law library shall be determined by the law school.

(c)   A director of a law library shall have appropriate academic qualifications and shall have knowledge of and experience in law library administration sufficient to support the program of legal education and to enable the law school to operate in compliance with the Standards.

(d)   Except in extraordinary circumstances, a law library director shall hold a law faculty appointment with security of faculty position.

### Interpretation 603-1

*Having a director of a law library with a law degree and a degree in library or information science is an effective method of assuring that the individual has appropriate qualifications and knowledge of and experience in library administration sufficient to support the program of legal education and to enable the law school to operate in compliance with the Standards. A law school not having a director with these credentials bears the burden of demonstrating that it is in compliance with Standard 603(c).*

## Standard 604. PERSONNEL

**The law library shall have a staff sufficient in expertise and number to provide the appropriate library and information resources services to the school.**

### Interpretation 604-1

*Factors relevant to the number and expertise of librarians and information resource staff needed to meet this Standard include the number of faculty and students, research programs of faculty and students, whether there is a dual division program in the school, any graduate programs of the school, size and growth rate of the collection, range of services offered by the staff, formal teaching assignments of staff members, and responsibilities for providing information resource services.*

## Standard 605. SERVICES

**A law library shall provide the appropriate range and depth of reference, instructional, bibliographic, and other services to meet the needs of the law school's teaching, scholarship, research, and service programs.**

### Interpretation 605-1

*Factors relevant to determining whether services are appropriate under Standard 605 include the extent to which services enhance the research and bibliographic and information literacy skills of students, provide access (such as indexing, cataloging, and development of search terms and methodologies) to the library's collection and other information resources, offer interlibrary loan and other forms of document delivery, produce library publications and manage the library's web site, and create other services to enable the law school to carry out its program of legal education and accomplish its mission.*

## Standard 606. COLLECTION

(a)    The law library shall provide a core collection of essential materials through ownership or reliable access. The choice of format and of ownership in the library or a particular means of reliable access for any type of material in the collection, including the core collection, shall effectively support the law school's curricular, scholarly, and service programs and objectives, and the role of the library in preparing students for effective, ethical, and responsible participation in the legal profession.

(b)    A law library core collection shall include the following:

(1)    all reported federal court decisions and reported decisions of the highest appellate court of each state and U.S. territory;

(2)    all federal codes and session laws, and at least one current annotated code for each state and U.S. territory;

(3)    all current published treaties and international agreements of the United States;

(4)    all current published regulations (codified and uncodified) of the federal government and the codified regulations of the state or U.S. territory in which the law school is located;

    **(5)** those federal and state administrative decisions appropriate to the programs of the law school;

    **(6)** U.S. Congressional materials appropriate to the programs of the law school;

    **(7)** significant secondary works necessary to support the programs of the law school; and

    **(8)** those tools necessary to identify primary and secondary legal information and update primary legal information.

**(c)** In addition to the core collection of essential materials, a law library shall also provide a collection that, through ownership or reliable access,

    **(1)** meets the research needs of the law school's students, satisfies the demands of the law school curriculum, and facilitates the education of its students;

    **(2)** supports the teaching, scholarship, research, and service interests of the faculty;

    **(3)** serves the law school's special teaching, scholarship, research, and service objectives; and

    **(4)** is complete, current, and in sufficient quantity or with sufficient continuing access to meet faculty and student needs.

**(d)** The law library shall formulate and periodically update a written plan for development of the collection.

**(e)** The law library shall provide suitable space and adequate equipment to access and use all information in whatever formats are represented in the collection.

## Interpretation 606-1
*The appropriate mixture of collection formats depends on the needs of the library and the law school. A collection that consists of a single format may violate Standard 606.*

## Interpretation 606-2
*Reliable access to information resources may be provided through:*

    *(a) databases to which the library or the parent institution subscribe or own and are likely to continue to subscribe and provide access;*

    *(b) authenticated and credible databases that are available to the public at no charge and are likely to continue to be available to the public at no charge; or*

    *(c) participation in a formal resource-sharing arrangement through which materials are made available, via electronic or physical delivery, to users within a reasonable time.*

## Interpretation 606-3
*Off-site storage for non-essential material does not violate the Standards so long as the material is organized and readily accessible in a timely manner.*

*Interpretation 606-4*
*Cooperative agreements may be considered when determining whether faculty and students have efficient and effective access to the resources necessary to enable the law school to carry out its program of legal education and accomplish its mission. Standard 606 is not satisfied solely by arranging for students and faculty to have access to other law libraries within the region.*

# CHAPTER 7
# Facilities, Equipment, and Technology

## Standard 701. GENERAL REQUIREMENTS

(a) A law school shall have facilities, equipment, technology, and technology support that enable it to operate in compliance with the Standards and carry out its program of legal education.

(b) A law school is not in compliance with the Standards if its facilities, equipment, technology, or technology support have a negative and material effect on the school's ability to operate in compliance with the Standards; or to carry out its program of legal education.

*Interpretation 701-1*
*In determining whether technology and technology support comply with this Standard, among the factors to be considered are:*

> *(1) the hardware and software resources and infrastructure available to support the teaching, scholarship, research, service, and administrative needs of students, faculty, and staff of the law school;*

> *(2) staff support and space for staff operations; and*

*(3) the law school's financial resources and overall ability to maintain and, as appropriate, adopt new technology.*

# Standard 702. FACILITIES

**(a)  A law school's facilities shall include:**

**(1)  suitable class and seminar rooms in sufficient number to permit reasonable scheduling of all classes, skills offerings, and seminars;**

**(2)  a law library that is suitable and sufficient in size, location, and design in relation to the law school's programs and enrollment to accommodate the needs of the law school's students and faculty and the law library's services, collections, staff, operations, and equipment;**

**(3)  suitable and sufficient space for staff providing support services, including student support services, to the program of legal education;**

**(4)  office space for full-time faculty members that is suitable and sufficient for faculty research, class preparation, and faculty-student conferences; and suitable and sufficient space for part-time faculty members to conduct faculty-student conferences;**

**(5)  facilities and equipment that meet all applicable health and safety codes;**

**(6)  suitable and sufficient space for equipment and records;**

**(7)  suitable and sufficient space appropriate for conducting any in-house clinical programs in a manner that assures competent and ethical representation of clients and meaningful instruction and supervision of students, including confidential space for (i) client interviewing, (ii) working on and discussing client cases, and (iii) security for client files;**

**(8)  suitable and sufficient space for its students and faculty for quiet study and research; and**

**(9)  suitable and sufficient space for group study and other forms of collaborative work.**

**(b)  A law school shall provide reasonable access and accommodations to persons with disabilities, consistent with applicable law.**

## Interpretation 702-1
*If all or part of the facilities are leased or financed, determining whether the law school is in compliance with the Standards includes a determination of the law school's right to occupy and continue to occupy the premises, including its financial and overall ability to comply with the lease or financing terms; the duration, lease renewal terms, and conditions; and termination or foreclosure provisions.*

## Interpretation 702-2
*A law school's facilities should be under the exclusive control and reserved for the exclusive use of the law school. If the facilities are not under the exclusive control of the law school or are not reserved for its exclusive use, the arrangements must permit proper scheduling of all law classes and other law school activities.*

## Interpretation 702-3
*In determining whether class and seminar rooms comply with this Standard, among the factors to be considered are: acoustics, sight lines, seating, lighting, temperature, ventilation, and available educational technology.*

# Rules of Procedure for Approval of Law Schools

## Table of Contents

**I.  Scope and Authority** .................................................................................................**51**
Rule 1: Scope and Purpose  ...........................................................................................51
Rule 2: Council Responsibility and Authority with Regard to Accreditation Status ...............51
Rule 3: Accreditation Committee Responsibility and Authority  ........................................51
Rule 4: Appeals Panel Authority ....................................................................................52

**II.  Information** ............................................................................................................**52**
Rule 5: Site Evaluations ................................................................................................52
Rule 6: Interim Monitoring of Accreditation Status  ........................................................54
Rule 7: Acquisition of Additional Information by the Accreditation Committee and Council  ...............54
Rule 8: Submission of Information ..................................................................................54
Rule 9: Appointment of a Fact Finder .............................................................................54
Rule 10: Notice of Accreditation Decision by Other Agency .................................................55
Rule 11: Failure to Provide Information or Cooperate with the Gathering of Information ....................56

**III.  Action on Information** ...........................................................................................**56**
Rule 12: Proceedings to Determine Compliance with Standards in General  .........................56
Rule 13: Determinations of Compliance ..........................................................................57
Rule 14: Actions on Determinations of Noncompliance with a Standard  .............................57
Rule 15: Reconsideration; Right to Appeal  .....................................................................57

**IV.  Sanctions** .............................................................................................................**58**
Rule 16: Sanctions for Noncompliance with a Standard  ...................................................58
Rule 17: Sanctions for Failure to Cure Noncompliance with a Standard ..............................59
Rule 18: Monitoring and Enforcing Compliance with Sanctions .........................................59

**V. Hearings and Meetings of the Accreditation Committee** ...................................................... **60**
Rule 19: Accreditation Committee Consideration ............................................................................ 60
Rule 20: Attendance at Accreditation Committee Meetings and Hearings ...................................... 60
Rule 21: Hearings before the Accreditation Committee .................................................................. 61

**VI. Hearings and Meetings of the Council** ................................................................................ **61**
Rule 22: Council Consideration of Recommendation of Accreditation Committee ......................... 61
Rule 23: Council Consideration of Appeal from Accreditation Committee Decision ...................... 62
Rule 24: Evidence and Record for Decision .................................................................................... 62
Rule 25: Decisions by the Council .................................................................................................. 63
Rule 26: Action by Council Following Appeals Panel Proceeding ................................................. 63

**VII. Applications** ........................................................................................................................ **64**
Rule 27: Application for Provisional or Full Approval .................................................................... 64
Rule 28: Reapplication for Provisional or Full Approval ................................................................ 65
Rule 29: Application for Acquiescence in Major Change ................................................................ 65
Rule 30: Major Changes Requiring a Reliable Plan ........................................................................ 66
Rule 31: Reapplication for Acquiescence in Major Change ............................................................ 67
Rule 32: Application for Approval of Foreign Program .................................................................. 67
Rule 33: Application for Variance ................................................................................................... 68
Rule 34: Teach-Out Plan ................................................................................................................. 68

**VIII. Appeals Panel Procedure** .................................................................................................. **69**
Rule 35: Appeals Panel .................................................................................................................... 69
Rule 36: Form and Content of Appeals to the Appeal Panel ........................................................... 70
Rule 37: Membership of the Appeals Panel for the Proceeding ...................................................... 70
Rule 38: Scheduling of Appeals Panel Hearings ............................................................................. 71
Rule 39: Burdens and Evidence in Appeals Panel Proceedings ...................................................... 71
Rule 40: Procedure in Hearings before the Appeals Panel .............................................................. 71
Rule 41: Action by the Appeals Panel ............................................................................................. 72

**IX. Complaints Regarding Noncompliance with Standards** .................................................... **72**
Rule 42: Complaints in General ...................................................................................................... 72
Rule 43: Submission of Complaints ................................................................................................ 73
Rule 44: Disposition of Complaints ................................................................................................ 74
Rule 45: Notice of Disposition of Complaint .................................................................................. 74
Rule 46: Appeal of Managing Director's Disposition of Complaint ............................................... 74
Rule 47: Review of Complaint Process ........................................................................................... 75
Rule 48: Records of Complaints ...................................................................................................... 75

**X. Transparency and Confidentiality** ........................................................................................ **75**
Rule 49: Confidentiality of Accreditation Matters .......................................................................... 75
Rule 50: Communication of Decisions and Recommendations ....................................................... 75
Rule 51: Communication and Distribution of Site Evaluation Reports ........................................... 75
Rule 52: Disclosure of Decision Letters .......................................................................................... 76
Rule 53: Applications, Decisions and Recommendations Made Public ........................................... 76

Rule 54: Statistical Reports .................................................................................................................... 77
Rule 55: Publication of List of Approved Law Schools ......................................................................... 77

**XI.  Amendment of Standards, Interpretations, and Rules ................................................... 77**
Rule 56: Council Authority ................................................................................................................... 77
Rule 57: Concurrence by the ABA House of Delegates ......................................................................... 78

# I. Scope and Authority

### Rule 1:   Scope and Purpose

These Rules of Procedure govern the accreditation process as carried out by the Council, Accreditation Committee, Managing Director, and Appeals Panel. They establish processes relating to accreditation that further the purposes of the Standards and promote consistency, fairness, and transparency.

### Rule 2:   Council Responsibility and Authority with Regard to Accreditation Status

The Council has primary authority to determine compliance with the Standards. It has delegated certain authority to the Accreditation Committee as stated in Rule 3. The Council has authority to:

(a)  grant or deny an application of a law school for provisional approval or full approval;

(b)  withdraw provisional or full approval;

(c)  grant or deny applications for acquiescence in a major change, as provided in the Standards;

(d)  grant or deny applications for variances;

(e)  approve or deny approval of a teach-out plan;

(f)  impose sanctions and/or direct specific remedial action;

(g)  consider appeals from decisions of the Accreditation Committee; and

(h)  set fees for services and activities related to accreditation.

### Rule 3:   Accreditation Committee Responsibility and Authority

The responsibility and authority of the Accreditation Committee is delegated to it by the Council.

(a)  The Committee has jurisdiction to make recommendations to the Council concerning:

    (1)   an application for provisional or full approval;

    (2)   withdrawal of provisional or full approval;

    (3)   an application for acquiescence in a major change under Rules 29(a)(1) through 29(a)(13);

    (4)   an application for a variance; and

    (5)   approval or denial of a teach-out plan.

(b)  The Committee has jurisdiction to make decisions concerning all matters other than those specified in Rule 3(a), including:

   (1)  determining compliance with the Standards of any provisionally or fully approved law school in connection with a site evaluation, a complaint, a response to a request for information, a fact-finding report, interim monitoring of accreditation status, or any other circumstances as provided in these Rules;

   (2)  granting or denying an application for approval of a foreign programs, and the continuance of a foreign program as set forth in the Criteria for Approval of Foreign Summer and Intersession Programs Established by ABA-Approved Law Schools; the Criteria for Approval of Foreign Semester and Year-Long Programs; and the Criteria for Accepting Credit for Student Study at a Foreign Institution; and

   (3)  granting or denying an application for acquiescence in a major change under Rule 29(a)(14) through 29(a)(17).

(c)  The Committee has jurisdiction to impose sanctions and/or direct specific remedial action, or to recommend to the Council that it impose sanctions and/or direct specific remedial action, in accordance with Rules 16 to 18.

(d)  The Committee has the authority to create subcommittees and task forces as it deems appropriate. Subcommittees do not have the authority to take action on behalf of the Accreditation Committee but have the authority to make recommendations where appropriate.

## Rule 4:   Appeals Panel Authority

An Appeals Panel has authority to consider appeals of the following decisions of the Council:

(a)  Denial of provisional approval;

(b)  Denial of full approval; or

(c)  Withdrawal of provisional or full approval.

# II. Information

## Rule 5:   Site Evaluations

(a)  A site evaluation of a law school or of a program is a comprehensive examination of the law school or program conducted by one or more persons qualified to conduct site evaluations who:

   (1)  Review documents relating to the law school or program;

   (2)  Perform an on-site evaluation of the law school or program; and

   (3)  Prepare a factual report to be used by the Committee for purposes of making decisions or recommendations relating to accreditation status of the law school or program.

(b)  Site evaluations of law schools shall be conducted according to the following schedule:

(1)  A site evaluation of a fully approved law school shall be conducted in the third year following the granting of full approval and every seventh year thereafter.

(2)  A site evaluation of a provisionally approved law school shall be conducted in accordance with subsection (g) below.

(3)  A site evaluation shall be conducted upon application by a law school for provisional approval.

(c)  The Council or Committee may order additional site evaluations of a law school when special circumstances warrant.

(d)  In extraordinary circumstances, a site evaluation of a law school may be postponed upon the request of the law school. In such cases, the postponement shall be at the discretion of the Managing Director in consultation with the chair of the Committee and shall not exceed one year.

(e)  When a site evaluation of a law school is required under the Standards or these Rules, the Managing Director shall make the following arrangements:

(1)  Schedule the site evaluation during the regular academic year, at a time when classes in the program of legal education are being conducted.

(2)  Appoint a qualified site evaluation team of sufficient size to accomplish the purposes of the site evaluation, and appoint a chair of the site evaluation team;

(3)  Provide the site evaluation team all relevant documents relating to Accreditation Committee and Council action regarding the law school;

(4)  Provide the site evaluation team with any third-party comments received by the Managing Director's Office regarding the law school's compliance with the Standards;

(5)  Provide the site evaluation team all complaints received under Rule 43 and not dismissed by the Managing Director or the Accreditation Committee; and

(6)  Provide the site evaluation team with any necessary or appropriate directions or instructions.

(f)  In connection with a site evaluation of a law school, the Managing Director shall direct the law school to provide the following documents to the site evaluation team before the site evaluation:

(1)  All completed forms and questionnaires, as adopted by the Council; and

(2)  In the case of a law school applying for provisional or full approval, the completed application for provisional or full approval.

(g)  Site evaluations for provisionally approved law schools shall be conducted as follows:

(1)  In years two and four, and upon application for full approval, the law school shall be inspected in accordance with the rules for site evaluation of fully approved law schools.

(2)  The Accreditation Committee has the discretion to order a site evaluation in any other year. The Accreditation Committee may direct that the additional site evaluation be limited in scope.

(h)  Following a site evaluation, the site evaluation team shall prepare a written report on facts and observations that will enable the Committee to determine compliance with the Standards or other issues relating to the accreditation status of the law school. A site evaluation report shall not contain conclusions regarding compliance with Standards or make recommendations for action by the Committee or the Council.

(i)  The Managing Director shall review the report submitted by a site evaluation team and ensure that it complies with (h). The Managing Director shall then transmit the report to the president and the dean in order to provide an opportunity to make factual corrections and comments. The law school shall be given at least 30 days to prepare its response to the report, unless the law school consents to a shorter time period. The 30-day period shall run from the date on which the Managing Director transmits the report to the law school.

(j)  Following receipt of the law school's response to the site evaluation report, the Managing Director shall forward a copy of the report with the law school's response to members of the Accreditation Committee and the site evaluation team.

(k)  Site evaluations regarding foreign programs shall be conducted as provided under the:

(1)  Criteria for Approval of Foreign Summer and Intersession Programs Established by ABA-Approved Law Schools;

(2)  Criteria for Approval of Semester and Year-Long Study Abroad Programs Established by ABA-Approved Law Schools.

## Rule 6:    Interim Monitoring of Accreditation Status

(a)  The Accreditation Committee shall monitor the accreditation status of law schools on an interim basis between site evaluations. In its interim monitoring of a law school's accreditation status, the Committee shall use a law school's annual questionnaire submissions, other information requested by the Committee, and information otherwise deemed reliable by the Committee for its review.

(b)  In conducting interim monitoring of law schools, the Committee shall consider at a minimum:

(1)  Resources available to the law school;

(2)  Efforts and effectiveness in facilitating student career placement;

(3)  Bar passage; and

(4)  Student admissions including student credentials, size of enrollment, and academic attrition.

## Rule 7:    Acquisition of Additional Information by the Accreditation Committee and Council

At any time in carrying out their responsibilities under the Standards and Rules, the Committee, the Council, or the Managing Director in consultation with the Chair of the Committee or the Council, may require a law school to provide information or respond to an inquiry.

## Rule 8:    Submission of Information

In any case in which the Committee, the Council, or the Managing Director requests information from a law school pursuant to Rule 7, the law school shall be given a date certain to provide the information.

## Rule 9:    Appointment of a Fact Finder

(a)  One or more qualified persons may be appointed as fact finders for the specific purpose of gathering information to enable the Committee or the Council to determine a law school's compliance with a

Standard. A fact finder may be required at any time at the direction of the Council, Committee, or Managing Director, and may be required under Rules 29(c) and 30(e) in connection with a law school's application for acquiescence in a major change; under Rule 29(d) to assess compliance subsequent to the effective date of acquiescence in a major change; under Rule 33(b) in connection with a request for a variance; and under Rule 44(b) in connection with a complaint.

(b)  The appointment of a fact finder shall include the following:

    (1)  A statement of the Standards, Rules, or other requirements to which the appointment relates;

    (2)  A statement of questions or issues for determination by the fact finder;

    (3)  A statement of relevant documents or information provided to the fact finder; and

    (4)  A date by which the fact finding report shall be submitted.

(c)  The fact finder shall prepare a written report on facts and observations that will enable the Committee to determine compliance with a Standard or any other issue before the Committee, or determine appropriate action in response to an actual or potential violation of a Standard. A fact-finding report shall not contain conclusions regarding compliance with the Standards or make recommendations for action by the Committee.

(d)  The Managing Director shall review the report submitted by a fact finder and ensure that it complies with (c). The Managing Director shall then transmit the report to the dean in order to provide an opportunity for the law school to make factual corrections and comments. The law school shall be given at least 30 days to prepare its response to the report, unless the law school consents to a shorter time period. The 30-day period shall run from the date on which the Managing Director transmits the report to the law school.

## Rule 10:      Notice of Accreditation Decision by Other Agency

(a)  An approved law school shall promptly inform the Managing Director of the following actions with respect to the law school:

    (1)  Pending or final action by State agency to suspend, revoke, withdraw, or terminate legal authority to provide post-secondary education;

    (2)  Decision by recognized agency to deny accreditation or pre-accreditation;

    (3)  Pending or final action by recognized agency to suspend, revoke, withdraw, or terminate accreditation or pre-accreditation; or

    (4)  Probation or equivalent status imposed by recognized agency.

(b)  If the law school is part of a university, then the law school shall promptly inform the Managing Director of the above actions with respect to the university or any program offered by the university.

(c)  A law school must complete and submit the Notice of State or Other Recognized Agency Action Form.

(d)  The Council will not grant approval to a law school if the Council knows, or has reasonable cause to know, that the law school is subject to the actions in subsection (a), unless the Council can provide a thorough and reasonable explanation, consistent with the Standards, why the action of the other body does not preclude the Council's grant of approval. Such explanation will be provided to the Secretary of the Department of Education.

(e)  If the Council learns that an approved law school is the subject of an adverse action by another recognized accrediting agency or has been placed on probation or an equivalent status by another recognized agency, the Council will promptly review its approval of the law school to determine if it should also take adverse action or place the law school on probation.

(f)  The Council will, upon request, share with other appropriate recognized accrediting agencies and recognized State approval agencies information about the accreditation status of a law school and any adverse actions it has taken against a law school.

## Rule 11:    Failure to Provide Information or Cooperate with the Gathering of Information

(a)  The Committee or Council may find that a law school has:

    (1)  Failed to provide information required to be provided under the Standards:

    (2)  Failed to comply with a request for information under these Rules of Procedure;

    (3)  Provided information to the Committee or the Managing Director's Office that the Committee has reason to believe is false or misleading; or

    (4)  Failed to cooperate with a site evaluation, a fact finder, or other process for the gathering of information under the Standards or these Rules of Procedure.

(b)  If the Committee or Council makes a finding under (a) above, then the Committee or Council may direct that representatives of the law school, including any person specifically designated by the Committee or Council, appear at a hearing to determine whether to impose sanctions and/or direct specific remedial action.

# III.  Action on Information

## Rule 12:    Proceedings to Determine Compliance with Standards in General

(a)  In a proceeding to determine accreditation status or compliance with the Standards within the jurisdiction of the Committee under Rule 3, the Committee may:

    (1)  Conclude that the law school is in compliance with a Standard or all of the Standards;

    (2)  Request or gather further information that will enable the Committee to determine compliance with one or more Standards;

    (3)  Conclude that the Committee has reason to believe that a law school has not demonstrated compliance with the Standards;

    (4)  Conclude that the law school is not in compliance with a Standard; or

    (5)  Appoint a fact-finder.

(b) In the event the Committee requests or gathers further information or appoints a fact finder in accordance with 12(a) upon receipt of the law school's response or any fact-finding report, the Committee must find the law school in compliance or not in compliance with the Standards for which information was requested or gathered, absent clearly articulated special circumstances. In the event of such special circumstances, the Committee may request or gather further information pursuant to 12(a)(2), 12(a)(3), or 12(a)(5).

## Rule 13:      Determinations of Compliance

(a) A determination that the law school is in compliance with all of the Standards means that the law school remains an approved law school.

(b) In finding a law school in compliance with a Standard, the Committee may couple the finding with a statement calling the law school's attention to the requirements of that Standard when the Committee has reason to believe that the law school might, at some time before the next scheduled site evaluation, no longer be in compliance with the Standard in question.

(c) The approval status of a law school is not affected while an appeal from, or review of, a decision or recommendation of the Committee or Council is pending.

## Rule 14:      Actions on Determinations of Noncompliance with a Standard

(a) Following a determination by the Committee of non-compliance with a Standard in accord with Rule 12(a)(4), the Committee shall:

   (1) Require the law school to bring itself into compliance and submit information by a specific date to demonstrate that it has come into compliance with the Standard; and

   (2) Direct that representatives of the law school, including any person specifically designated by the Committee, appear at a hearing to determine whether to impose sanctions in connection with the law school's non-compliance with the Standard.

(b) The period of time by which a law school is required to demonstrate compliance with a Standard shall not exceed two years from the date of determination of noncompliance, except as provided for in subsection (c).

(c) Upon request of the law school and for good cause shown, the Committee may extend the date of compliance or may recommend that the Council extend the date of compliance.

## Rule 15:      Reconsideration; Right to Appeal

(a) A law school does not have the right to request reconsideration of a decision or recommendation made by the Accreditation Committee or to request reconsideration of a decision made by the Council.

(b) A law school has a right to appeal a decision of the Accreditation Committee as provided in Rule 23.

(c) A law school has a right to appeal a decision of the Council as provided in Rule 36.

# IV. Sanctions

**Rule 16:      Sanctions for Noncompliance with a Standard**

(a)  Conduct for which sanctions may be imposed upon a law school includes, without limitation:

    (1)  Substantial or persistent noncompliance with one or more of the Standards;

    (2)  Failure to present a reliable plan to bring the law school into compliance with the Standards;

    (3)  Failure to provide information or to cooperate in a site evaluation as required by the Standards;

    (4)  Making misrepresentations or engaging in misleading conduct in connection with consideration of the law school's status by the Committee or the Council, or in public statements concerning the law school's approval status;

    (5)  Initiating a major change or implementing a new program without having obtained the prior approval or acquiescence required by the Standards; or

    (6)  Provision of incomplete, inaccurate or misleading consumer information in violation of Standard 509.

(b)  Sanctions may include any or all of the following:

    (1)  A monetary payment;

    (2)  A requirement that the law school refund all or part of tuition or fees paid by students;

    (3)  Public censure;

    (4)  Private censure;

    (5)  Publication or distribution of an apology or corrective statement by the law school;

    (6)  A prohibition against initiating new programs for a specific period;

    (7)  Probation for a specific period or until specific conditions are fulfilled; or

    (8)  Withdrawal of provisional or full approval.

(c)  The Committee may itself impose any sanction under (b), except for sanctions under (7) or (8), which the Committee may recommend to the Council.

(d)  Any sanction under (e) may be imposed, even if the law school has, at the time of the decision or recommendation, ceased the actions that are the basis for sanctions or otherwise brought itself into compliance with the Standards.

(e)  The Committee will consider aggravating and mitigating circumstances in determining the appropriate sanction, including the amount of a monetary payment.

    (1)  Aggravating circumstances are considerations or factors that may justify an increase in the degree or severity of the sanction to be imposed and include, without limitation:

        (i)      prior history of violations;

        (ii)     degree of negligence, recklessness, or knowledge;

        (iii)    effort to conceal;

        (iv)    dishonest or selfish motive;

(v)    a pattern of misconduct;

(vi)    bad faith obstruction of an investigation or sanction proceeding by failing to comply with requests of the Managing Director's Office, a Fact Finder, or rules of a sanction proceeding;

(vii)    submission of false or misleading evidence, false or misleading statements, or other deceptive practices during the investigation process or sanction proceeding;

(viii)    refusal to acknowledge wrongful nature of conduct;

(ix)    injury to former, current, or prospective law students;

(x)    apparent amount of monetary, strategic, or reputational gain;

(xi)    failure to have sufficient systems in place to ensure compliance, including the law school dean's lack of oversight;

(xii)    institutional incentive structures that may contribute to noncompliance; and

(xiii)    failure to enquire or investigate when circumstances warrant enquiry or investigation.

(2)    Mitigating circumstances are any considerations or factors that may justify withholding or reducing a sanction and include, without limitation:

(i)    absence of a prior history of violations;

(ii)    degree of negligence, recklessness, or knowledge;

(iii)    apparent lack of monetary, strategic, or reputational gain;

(iv)    self-reporting of violation;

(v)    timely good faith effort to rectify consequences of violation;

(vi)    full and free disclosure to and cooperation with Managing Director's Office, cooperation with fact finder, or cooperative attitude toward sanction proceedings; and

(vii)    imposition of other sanctions.

## Rule 17:    Sanctions for Failure to Cure Noncompliance with a Standard

If, following a determination by the Committee that a law school is not in compliance with a Standard, the law school fails to bring itself into compliance within the time specified by the Committee, including any extension for good cause, or fails to complete remedial action directed under 16(c) or fails to comply with sanctions imposed by the Committee or Council under 16(d), the Committee shall impose or recommend that the Council impose further remedial action or sanctions as provided for in 16(c) and 16(d) or recommend that the Council extend the period for the law school to bring itself into compliance.

## Rule 18:    Monitoring and Enforcing Compliance with Sanctions

(a)  The Committee shall monitor the law school's compliance with any requirements for remedial action, any sanctions, or any requirements of probation imposed under these Rules. If the Committee concludes that the law school is not complying with the sanctions that have been imposed, or not making adequate progress toward bringing itself into compliance with the Standards, or not fulfilling the requirements of its probation, the Committee may impose or recommend that the Council impose additional sanctions referred to in 16(d). The Committee may itself impose any sanction under 16(d), except for sanctions under (7) or (8).

(b) If a law school has been placed on probation, the law school shall demonstrate compliance with the Standards by the end of the period fixed for probation. If the law school fails to demonstrate compliance, then the Committee shall:

   (1) Recommend that the Council withdraw approval; or

   (2) Recommend that, for good cause shown, the Council extend the period for the law school to bring itself into compliance.

(c) If a law school has been placed on probation, and the law school demonstrates compliance with the Standards by the end of the period fixed for probation, then the Committee shall recommend to the Council that probationary status be removed.

# V. Hearings and Meetings of the Accreditation Committee

## Rule 19:     Accreditation Committee Consideration

(a) The Accreditation Committee shall consider the status of a law school under Part III or an application from a law school under Part VII based on a record consisting of the following, as appropriate:

   (1) Any fact finder's report relating to the subject matter under consideration and any response from the law school;

   (2) The most recent site evaluation report and any response from the law school;

   (3) The most recent site evaluation questionnaire;

   (4) The most recent annual questionnaire;

   (5) Any letters reporting Committee or Council decisions written subsequent to the most recent site evaluation report, and any responses of the law school;

   (6) The application for provisional or full approval;

   (7) The application for acquiescence in a major change;

   (8) The application for a variance of a standard; and

   (9) Any other information that the Managing Director and the Chair determine relevant to the matter under consideration.

(b) The Committee shall make findings of fact and state conclusions with respect to the matter under consideration. If the matter falls within the provisions of Rule 3(a), the Committee shall make recommendations to the Council.

## Rule 20:     Attendance at Accreditation Committee Meetings and Hearings

(a) A law school has a right to have representatives of the law school, including legal counsel, appear before the Committee at a hearing regarding (i) the law school's application for provisional approval, (ii) the law school's application for full approval, (iii) the law school's application for acquiescence in a

major change under Rule 29(a)(1) – 29(a)(13), or at a hearing to determine whether to impose sanctions and/or direct specific remedial action on the part of the law school.

(b)  The Managing Director in consultation with the Chair of the Committee may set reasonable limitations on the number of law school representatives that may appear and on the amount of time allotted for the appearance.

(c)  Except as permitted in subsection (a), a law school does not have a right to appear at a meeting of the Accreditation Committee.

(d)  The Managing Director or designee and any additional staff designated by the Managing Director shall be present at Accreditation Committee meetings and hearings. Legal Counsel for the Section may also be present at Accreditation Committee meetings and hearings.

**Rule 21:      Hearings before the Accreditation Committee**

(a)  In any hearing held in accordance with Rules 11(b) or 14(a)(2), the Managing Director shall give the law school at least 30 days' notice of the Committee hearing. The notice shall specify the apparent non-compliance with the Standards or the apparent failure to provide information or to cooperate with the gathering of information and shall state the time and place of the hearing. For good cause shown, the Managing Director in consultation with the Chair may grant the law school additional time, not to exceed 30 days. Both the notice and the request for extension of time must be in writing.

(b)  In any hearing before the Committee, the Managing Director shall provide the Committee with all appropriate questionnaires, reports, correspondence and any other information that the Managing Director and the Chair determine relevant to the hearing.

(c)  If the Committee determines following a hearing that a law school is not in compliance with a Standard then the Committee may:

(1)  Impose sanctions, or recommend that the Council impose sanctions, on the law school; and/or

(2)  Direct specific remedial action on the part of the law school.

(d)  Upon receipt of information demonstrating compliance with the Standard, the Committee may at any time find that the law school is in compliance and cancel the hearing.

# VI. Hearings and Meetings of the Council

**Rule 22:      Council Consideration of Recommendation of Accreditation Committee**

(a)  A law school has a right to have representatives of the law school, including legal counsel, appear before the Council at a Council hearing following a Committee recommendation regarding (i) the law school's application for provisional approval, (ii) the law school's application for full approval, (iii) the law school's application for acquiescence in a major change under Rule 29(a)(1) – 29(a)(13), and

(iv) the Committee's recommendation to impose sanctions following a hearing held in accordance with Rules 11(b) or 14(a)(2).

(b) The Managing Director in consultation with the Chair of the Council may set reasonable limitations on the number of law school representatives that may appear at a meeting and on the amount of time allotted for the appearance.

(c) Except as permitted in subsection (a), a law school does not have a right to appear at a Council meeting, hearing or proceeding on any matter related to the accreditation of a law school.

(d) The Chair of the Council may invite the Chair of the Accreditation Committee to appear at the hearing, if the Chair determines that such person could reasonably be expected to provide information helpful to the Committee. The Chair of the Accreditation Committee may not present new evidence unless the law school has the opportunity to respond to that new evidence.

(e) The Managing Director or designee and any additional staff designated by the Managing Director shall be present at Accreditation Committee meetings and hearings. Legal Counsel for the Section may also be present at Accreditation Committee meetings and hearings.

## Rule 23:      Council Consideration of Appeal from Accreditation Committee Decision

(a) A law school may appeal a decision of the Committee by filing with the Managing Director a written appeal within 30 days after the date of the letter reporting the Committee's decision.

(b) The Council shall consider the appeal promptly and, when feasible, at its next regularly scheduled meeting.

(c) A law school shall not have a right to appear before the Council in connection with the appeal.

## Rule 24:      Evidence and Record for Decision

(a) In any action on a recommendation of the Committee or in any appeal from a Committee decision, the Council shall adopt the Committee's findings of fact unless the Council determines that the findings are not supported by substantial evidence in the record.

(b) In any action on a recommendation of the Committee or in any appeal from a Committee decision, the record on which the Council shall make its decision shall be the following:

   (1)  The record before the Committee on which the Committee based its decision or recommendation;

   (2)  The letter setting forth the Committee's decision or recommendation;

   (3)  The written appeal by the law school, if applicable;

   (4)  Any written submission by the Committee in response to an appeal, if applicable;

   (5)  Any testimony of the law school in a hearing or an appearance before the Council.

(c) Except as specifically provided otherwise in these Rules, the law school shall not present any evidence to the Council that was not before the Committee at the time of the Committee's decision or recommendation.

(d) In any action on a recommendation of the Committee or in any appeal from a Committee decision, the Council will accept new evidence submitted by the law school only if the Executive Committee of the Council determines that:

    (1)   The evidence was not presented to the Committee;

    (2)   The evidence could not reasonably have been presented to the Committee;

    (3)   A reference back to the Committee to consider the evidence would, under the circumstances, present a serious hardship to the law school;

    (4)   The evidence was submitted at least 14 days in advance of the Council meeting; and

    (5)   The evidence was appropriately verified at the time of submission.

## Rule 25:  Decisions by the Council

(a) In any action on a recommendation of the Committee or in any appeal from a Committee decision, the Council shall give substantial deference to the conclusions, decisions, and recommendations of the Committee.

(b) In any action on a recommendation of the Committee or in any appeal from a Committee decision, the Council may, as appropriate:

    (1)   Affirm the Committee's decision or recommendation;

    (2)   Amend the Committee's decision or recommendation, including imposing any sanction regardless of whether the Committee has imposed or recommended any sanction;

    (3)   Reverse the Committee's decision or recommendation; or

    (4)   Remand the matter to the Committee for further proceedings.

(c) If the Council remands a decision for further consideration or action by the Committee, the Council shall identify specific issues that the Committee must address.

## Rule 26:  Action by Council Following Appeals Panel Proceeding

(a) If the Appeals Panel remands a decision of the Council for further consideration or action by the Council, the Council shall proceed in a manner consistent with the Appeals Panel's decisions or instructions.

(b) In implementing the decision of the Appeals Panel, the Council may impose monitoring, reporting or other requirements on the law school consistent with the Appeals Panel decision and the Rules of Procedure.

# VII. Applications

**Rule 27:      Application for Provisional or Full Approval**

(a)   A law school seeking provisional or full approval shall submit its application to the Managing Director after the beginning of fall term classes but no later than October 15 in the academic year in which the law school is seeking approval.

   (1)   If the law school is seeking a site evaluation in the fall academic term it shall also file with the Managing Director, during the month of March of the preceding academic year, a written notice of its intent to do so.

   (2)   A provisionally approved law school may apply for full approval no earlier than two years after the date that provisional approval was granted.

   (3)   Upon notice to the Managing Director of its intent to seek provisional approval, a law school seeking provisional approval shall comply with Standard 102(f) regarding communication of its status.

(b)   The application for provisional or full approval must contain:

   (1)   A letter from the dean certifying that the law school has completed all of the requirements for seeking provisional or full approval or that the law school seeks a variance from specific requirements of the Standards and that the law school has obtained the concurrence of the president in the application;

   (2)   All completed forms and questionnaires, as adopted by the Council;

   (3)   In the case of a law school seeking provisional approval, a copy of a feasibility study that evaluates the nature of the educational program and goals of the law school, the profile of the students who are likely to apply, and the resources necessary to create and sustain the law school, including relation to the resources of a parent institution, if any;

   (4)   A copy of the self-study;

   (5)   Financial operating statements and balance sheets for the last three fiscal years, or such lesser time as the institution has been in existence. If the applicant is not a publicly owned institution, the statements and balance sheets must be certified;

   (6)   Appropriate documents detailing the law school and parent institution's ownership interest in any land or physical facilities used by the law school;

   (7)   A request that the Managing Director schedule a site evaluation at the law school's expense; and

   (8)   Payment to the Section of the application fee.

(c)   A law school may not apply for provisional approval until it has completed the first full academic year of its program,

(d)   A law school must demonstrate that it or the university of which it is a part is legally authorized under applicable state law to provide a program of education beyond the secondary level.

(e)   A law school shall disclose whether an accrediting agency recognized by the United States Secretary of Education has denied an application for accreditation filed by the law school, revoked the accreditation of the law school, or placed the law school on probation. If the law school is part of a university, then

the law school shall further disclose whether an accrediting agency recognized by the United States Secretary of Education has taken any of the actions enumerated above with respect to the university or any program offered by the university. As part of such disclosure, the law school shall provide the Managing Director with information concerning the basis for the action of the accrediting agency.

(f) When a law school submits a completed application for provisional or full approval, the Managing Director shall arrange for a site evaluation as provided under Rule 5.

## Rule 28:     Reapplication for Provisional or Full Approval

(a) If the Council denies an application for provisional or full approval or withdraws provisional or full approval, or if a law school withdraws an application for provisional or full approval, a law school shall not reapply until it is able to certify that it has addressed the reasons for the denial, removal, or withdrawal, explain how it has done so, and is able to demonstrate that it is operating in compliance with the Standards.

(b) Any new application must be filed within the schedule prescribed by Rule 27(a).

## Rule 29:     Application for Acquiescence in Major Change

(a) Major changes requiring application for acquiescence include:

    (1)   Acquiring another law school, program, or educational institution;

    (2)   Acquiring or merging with another university by the parent university where it appears that there may be substantial impact on the operation of the law school;

    (3)   Transferring all, or substantially all, of the program of legal education or assets of the approved law school to another law school or university;

    (4)   Merging or affiliating with one or more approved or unapproved law schools;

    (5)   Merging or affiliating with one or more universities;

    (6)   Materially modifying the law school's legal status or institutional relationship with a parent institution;

    (7)   A change in control of the law school resulting from a change in ownership of the law school or a contractual arrangement;

    (8)   A change in the location of the law school that could result in substantial changes in the faculty, administration, student body, or management of the law school;

    (9)   Establishing a branch campus;

    (10)  Establishing a separate location other than a branch campus;

    (11)  A significant change in the mission or objectives of the law school;

    (12)  The addition of courses or programs that represent a significant departure from existing offerings or method of delivery since the most recent accreditation period including combined undergraduate and J.D. programs, such as 2/4, 4/2 programs, and programs leading to a J.D. and a first-degree program at foreign institution; instituting a new full-time or part-time program; or changing from a full-time to a part-time program or from a part-time to a full-time program;

(13) The addition of a permanent location at which the law school is conducting a teach-out for students at another law school that has ceased operating before all students have completed their program of study;

(14) Contracting with an educational entity that is not certified to participate in Title IV, HEA programs, that would permit a student to earn 25 percent or more of the course credits required for graduation from the approved law school;

(15) Establishing a new or different program leading to a degree other than the J.D. degree;

(16) A change in program length measurement from clock hours to credit hours; and

(17) A substantial increase in the number of clock or credit hours required for graduation.

(b) An application for acquiescence in a major change shall consist of the following:

(1) All completed forms and questionnaires, as adopted by the Council;

(2) A letter from the dean certifying that the law school has completed all of the requirements for requesting acquiescence in a major change and that the law school has obtained the concurrence of the president in the application;

(3) A copy of the law school's most recent self-study or an updated self-study if the most recent self-study is more than three years old where the application is for acquiescence in a major change described in Rule 29(a)(1) through 29(a)(13);

(4) A description of the proposed change and a detailed analysis of the effect of the proposed change on the law school's compliance with the Standards;

(5) Payment to the Section of the application fee.

(c) The Managing Director shall appoint a fact finder in connection with an application for acquiescence in a major change, except that no fact finder is required if the Managing Director and the Chair of the Accreditation Committee determine that the application does not require additional information to assist Accreditation Committee and Council determination of the question of acquiescence.

(d) In recommending or granting acquiescence in a major change, the Committee or Council may appoint a fact finder subsequent to the effective date of acquiescence, for purposes of determining whether the law school remains in compliance with the Standards.

(e) A law school's approval status remains unchanged following acquiescence in any major change.

## Rule 30:    Major Changes Requiring a Reliable Plan

(a) In addition to satisfying the requirements of Rule 29(b), an application for acquiescence under 29(a)(1) through Rule 29(a)(9) shall include a reliable plan.

(b) The reliable plan in connection with the establishment of a branch campus under Rule 29(a)(9) shall contain information sufficient to allow the Accreditation Committee and the Council to determine that:

(1) The proposed branch campus has achieved substantial compliance with the Standards and is reasonably likely to achieve full compliance with each of the Standards within three years of the effective date of acquiescence;

(2) The proposed branch campus will meet the requirements of Standard 106 applicable to separate locations and branch campuses.

(c)  The reliable plan regarding a matter involving a substantial change in ownership, governance, control, assets, or finances of the law school, under Rule 29(a)(1) through 29(a)(7) shall contain information sufficient to allow the Accreditation Committee and the Council to determine whether the law school is reasonably likely to be in full compliance with each of the Standards as of the effective date of acquiescence.

(d)  The reliable plan regarding a change in location of the law school that could result in substantial changes in the faculty, administration, student body, or management of the law school under Rule 29(a)(8) shall contain information sufficient to allow the Accreditation Committee and the Council to determine whether the law school is reasonably likely to be in full compliance with each of the Standards within one year of the effective date of acquiescence.

(e)  In a case where the Council has acquiesced in a major change subject to (a), the Council shall appoint a fact finder subsequent to the effective date of acquiescence, as provided in (f), (h), or (i).

(f)  In the case of the establishment of a branch campus under Rule 29(a)(9), the fact finder required in accordance with (e) shall be appointed within six months of the effective date of acquiescence to verify that the branch campus satisfies the requisites of (b)(2).

(g)  In a case involving a substantial change in ownership, control, assets, or finances of the law school under Rule 29(a)(1) through 29(a)(7), the fact finder required in accordance with (e) shall be appointed within six months of the effective date of acquiescence to verify that the law school is in compliance with the Standards.

(h)  In a case involving a substantial change in location of the law school that could result in substantial changes in the faculty, administration, student body, or management of the law school, under Rule 29(a)(8), the fact finder required in accordance with (e) shall be appointed within one year of acquiescence to verify that the law school is in compliance with the Standards.

## Rule 31:    Reapplication for Acquiescence in Major Change

(a)  If the Committee or Council denies an application for acquiescence in a major change, or if an application for acquiescence in a major change is withdrawn by a law school, a law school shall not reapply until it is able to certify in its application that it has addressed the reasons for the denial or withdrawal, explains how it has done so, and is able to demonstrate that it is operating in compliance with the Standards.

(b)  Any new application must be filed in accordance with Rule 29.

## Rule 32:    Application for Approval of Foreign Program

(a)  A law school may apply for approval of programs in accordance with the procedures set forth in the following Criteria:

   (1)  Criteria for Approval of Foreign Summer and Intersession Programs Established by ABA-Approved Law Schools; or

   (2)  Criteria for Approval of Semester and Year-Long Study Abroad Programs Established by ABA-Approved Law Schools.

**Rule 33:     Application for Variance**

(a) A law school applying for a variance has the burden of demonstrating that the variance should be granted. The application should include, at a minimum, the following:

    (1) A precise description of the program changes or other actions for which the variance is sought, and identification of the Standard or Standards with which they are or may be inconsistent;

    (2) An explanation of the bases and reasons that justify granting the variance; and

    (3) Any additional information and factual material needed to sustain the law school's burden of proof and support the granting of the application.

(b) The chair of the Accreditation Committee or the Managing Director may appoint one or more fact finders to elicit additional information and facts relevant and necessary to consideration of the application for a variance.

(c) The Managing Director, the Accreditation Committee or the Council may request written reports from a law school to which a variance has been granted in addition to the written reports required under the terms of the variance.

**Rule 34:     Teach-Out Plan**

(a) If a provisional or fully approved law school decides to cease operations or close a branch campus, the law school shall promptly make a public announcement of the decision and shall notify the Managing Director, the appropriate state licensing authority, and the United States Department of Education of the decision.

(b) A provisional or fully approved law school must submit a teach-out plan for approval upon occurrence of any of the following events:

    (1) The law school notifies the Managing Director's Office that it intends to cease operations or close a branch campus;

    (2) The Accreditation Committee recommends, or the Council acts to withdraw, terminate, or suspend, the accreditation of the law school;

    (3) The United States Secretary of Education notifies the Managing Director's Office that the Secretary has initiated an emergency action against an institution, in accordance with section 487(c)(1)(G) of the HEA, or an action to limit, suspend, or terminate an institution participating in any title IV, HEA program, in accordance with section 487(c)(1)(F) of the HEA, and that a teach-out plan is required;

    (4) A state licensing or authorizing agency notifies the Managing Director's Office that an institution's license or legal authorization to provide an educational program has been or will be revoked.

(c) The law school shall submit the teach-out plan for the law school or branch being closed as required by paragraph (b) to the Managing Director's Office within the time specified by the Managing Director. The Managing Director's Office, in consultation with the Chair of the Accreditation Committee, may require a law school to enter into a teach-out agreement as part of its teach-out plan.

(d) A law school must submit the "Teach-Out Plan Approval Form," as adopted by the Council, and address each item in the form.

(e)  If a law school voluntarily enters into a teach-out agreement or if the Managing Director requires a law school to submit a teach-out agreement as part of a teach-out plan, the law school must submit the "Teach-Out Agreement Approval Form," as adopted by the Council, and address each criterion in the form.

(f)  The Accreditation Committee will promptly review a teach-out plan submitted in accordance with (b) and (c) and shall recommend approval or denial of of the plan by the Council.

   (1)  Approval of the teach-out plan may be conditioned on specified changes to the plan.

   (2)  If the teach-out plan is denied, the law school must revise the plan to meet the deficiencies identified and resubmit the plan no later than 30 days after receiving notice of the decision.

(g)  Upon approval of a teach-out plan of a law school or branch that is also accredited by another recognized accrediting agency, the Managing Director's Office shall notify that accrediting agency within 30 days of its approval.

(h)  Upon approval of a teach-out plan, the Managing Director shall within 30 days notify all recognized agencies that accredit other programs offered by the institution of which the law school is a part.

(i)  In the event a law school closes without an approved teach-out plan or agreement, the Managing Director's office will work with the United States Department of Education and the appropriate State agency, to the extent feasible, to assist students in finding reasonable opportunities to complete their education without additional charges.

# VIII.  Appeals Panel Procedure

## Rule 35:     Appeals Panel

(a)  The Appeals Panel shall consist of at least three persons appointed by the Chair of the Council. Members shall serve a one-year term beginning at the end of the Annual Meeting of the Section and continuing to the end of the next Annual Meeting of the Section or until replaced. Appeals Panel members and alternates are eligible to serve consecutive terms or non-consecutive multiple terms.

   (1)  The Chair of the Council shall designate one member of the Appeals Panel to serve as its chair.

   (2)  The Chair of the Council shall also appoint, at the same time as appointing members of the Appeals Panel and for the same term, an equal number of alternates to the Appeals Panel.

(b)  Every member of the Appeals Panel and alternate shall be:

   (1)  A former member of the Council or Accreditation Committee; or

   (2)  An experienced site evaluator.

(c)  Members of the Appeals Panel and alternates shall be:

   (1)  Experienced in and knowledgeable about the Standards, Interpretations and Rules of Procedure;

(2)  Trained in the Standards, Interpretations and Rules of Procedure at a retreat or workshop or by other appropriate methods within the 3 years prior to appointment; and

(3)  Subject to the Section's Conflicts of Interest Policy, as provided in IOP 19.

(d)  The Appeals Panel, and the group of alternates, shall each include legal educators, practitioners, members of the judiciary, and representatives of the public. No more than fifty percent of the members may be persons whose primary professional employment is as a law school dean, faculty or staff member. Public members shall have qualifications and representation consistent with the regulations of the United States Department of Education applicable to the accreditation of professional schools.

## Rule 36:     Form and Content of Appeals to the Appeal Panel

(a)  A law school may appeal decisions of the Council specified in Rule 4 by filing a written appeal with the Managing Director within 30 days after the date of the letter to the law school reporting the decision of the Council.

(b)  The written appeal must include:

(1)  A statement of the grounds for appeal; and

(2)  Documentation in support of the appeal.

(c)  The grounds for an appeal are limited to the following:

(1)  That the decision of the Council was arbitrary and capricious; or

(2)  That the Council failed to follow the applicable Rules of Procedure and the procedural error prejudiced its decision.

(d)  The written appeal and supporting documentation may not contain or refer to any evidence that was not in the record before the Council.

## Rule 37:     Membership of the Appeals Panel for the Proceeding

(a)  Within 30 days of receipt of a written appeal within the scope of authority of the Appeals Panel, the Managing Director shall ensure that the Appeals Panel or the Appeals Panel with alternates is authorized and available to decide the appeal.

(b)  In the event a member of the Appeals Panel cannot participate in the appeal, the Managing Director shall appoint one of the alternates to the panel hearing the matter and making the decision, and shall ensure that the panel includes one legal educator, one judge or practitioner, and one public member.

(c)  In the event an alternate cannot be appointed to participate in a decision on appeal so as to ensure that the panel includes one legal educator, one judge or practitioner, and one public member, the Managing Director shall appoint to the panel another person who:

(1)  Wholly or substantially meets the criteria of Rule 35(b) and (c); and

(2)  Whose appointment to the panel ensures that the panel includes one legal educator, one judge or practitioner, and one public member.

(d) In the event the Chair of the Appeals Panel is unable to participate in the appeal, the Managing Director shall appoint a Chair Pro Tempore, where possible from among the members of the Appeals Panel appointed by the Chair of the Council.

## Rule 38:     Scheduling of Appeals Panel Hearings

(a) Within 30 days of receipt of a written appeal within the scope of authority of the Appeals Panel, the Managing Director shall refer the appeal to the Appeals Panel. In referring the appeal, the Managing Director shall provide the members of the Appeals or alternates hearing the appeal with copies of:

   (1)  The written appeal;

   (2)  The decision of the Council; and

   (3)  The record before the Council, including any transcript of hearing.

(b) The Managing Director, in consultation with the Chair or Chair Pro Tempore of the Appeals Panel, shall set the date, time, and place of the hearing.

   (1)  The hearing shall be scheduled within forty-five days of the Managing Director's referral of the appeal to the Appeal Panel.

   (2)  The Managing Director shall inform the law school of the date, time, and place of the hearing at least 30 days in advance of the hearing, unless the law school agrees to the hearing on less than 30 days' notice.

## Rule 39:     Burdens and Evidence in Appeals Panel Proceedings

(a) The law school appealing to the Appeals Panel has the burden of demonstrating that the Council's decision was arbitrary and capricious and not supported by the evidence on record, or inconsistent with the Rules of Procedure and that inconsistency prejudiced its decision.

(b) The appeal shall be decided based on the record before the Committee and the Council, the decision letters of those bodies and any documents cited in those decision letters, and transcripts of hearings before the Committee and the Council. Except as provided in Rule 41(e), no new evidence shall be considered by the Appeals Panel.

## Rule 40:     Procedure in Hearings before the Appeals Panel

(a) The hearing will be a closed proceeding and not open to the public.

(b) The law school shall have a right to have representatives, including legal counsel, appear at the hearing.

(c) The Council shall be represented at the hearing through the Chair, other members of the Council as the Chair of the Council deems appropriate, and legal representation for the Council.

(d) The Managing Director or designee shall be present at the hearing. The Managing Director may designate additional staff to be present at the hearing.

(e) The hearing shall be transcribed by a court reporter and a transcript of the hearing shall be provided to the Appeals Panel, the Council, and the law school.

**Rule 41:      Action by the Appeals Panel**

(a)  Within 30 days of the hearing, the Appeals Panel shall provide the Council and the law school with a written statement of the Appeals Panel's decision and the basis for that decision.

(b)  The Appeals Panel, following a hearing, has the authority to:

  (1)   Affirm the decision of the Council;

  (2)   Reverse the decision of the Council and enter a new decision;

  (3)   Amend the decision of the Council; or

  (4)   Remand the decision of the Council for further consideration.

(c)  The decision of the Appeals Panel shall be effective upon issuance. If the Appeals Panel remands a decision for further consideration or action by the Council, the Appeals Panel shall identify specific issues that the Council must address.

(d)  Decisions by the Appeals Panel under (b)(1), (2) and (3) are final and not appealable.

(e)  When the only remaining deficiency cited by the Council in support of an adverse decision is a law school's failure to meet the Standards dealing with financial resources for a law school, the law school may request a review of new financial information that was not part of the record before the Council at the time of the adverse decision if all of the following conditions are met:

  (1)   A written request for review is filed with the Consultant within 30 days after the date of the letter reporting the adverse decision of the Council to the law school;

  (2)   The financial information was unavailable to the law school until after the adverse decision subject to the appeal was made; and

  (3)   The financial information is significant and bears materially on the financial deficiencies that were the basis of the adverse decision by the Council.

(f)  The request to review new financial information will be considered by the Council at its next meeting occurring at least 30 days after receipt of the request.

(g)  A law school may request review of new financial information only once and a decision made by the Council with respect to that review does not provide a basis for appeal.

# IX. Complaints Regarding Noncompliance with Standards

**Rule 42:      Complaints in General**

(a)  The United States Department of Education procedures and rules for the recognition of accrediting agencies require a recognized accrediting agency to have a process for the reporting of complaints against accredited institutions that might be out of compliance with the agency's accreditation standards.

This is the process for the Council with regard to law schools having J.D. programs approved by the Council.

(b) The process for Complaints under these Rules aims to bring to the attention of the Council, the Committee, and the Managing Director facts and allegations that may indicate that an approved law school is operating its program of legal education out of compliance with the Standards.

(c) This process is not available to serve as a mediating or dispute-resolving process for persons with complaints about the policies or actions of an approved law school. The Council, the Committee and the Managing Director will not intervene with an approved law school on behalf of an individual with a complaint against or concern about action taken by a law school that adversely affects that individual. The outcome of this process will not be the ordering of any individual relief for any person or specific action by a law school with respect to any individual.

(d) If a law school that is the subject of a complaint is due to receive a regularly scheduled sabbatical site evaluation within a reasonable amount of time after the complaint is received, usually within one year, the complaint may be handled as part of the sabbatical site evaluation.

## Rule 43:     Submission of Complaints

(a) Any person may file with the Managing Director a written complaint alleging non-compliance with the Standards.

   (1) Except in extraordinary circumstances, the complaint must be filed within one calendar year of the facts on which the allegation is based. Pursuit of other remedies does not toll this one calendar year limit.

   (2) Complaints must be in writing using the form "Complaint Against an ABA Approved Law School" and must be signed. The form shall be available both online and from the Office of the Managing Director.

   (3) Anonymous complaints will not be considered.

   (4) A complaint that has been resolved will not be subject to further review or reconsideration unless subsequent complaints about the law school raise new issues or suggest a pattern of significant noncompliance with the Standards not evident from the consideration of the previously resolved complaint.

(b) The Complaint must provide the following information:

   (1) A clear and concise description of the nature of the complaint and any evidence upon which the allegation is based, with relevant supporting documentation. The description and supporting evidence should include relevant facts that support the allegation that the law school is out of compliance with the Standards referenced in the complaint.

   (2) The Standards and Interpretations alleged to have been violated and the time frame in which the lack of compliance is alleged to have occurred.

   (3) A description of the steps taken to exhaust the law school's grievance process and the actions taken by the law school in response to the complaint as a result of prescribed procedures.

   (4) Disclosure of any other channels the complainant is pursuing, including legal action.

   (5) A release authorizing the Managing Director's Office to send a copy of the complaint to the dean.

(c) If the person filing the complaint is not willing to sign a release authorizing the Managing Director's Office to send a copy of the complaint to the dean, the matter will be closed. If the Managing Director concludes that extraordinary circumstances so require, the name of the person filing the complaint may be withheld from the law school.

## Rule 44:     Disposition of Complaints

(a) The Managing Director, upon receiving a complaint submitted in accordance with Rule 43 and not dismissed, shall proceed as follows:

    (1) The Managing Director shall acknowledge receipt of the complaint within 14 days of its receipt.

    (2) The Managing Director shall determine whether the complaint alleges facts that raise issues relating to an approved law school's compliance with the Standards. This determination shall be made within six weeks of receiving the complaint. If the Managing Director concludes that the complaint does not raise issues relating to an approved law school's compliance with the Standards, the matter will be closed.

    (3) If the Managing Director determines that the complaint may raise issues relating to an approved law school's compliance with the Standards, the Managing Director will send the complaint to the law school and request a response within 30 days. The Managing Director may extend the period for response if, in the judgment of the Managing Director, there is good cause for such an extension.

    (4) The Managing Director will review any response to a complaint within 45 days of receipt. If the response establishes that the law school is not out of compliance with respect to the matters raised in the complaint, the Managing Director will close the matter.

(b) If the law school's response to a complaint does not establish that it is in compliance with the Standards on the matters raised by the complaint, the Managing Director, in consultation with the Chair of the Committee, may appoint a fact finder to investigate the issues raised by the complaint and the law school's response.

(c) If the law school's response to a complaint does not establish that it is in compliance with the Standards on the matters raised by the complaint, then the Managing Director shall refer the complaint, along with the law school's response, the fact-finder's report, if any, and any other relevant information, to the Committee for further action in accordance with these Rules.

## Rule 45:     Notice of Disposition of Complaint

The Managing Director will promptly notify the person submitting a complaint of the final disposition of the complaint. The notification shall not include a copy of the law school's response, if any, and shall not include a copy of any written decision of the Committee.

## Rule 46:     Appeal of Managing Director's Disposition of Complaint

There is no appeal to any body of a conclusion by the Managing Director that a complaint does not raise issues under the Standards.

**Rule 47:     Review of Complaint Process**

To ensure the proper administration of this complaint process, the Committee shall periodically review the written complaints received in the Managing Director's Office and their disposition.

**Rule 48:     Records of Complaints**

The Managing Director's Office shall keep a record of the complaints under Part VIII of these Rules for a period of ten years.

# X. Transparency and Confidentiality

**Rule 49:     Confidentiality of Accreditation Matters**

Except as otherwise provided in these Rules, all matters relating to the accreditation of a law school, including any proceedings, hearings or meetings of the Committee or Council, shall be confidential.

**Rule 50:     Communication of Decisions and Recommendations**

When a law school is the subject of a decision or recommendation in accordance with these Rules, the Managing Director shall promptly inform the dean and the president of the decision or recommendation, in writing.

**Rule 51:     Communication and Distribution of Site Evaluation Reports**

(a) Except as provided in Part X of these Rules, site evaluation and fact finding reports shall be confidential.

(b) The law school may release an entire site evaluation report or fact finding report or portions of a report.

   (1) If the law school makes public the site evaluation report or any portion of it, the law school must notify the Managing Director at or before the time of the disclosure. In the event the law school discloses only a portion of the site evaluation report, the Managing Director, in consultation with the Chair of the Council, may subsequently disclose any other portions of the site evaluation report or the entire report.

   (2) Discussion of the contents of a site evaluation report with, or release of the report to, the faculty, the university administration, or the governing board of the university or law school, does not constitute release of the report to the public within the meaning of this Rule.

(c) If the dean determines that a site evaluation report for the dean's law school contains criticism of the professional performance, competence, or behavior of a member of the law school's faculty or professional staff:

(1)  The dean shall make available to the person affected the relevant portions of the report and shall send the Managing Director a copy of those relevant portions and any accompanying memorandum or letter to the affected person.

(2)  The affected person shall have the right to file with the Managing Director a document responding to the criticism contained in the site evaluation report.

(3)  Any such response to the criticism shall become part of the law school's official file.

## Rule 52:    Disclosure of Decision Letters

(a)  Except as provided in Rule 53, decisions and recommendations of the Committee and Council shall be confidential.

(b)  If the law school makes public a decision or recommendation of the Committee or Council, the law school must make public the entire decision or recommendation.

(1)  If the law school makes public a decision or recommendation of the Committee or Council, the law school must notify the Managing Director at or before the time of the disclosure.

(i)   The Managing Director, in consultation with the Chair of the Council, may subsequently correct any inaccurate or misleading information released or published by the law school in connection with the disclosure or the decision or recommendation.

(ii)  A corrective communication by the Managing Director may include the disclosure of portions of the site evaluation report or the entire site evaluation report.

(2)  Discussion of the contents of a decision or recommendation with, or release of the report to, the faculty, the university, or the governing board of the university or law school, does not constitute release of the decision or recommendation to the public within the meaning of this Rule.

## Rule 53:    Applications, Decisions and Recommendations Made Public

(a)  When a law school has applied for provisional or full approval, acquiescence in a major change, or a variance, the Council or the Managing Director shall provide public notice:

(1)  That the law school has submitted an application; and

(2)  Of the procedural steps for consideration of the application.

(b)  After a law school has been notified of the Committee's decision or recommendation, the Managing Director may state publicly the conclusions of the Committee and its decision or recommendation, with an explanation of the procedural steps in further consideration of the matter, concerning:

(1)  The law school's application for provisional or full approval;

(2)  The law school's application for acquiescence in a major change;

(3)  The law school's application for a variance;

(4)  The imposition of sanctions or specific remedial action on the law school;

(5)  The placing of the law school on probation; or

(6)  The withdrawal of the law school's approval;

(c)  After a law school has been notified of the Council's decision, the Managing Director shall provide public notification of the Council's conclusions and decision (except as to a sanction that is explicitly not public), with an explanation of any procedural steps for further consideration of the matter, concerning:

(1)  The law school's application for provisional or full approval;

(2)  The law school's application for acquiescence in a major change;

(3)  The law school's application for a variance;

(4)  The imposition of sanctions or specific remedial action on the law school;

(5)  The placing of the law school on probation; or

(6)  The withdrawal of the law school's approval;

(d)  After a matter concerning a law school has been acted upon by an Appeals Panel, the Council or the Managing Director shall provide public notification of the conclusions and decision of the Appeals Panel.

### Rule 54:     Statistical Reports

(a)  School specific information and statistical reports derived from data contained in all questionnaires are for the use of the Council, the Committee, the Managing Director, and deans of ABA-approved law schools, and are not for public release.

(b)  Information contained in statistical reports prepared from data contained in annual questionnaires is for exclusive and official use by those persons authorized by the Council to receive such statistical reports, except as public disclosure of information about specific law schools is authorized under Standard 509 or has been made public by the law school.

(c)  The Managing Director may release general data from the statistical reports and questionnaires that are not school-specific.

### Rule 55:     Publication of List of Approved Law Schools

The Council shall publish annually a complete list of all approved law schools. The list shall be published in one or more venues designated by the Council pursuant to Standard 509.

# XI. Amendment of Standards, Interpretations, and Rules

### Rule 56:  Council Authority

The Council has authority to adopt, revise, amend or repeal the Standards, Rules, and Interpretations.

**Rule 57:  Concurrence by the ABA House of Delegates**

(a)  A decision by the Council to adopt, revise, amend or repeal the Standards, Interpretations or Rules does not become effective until it has been concurred in by the ABA House of Delegates in accordance with House Rule 45.9. After the meeting of the Council at which it decides to adopt, revise, amend or repeal the Standards, Interpretations or Rules, the Chairperson of the Council shall furnish a written statement of the Council action to the House.

(b)  Once the action of the Council is placed on the calendar of a meeting of the House, the House shall at that meeting either agree with the Council's decision or refer the decision back to the Council for further consideration. If the House refers a decision back to the Council, the House shall provide the Council with a statement setting forth the reasons for its referral.

(c)  A decision by the Council to adopt, revise, amend or repeal the Standards, Interpretations or Rules is subject to a maximum of two referrals back to the Council by the House. If the House refers a Council decision back to the Council twice, then the decision of the Council following the second referral will be final and will not be subject to further review by the House.

# Key Word Index

Note: In some cases, simply the corresponding Standard(s) is given to note the section where in the keyword can be found. One should also refer to the corresponding Interpretations for additional information.

| KeyWord | Locator ("I"=Interpretation) |
| --- | --- |
| 84 months | |
| degree completion | 311(c) |
| 83 credit hours | 311(b) |
| 140 days | 311(a), I 311-1 |
| 64 credit hours | 311(b); I 311-2 |
| 24 months | |
| degree completion | 311(c) |
| AAUP Academic Freedom Statement | Appendix 1, *See also* Academic Freedom |
| Academic advising | 106(a)(3), 309(a), 404(a)(2), 511 |
| | *See also* Criteria for Approval of Foreign Summer and Intersession Programs, Criteria for Accepting Credit for Student Study at a Foreign Institution, Criteria for Approval of Semester and Year-Long Study Abroad Programs, pp. 153-164. |
| Academic attrition | I 501-1. 509(b)(4) |
| Academic calendar | 311, Guidance Memo 3* |
| degree completion | 311 |
| Academic dismissal | 308 |
| Academic freedom | 405, Appendix 1 |
| Academic standards | 308 |
| Academic support | 106(a)(3), 309(b), I 501-1 |
| | *See also* Criteria for Approval of Foreign Summer Programs, Criteria for Student Study at a Foreign Institution, Criteria for Approval of Semester and Year-Long Study Abroad Programs, pp. 153-164. |

| | |
|---|---|
| Academic year | 311 |
| Accommodations | 207 |
| Accreditation Committee | Definitions, p. xi |
| Acquiescence | 105, Rules 3 (b)(3), 29, 31 |
| Adjuncts | *See* Part-time faculty |
| Admission policies | 501 |
| accommodations | 207 |
| authority and primary responsibility | 201(a) |
| diversity and inclusion | 206 |
| non-discrimination and | |
| equality of opportunity | 205, 206 |
| Admissions | 501 |
| consumer information | 509 |
| bar passage | 501(b), 504 |
| cautionary policies | 503, Appendix 2 |
| character and fitness | 504 |
| data | 509 |
| diversity and inclusion | 206 |
| educational requirements | 502 |
| factors in assessing compliance | I 501-1 |
| foreign law schools (from) | 505 |
| non-ABA approved law schools (from) | 505 |
| non-degree candidates | 506 |
| preadmission program | 311(e) |
| previously disqualified | 501(c) |
| test | I 501-1, I 501-2, 503 |
| testing agency guidelines | 503, Appendix 2 |
| valid and reliable | I 503-1, Guidance Memo 1* |
| Adoption and amendment of | |
| Standards and Rules | Rules 56, 57 |
| Advanced degree in law | *See* LL.M. degree or Post-J.D. programs |
| Affiliated law schools | 201(d) |
| non-university affiliate | 201(e) |
| Appeals | |
| consideration by the Council | Rule 23 |
| right to appeal | Rule 15 |
| Appeals Panel | Rule 4, Rules 35-41, IOPs 14, 15* |
| Approval, Full | |
| application | Rules 27, 28 |
| public disclosure | 103, 509(e), Rule 53 |
| self-studyRule | 27(b)(4) |
| transfer of approval | 101(b) |
| withdrawal of | *See* Withdrawal of Approval |
| Approval, Provisional | |
| advancing to full approval | 102, Rules 27, 28 |
| application | Rules 27, 28 |
| branch campus or separate location | 106 |
| extension of time | 102(b) |
| public disclosure | 509(e), Rule 53 |

|  |  |
|---|---|
| self-study | Rule 27(b)(4) |
| withdrawal of | *See* Withdrawal of Approval |
| Approved schools, listing | Rule 55 |
| Association | Definitions, p. xi |
| Attendance policies | 306(g), 311(f) |
| Auditors | 506 |
| Bachelor's degree | 502 |
| Bar admissions | 301, 504 |
| character and fitness | 504 |
| passage rate | 316, 501(b), I 501-1 |
| preparation programs | 316(c)(3) |
| Bargaining unit | I 405-2 |
| Board of visitors | 208 |
| Branch campus or separate location | 105(a)(9) & (10), 106, Rule 29(a)(10) & (11) |
| Budget | 201, 602(d) |
| Career services | 106(a)(3), 508 |
| Character and Fitness | 504, Guidance Memo 3* |
| Clinical faculty | 405(c), I 405-6, I 405-7, I 405-8 |
| Clinics | 303(a)(3), 303(b), 304(b) |
| Co-curricular activities | 312 |
| Community service | 404(a)(4), (5), & (6) |
| Complaints | Rules 42-48 |
|  | IOPs 15* |
| by students | 510 |
| foreign summer/intersession programs | Criteria: IX D3, p. 152 |
| credit for student study at a |  |
| foreign institution | Criteria: IIC4, p. 156 |
| semester and year-long study abroad | Criteria: XD2e, p. 164 |
| site visits | Rule 5(e)(5) |
| Consumer information | 509, Guidance Memo 3* |
| accurate reporting | 509(a), Rule 16 (a)(6) |
| Core collection | 606 |
| Core subjects | 303 |
| Correspondence study | 306 |
| Council of the Section | Definitions, p xi, Rules 1, 2, 56, 57 |
| Credit hours |  |
| applicants from foreign law schools | 505(c) |
| applicants from non-approved law schools | 505(b) |
| branch campus | Definitions p. xi |
| calculating | I 311-2 |
| coursework | 310 |
| distance education | 306 |
| foreign study | 307 |
| full-time teaching responsibility | 403(a) |
| policies | 311 |
| pro-bono, credit for | I 303-3 |
| transfer of non-JD credits | 505(d) |
| major change | 10 (16) & (17), Rules 29(a)(16) & (17) |
| preadmission studies | 311(e) |

| | |
|---|---|
| required for graduation | 311(b) |
| study outside the classroom | 305 |
| Curriculum | 302 |
| degree programs in addition to J.D. | 313 |
| distance education | 306 |
| instructional role of faculty | 403 |
| law school governance of | 201 |
| library collection | 606 |
| outside the classroom | 305 |
| public disclosure | 509(c)(2) |
| review of | 315 |
| substantial instruction in: | |
| legal analysis, reasoning, legal research, oral communication | 302(b) |
| History, goals, values of the legal profession | 303(a)(1) |
| other professional skills | 302(d) I 302-1 |
| substantive law | 302(a) |
| writing in a legal context | 303(a)(2), I 303-1 |
| substantial opportunity for: | |
| field placements | 303(b)(1) |
| live client experiences | 304(b) |
| pro bono activities | 303(b)(2), I 303-3 |
| self-assessment | 303(a)(3)(iv), 304(a)(ii) & (b)(iii) |
| Dean | Definitions, p. xi, 201, 203 |
| as tenured member of faculty | 203(b) |
| responsibilities, authority, and role | 201, 203 |
| selection | 203(c), I 203-2 |
| faculty involvement | 203(c) |
| Debt counseling | *See* Financial aid |
| Degree credit | *See* Credit hours |
| Default rates | *See* Financial aid |
| Definitions | p. xi |
| Directed research | 302(b) |
| Disabled persons | 205, 207 |
| Disability | *See* Disabled persons |
| Disclosures | 509, Rule 16(a)(6) |
| Discrimination | 205, 206, 207 |
| Disqualified students | 501 © |
| Distance Education | 306 |
| Diversity | 206 |
| Dual division school | 312, I 604-1 |
| | *See also* Scheduling options |
| Educational policies | 205, 310, 501 |
| Education requirements | 502 |
| waiver of | 502(b) & (c) |
| Employment | |
| faculty | I 402-1, I 402-2 |
| employment outcomes | 509(b)(7), I 509-2 |

Endowments — I 202-1
Enrollment data — 509(b)(4)
Equality of opportunity — 205, 206, 207
    Constitutional provision or statute — I 206-1
Equipment — 701, 702
Evaluation of program of legal education — 315
Examination schedules — 311(a), I 405-5
Examinations — 311(a)
Facilities — 701, 702
Faculty
    attract and retain — 405(a) & (d)
    clinical — 405(c), I 405-6, I 405-7, I 405-8
    competence of — 401, 402, 405
    composition and number — 402, 509(b)(5)
    consumer information — 509(b)(5)
    disability — 207
    diversity — 205, 206, 207
    full-time, defined — Definitions, p. xi
    legal writing — 405(d) I 405-9
    non-discrimination and equality
        of opportunity — 206
    part-time — 509(b)(5), 702(a)(4)
    professional environment — 405
    qualifications — 401
    required role — 403, 404
    retention — 201(b)
    selection of a dean — 203
    size — 402
    Field placement programs and other study
    outside the law school — 305
    *See also* Criteria for Approval of Foreign Summer and Intersession Programs, Criteria for Student Study at a Foreign Institution, Criteria for Approval of Semester and Year-Long Study Abroad Programs, pp. 153-164
Financial aid — 507, 508
    consumer information — 509(b)(2)
    debt counseling — 507, 508
    default rates — 507
    loan default and programs — 507
Foreign law study
    study abroad — 307, Rule 32
    applicants from foreign law schools — 505
    *See also* Criteria for Approval of Foreign Summer and Intersession Programs, Criteria for Accepting Credit for Student Study at a Foreign Institution, Criteria for Approval of Semester and Year-Long Study Abroad Programs, pp. 153-164
Free standing law school — 201(e)

Full approval                                *See* Approval, Full
General Purposes and Practices               Chapter 1, p. 3
Governance
    allocation of authority                  201
    board                                    Definitions, p. xi, 201(e)
    clinical faculty                         I 405-8
    dean                                     201,203
    faculty role                             404(a)(4), I 405-8
    independent law school                   201(e)
    law school-university relationship       201
Graduation from law school
    academic advising and support            309
    academic standards                       308
    delay in conferring degree               102(g)
    prerequisites                            302, 303
    standard for admission                   501(b)
    time period for completion               311
Grievance Committee                          IOP 13
Group study rooms                            702(a)(9)
House of Delegates                           Definitions, p. xi, Rule 57
Independent law schools                      201(e)
Information, submission of                   104, Rules 7. 8, 10, 11, 27, 29, 31, 33, 34
Instruction by full-time faculty             403(a)
Interim monitoring                           Rule 6
Internships                                  305
                                             *See also* Field Placement
Interpretations                              Definitions, p. xi
J.D. degree                                  Definitions, p. xi
    time for completion                      311
Law degree, defined                          Definitions, p. xi
Law librarian                                603, 604
Learning Outcomes                            302
Legal writing                                303(2), I 303-2, 405(d)
Library
    adequacy                                 601, 602, 604, 605, 606
    administration                           602, 603
    autonomy                                 602
    budget                                   602(d)
    collection
        completeness of materials            605, 606
        cooperative agreement                I 606-4
        core                                 606
    competent staff                          604
    director                                 603
    electronic equipment                     701
    library policy                           602(b)
    personnel, selection, retention,
        competency, and number               602(c), 604
    physical facility                        606(3), 701, 702

|  |  |
|---|---|
| relationship with law school | 601(a)(2) |
| resources | 601(b) |
| services | 604, 605 |
| support of law school teaching, scholarship and research | 601(a), 605 |
| technology | 701 |
| written plan for library support | 606(d) |
| L.L.M. degree | |
| acquiescence | 105(a)(15), 313, Rule s 3(b)(3), 29(a)(15) |
| advanced standing | 505(d) |
| course credit | 505(d) |
| major change in program structure | 105(a)(15), Rule 29(a)(15) |
| provisionally approved law school | 102(d) |
| | *See also* Council Statement 1* |
| Loan defaults and programs | *See* Financial aid |
| Location, change of | 105(a)(8), Rule 29(a)(8) |
| LSAT | I 503-1, I 503-3, Appendix 2 |
| Major changes in program or structure | 105, Rules 29, 30, 31 |
| Merger | 105(a)(2), (4) & (5); Rules 29(a)(4) & (5) |
| Mission | 105(a)(11), 204, 316(c)(8), 501(a), 601, I 605-1, I 606-4 |
| Moot court | 305(a), I 311-2(b)(3) |
| Non-degree candidates | 506 |
| Non-discrimination | 205, 206, 207 |
| Non-persisters | Appendix 3 |
| Non-university affiliated | See Independent law schools |
| Organization and Administration | Chapter 2, p. 9 |
| Outside employment by faculty | I 402-2 |
| Overhead costs | 202 |
| Part-time/scheduling options | |
| reasonably comparable opportunities | 312 |
| basic student services | 508 |
| Part-time employment of students | *See* Student employment |
| Part-time faculty | 509(b)(5), 702(a)(4) |
| Physical plant | |
| exclusive control and use | 702-2 |
| faculty space | 702(a)(4) |
| library | 606(e), 702(a)(2) |
| requirements | 701 |
| study space | 702(a)(8) & (9) |
| support staff | 702(a)(3) |
| technology | 701 |
| Post-J.D. programs | |
| acquiescence | 105(a)(15), 313, Rules 3(b)(3), 29(a)(15) |
| course credit | 505(d) |
| provisionally approved law school | I 102(d) |
| | *See also* L.L.M. degree |
| Pre-admission programs | 311(e) |
| President | Definitions, p. xi; I 405-4 |

| | |
|---|---|
| Previously disqualified applicant | 501(c) |
| Pro bono activities | 303(b)(2), I 303-3, I 303-4, 404(a)(6) |
| Professional skills | |
|     curriculum | 302, 303, Guidance Memo 3* |
|     evaluation of academic achievement | 303(a)(3), 305(c) |
|     faculty | |
|         competence | I 405-7 |
|         governance | I 405-8 |
|         security | 405(c) |
|         short term appointments | 405(c) |
| Program of Legal Education | Chapter 3, p.15 |
| Promotion and tenure | I 405-3, I 405-4, Appendix 1 |
| Provisional approval | *See* Approval, Provisional |
| Quarter system | *See* Semester alternative |
| Questionnaires, submission of | 104, Rules 27(b)(2), 29(b)(1) |
| Reading period | 311(a) |
| Readmission | 501(c) Refund |
| policy | 509(c)(1) |
| Religious affiliation | 205(c), I 205-2 |
| Required instruction | 303 |
| Resources for Program | 202 |
|     current and anticipated | 202(a) |
|     facilities | I 702-1 |
|     field placement programs | 305(e)(2) |
|     generated by law school | 202, I 202-1 |
|     library support | 601, 602 |
|     negative and material effect | 202(c) |
|     reliable plan | 102(a) |
|     technology | 701 |
| Retention policies | |
|     conditional scholarships | 509 (b)(3), I 509-3 |
|     library personnel | 602(c), 603(b) |
|     faculty | 201(b), I 104-7 |
|     students | 205 |
| Rules | Definitions, p. xi |
| Sanctions | Rules, 16, 17, 18 |
| Scheduling options | 312, 508 |
| Scholarship | |
|     faculty | 401, I 403-1, 404(a)(3) |
|     library services | 601(a)(1), 605, 606(a), 606(c)(2) & (3) |
|     technology resources | I 701-1(1) |
| Scope of accreditation | Preface |
| Section of Legal Education | |
|     and Admissions to the Bar | Definitions, p. xi |
| Self study | 104, 204, Rule 27(b)(4) |
| Sexual orientation | 205 |
| Site evaluations | Rule 5 |
| Standards | Definitions, p. xi |
|     amendment of | Rules 56, 57 |

| | |
|---|---|
| Student body expansion | 105(a) |
| Student complaints | 510, Rules 42-48 |
| Student loan programs | 507 |
| Student records | 508 |
| Student services | 508 |
| Substantial compliance | 102 |
| Substantial skills instruction | 303 |
| Teaching effectiveness | 401, 403(b), I 403-1 |
| Teaching policies | 404, Appendix 1 |
| Teach-out Plan | 105(a)(13), Rule 34 |
| Technology | 306, 601(a)(4), 701, I 702-3 |
| Tenure | 405(b), I 405-1, I 405-3, Appendix 1 |
|     clinical faculty | I 405-6 |
|     independent law school | I 405-4 |
|     role of dean and faculty | 201(b) |
| Transcript | 502(d), I 502-1, I 502-2 |
| Transfer of accreditation | 101(b) |
| Transfer of credit | 505 |
|     non-ABA approved law schools | 505(b) |
|     foreign law schools | 505(d) |
|     policy disclosure | 509(c)(3) |
| Tuition and other costs | 509(b)(2) |
| Tuition income | 202(b), I 202-1 |
| Undergraduate institution, (accredited) | 502(a) |
| Undergraduate requirements | 502 |
| University | Definitions, p. xi |
| University affiliation | 201(d) |
| Unqualified students | 501 (b), 501(c) |
| Variance | 107, Rule 33, Guidance Memos 1 & 2* |
| Weighted bar passage averages | Appendix 3 |
| Withdrawal of approval | 102(b), 102(c), 103(b), Rules 2(b), 3(a)(2), 4(c), 16(b)(8), 28(a), 31, 53(b)(6) & (c)(6) |
| Writing experience | 303(a)(2) |

*Online only at http://www.americanbar.org/groups/legal_education/resources/standards.html

# 2013-2014 Standards for Approval of Law Schools

# Contents

**Chapter 1: General Purposes and Practices; Definitions** ...................................................... 91
Standard 101. Basic Requirements for Approval ........................................................... 91
Standard 102. Provisional Approval .............................................................................. 92
Standard 103. Full Approval .......................................................................................... 93
Standard 104. [Reserved] .............................................................................................. 94
Standard 105. Major Change in Program or Structure ................................................. 94
Standard 106. Definitions .............................................................................................. 96

**Chapter 2: Organization and Administration** ............................................................... 99
Standard 201. Resources for Program ........................................................................... 99
Standard 202. Self Study .............................................................................................. 100
Standard 203. Strategic Planning and Assessment ..................................................... 100
Standard 204. Governing Board of an Independent Law School ................................ 100
Standard 205. Governing Board and Law School Authority ...................................... 100
Standard 206. Dean ...................................................................................................... 101
Standard 207. Allocation of Authority Between Dean and Faculty ........................... 101
Standard 208. Involvement of Alumni, Students and Others ..................................... 101
Standard 209. Non-University Affiliated Law Schools .............................................. 101
Standard 210. Law School-University Relationship ................................................... 102
Standard 211. Non-Discrimination and Equality of Opportunity .............................. 102
Standard 212. Equal Opportunity and Diversity ........................................................ 104
Standard 213. Reasonable Accommodation for Qualified Individuals with Disabilities ..................... 104

**Chapter 3: Program of Legal Education** ...................................................................... 107
Standard 301. Objectives ............................................................................................. 107
Standard 302. Curriculum ........................................................................................... 109
Standard 303. Academic Standards and Achievements .............................................. 111
Standard 304. Course of Study and Academic Calendar ........................................... 112
Standard 305. Study Outside the Classroom .............................................................. 114
Standard 306. Distance Education ............................................................................... 115

Standard 307. Participation in Studies or Activities in a Foreign Country ........................................... 117
Standard 308. Degree Programs in Addition to J.D. ........................................................................... 117

**Chapter 4: The Faculty**.......................................................................................................... 119
Standard 401. Qualifications ............................................................................................................. 119
Standard 402. Size of Full-Time Faculty .......................................................................................... 119
Standard 403. Instructional Role of Faculty ..................................................................................... 121
Standard 404. Responsibilities of Full-Time Faculty ....................................................................... 122
Standard 405. Professional Environment .......................................................................................... 122

**Chapter 5: Admissions and Student Services** ....................................................................... 125
Standard 501. Admissions ................................................................................................................. 125
Standard 502. Educational Requirements .......................................................................................... 126
Standard 503. Admission Test ........................................................................................................... 126
Standard 504. Character and Fitness ................................................................................................. 127
Standard 505. Previously Disqualified Applicant ............................................................................ 127
Standard 506. Applicants From Law Schools not Approved by the ABA ........................................ 128
Standard 507. Applicants From Foreign Law Schools ..................................................................... 128
Standard 508. Enrollment of Non-Degree Candidates ..................................................................... 128
Standard 509. Required Disclosures ................................................................................................. 129
Standard 510. Student Loan Programs .............................................................................................. 130
Standard 511. Student Support Services ........................................................................................... 130
Standard 512. Student Complaints Implicating Compliance with the Standards ................................. 131

**Chapter 6: Library and Information Resources** ................................................................... 133
Standard 601. General Provisions ..................................................................................................... 133
Standard 602. Administration ........................................................................................................... 134
Standard 603. Director of the Law Library ...................................................................................... 134
Standard 604. Personnel .................................................................................................................... 135
Standard 605. Services ...................................................................................................................... 135
Standard 606. Collection ................................................................................................................... 135

**Chapter 7: Facilities** ................................................................................................................. 137
Standard 701. General Requirements ................................................................................................ 137
Standard 702. Law Library ................................................................................................................ 138
Standard 703. Research and Study Space .......................................................................................... 138
Standard 704. Technological Capacities ............................................................................................ 138

**Chapter 8: Council Authority, Variances and Amendments** ............................................... 141
Standard 801. Council Authority ...................................................................................................... 141
Standard 802. Variance ...................................................................................................................... 141
Standard 803. Amendment of Standards, Interpretations and Rules ................................................ 142

# CHAPTER 1
# General Purposes and Practices; Definitions

## Standard 101. BASIC REQUIREMENTS FOR APPROVAL

**A law school approved by the Association or seeking approval by the Association shall demonstrate that its program is consistent with sound legal education principles. It does so by establishing that it is being operated in compliance with the Standards.**

*Interpretation 101-1*
*To enable the Accreditation Committee and Council to determine whether a law school has demonstrated that its program of legal education is consistent with sound legal education principles and is being operated in compliance with the Standards, a law school shall furnish an annual questionnaire, self-study, site evaluation questionnaire, and such other information as the Accreditation Committee and Council may require. These documents must be complete and accurate and submitted timely in the form specified.*

*The information provided by these means not only informs the Council about the status of each law school but also enables the Council, in meeting its obligations with respect to legal education as a whole, to ascertain national norms of legal education, areas in which improvements are being made, and those where further attention is needed.*

*Interpretation 101-2*
*Accreditation or approval of a law school by the American Bar Association is not transferable. A transfer of all, or substantially all, of the academic programs or assets of (1) a law school or (2) a university or college of which the law school is a part does not include the transfer of the law school's accreditation status.*

# Standard 102. PROVISIONAL APPROVAL

**(a)  A law school shall be granted provisional approval only if it establishes that it is in substantial compliance with each of the Standards and presents a reliable plan for bringing the law school into full compliance with the Standards within three years after receiving provisional approval.**

**(b)  A law school that is provisionally approved may have its approval withdrawn if it is determined that the law school is not in substantial compliance with the Standards or that the law school is not making adequate progress toward coming into full compliance with the Standards. If five years have elapsed since the law school was provisionally approved and it has not qualified for full approval, provisional approval shall lapse and the law school shall automatically be removed from the list of approved law schools unless, prior to the end of the five year period, in an extraordinary case and for good cause shown, the Council extends the time within which the law school must obtain full approval.**

**(c)  A law school shall confer the J.D. degree contemporaneously with the time academic requirements for the degree are completed.**

*Interpretation 102-1*
*Substantial compliance must be achieved as to each of the Standards. Substantial compliance with each Standard is measured at the time a law school seeks provisional approval. Plans for construction, financing, library improvement, and recruitment of faculty which are presented by a law school seeking provisional approval do not, in themselves, constitute evidence of substantial compliance.*

*Interpretation 102-2*
*In order to establish that it has a reliable plan to come into full compliance with the Standards within three years after receiving provisional approval, a law school must clearly state the specific steps that it plans to take to bring itself into full compliance and must show that there is a reasonable probability that such steps will be successful.*

*Interpretation 102-3*
*A law school seeking provisional approval may not offer a post-J.D. degree program. The primary focus of a school seeking provisional approval should be to do everything necessary to comply with the Standards for the J.D. degree program.*

*Interpretation 102-4*
*A student at a provisionally approved law school and an individual who graduates while the school is provisionally approved are entitled to the same recognition given to students and graduates of fully approved law schools.*

### Interpretation 102-5

*An approved law school may not retroactively grant a J.D. degree to a graduate of its predecessor unapproved institution.*

### Interpretation 102-6

*A provisionally approved law school shall state in all of its printed and electronic materials generally describing the law school and its program and in any printed and electronic materials specifically targeted at prospective students that it is a provisionally approved law school. Similarly, when it refers to its approval status in publicity releases and communications with all students, applicants or other interested parties, it shall state that it is a provisionally approved law school.*

### Interpretation 102-7

*An unapproved law school seeking provisional approval must include the following language in all of its printed and electronic materials generally describing the law school and its program and in any printed and electronic materials specifically targeted at prospective students:*

*The Dean is fully informed as to the Standards and Rules of Procedure for the Approval of Law Schools by the American Bar Association. The Administration and the Dean are determined to devote all necessary resources and in other respects to take all necessary steps to present a program of legal education that will qualify for approval by the American Bar Association. The Law School makes no representation to any applicant that it will be approved by the American Bar Association prior to the graduation of any matriculating student.*

### Interpretation 102-8

*In most jurisdictions an individual cannot sit for the bar examination unless he or she has graduated from a law school fully or provisionally approved by the American Bar Association. However, the determination of qualifications and fitness to sit for the bar examination is made by the jurisdiction's bar admission authorities.*

### Interpretation 102-9

*A law school seeking provisional approval shall not delay conferring a J.D. degree upon a student in anticipation of obtaining American Bar Association approval.*

### Interpretation 102-10

*An individual who matriculates at a law school that is provisionally approved or who is a student enrolled in a law school at the time it receives provisional approval and who completes the course of study and graduates from that school within a typical and reasonable period of time is deemed by the Council to be a graduate of an approved law school, even though the school loses its provisional approval status while the individual is enrolled in the school.*

## Standard 103. FULL APPROVAL

(a)   **A law school is granted full approval if it establishes that it is in full compliance with the Standards and it has been provisionally approved for not fewer than two years.**

(b)   **Sanctions, including probation and removal from the list of law schools approved by the Association, may be imposed upon a law school as provided in Rules 16 and 17 of the Rules.**

### Interpretation 103-1

*An individual who matriculates at a law school that is then approved and who completes the course of study and graduates in the normal period of time required therefore is deemed a graduate of an approved school, even though the school's approval was withdrawn while the individual was enrolled therein.*

### Interpretation 103-2

*In the case of an approval required as the consequence of a major change in organizational structure, the minimum time period of two years stated in this Standard may be modified and/or conditioned pursuant to Rule 20 of the Rules of Procedure for Approval of Law Schools.*

## Standard 104. [Reserved]

## Standard 105. MAJOR CHANGE IN PROGRAM OR STRUCTURE

Before a law school makes a major change in its program of legal education or organizational structure it shall obtain the acquiescence of the Council for the change. Subject to the additional requirements of subsections (1) and (2), acquiescence shall be granted only if the law school establishes that the change will not detract from the law school's ability to meet the requirements of the Standards.

**(1)** If the proposed major change is the establishment of a degree program other than the J.D. degree, the law school must also establish that it meets the requirements of Standard 308.

**(2)** If the proposed major change involves instituting a new full-time or part-time division, merging or affiliating with one or more approved or unapproved law schools, acquiring another law school or educational institution, or opening a Branch or Satellite campus, the law school must also establish that the law school is in compliance with the Standards or that the proposed major change will substantially enhance the law school's ability to comply with the Standards.

### Interpretation 105-1

*Major changes in the program of legal education or the organizational structure of a law school include:*

*(1)  Instituting a new full-time or part-time division;*

*(2)  Changing from a full-time to a part-time program or from a part-time to a fulltime program;*

*(3)  Establishing a two-year undergraduate/four year law school or similar program;*

*(4)  Establishing a new or different program leading to a degree other than the J.D. degree;*

*(5)  A change in program length measurement from clock hours to credit hours;*

*(6)  A substantial increase in the number of clock or credit hours that are required for graduation;*

*(7)  Merging or affiliating with one or more approved or unapproved law schools;*

*(8)  Merging or affiliating with one or more universities;*

*(9)  Materially modifying the law school's legal status or institutional relationship with a parent institution;*

*(10) Acquiring another law school, program, or educational institution;*

(11) *Acquiring or merging with another university by the parent university where it appears that there may be substantial impact on the operation of the law school;*

(12) *Transferring all, or substantially all, of the academic program or assets of the approved law school to another law school or university;*

(13) *Opening of a Branch campus or Satellite campus;*

(14) *A change in control of the school resulting from a change in ownership of the school or a contractual arrangement;*

(15) *A change in the location of the school that could result in substantial changes in the faculty, administration, student body, or management of the school;*

(16) *Contracting with an educational entity that is not certified to participate in Title IV, HEA programs, that would permit a student to earn 25 percent or more of the course credits required for graduation from the approved law school;*

(17) *The addition of a permanent location at which the law school is conducting a teach-out for students at another law school that has ceased operating before all students have completed their program of study;*

(18) *A significant change in the mission or objectives of the law school; and*

(19) *The addition of courses or programs that represent a significant departure from existing offerings or method of delivery since the last accreditation period.*

## Interpretation 105-2

*The establishment of a Branch campus of an approved law school constitutes the creation of a different law school. Consequently, a Branch campus must have a permanent full-time faculty, an adequate working library, adequate support and administrative staff, and adequate physical facilities and technological capacities. A Branch campus shall apply for provisional approval under the provisions of Standard 102 and Rule 4.*

## Interpretation 105-3

*The establishment of a Satellite campus at which a law school offers no more than the first year of its full-time program, or the first three semesters (or equivalent) of its part-time program, requires at least:*

(1) *Full-time faculty of the law school who teach substantially all of the curriculum offered at the Satellite campus and who are reasonably available at the Satellite campus for consultation with students;*

(2) *Library resources and staff at the Satellite campus that are adequate to support the curriculum offered at the Satellite campus and that are reasonably accessible to students at the Satellite campus;*

(3) *Academic advising, career services and other student support services that are adequate to support the program offered at the Satellite campus, that are reasonably equivalent to such services offered to similarly situated students at the law school's main campus and that are offered in person at the Satellite campus or otherwise are reasonably accessible to students at the Satellite campus;*

(4) *That students attending the Satellite campus have access to the school's co-curricular activities and other educational benefits on a roughly proportional basis; and*

(5) *Physical facilities and technological capacities at the Satellite campus that are adequate to support the curriculum offered at and the students attending the Satellite campus.*

### Interpretation 105-4

*A law school that seeks to establish a Satellite campus at which it will offer courses beyond its first-year program must show that it can adequately support its program at the Satellite campus. It must establish at least:*

(1) *That students attending the Satellite campus have reasonable access to full-time faculty, library resources and staff, and academic advising, career services and other support services that are adequate to support the program that the law school offers at the Satellite campus and that are reasonably equivalent to the resources and services offered to similarly situated students at the law school's main campus;*

(2) *That students attending the Satellite campus have access to the school's co-curricular activities and other educational benefits on a roughly proportional basis; and*

(3) *That the physical facilities and technological capacities at the Satellite campus are adequate to support the curriculum offered at and the students attending the Satellite campus.*

### Interpretation 105-5

*If a student would be able to take at a Satellite campus the equivalent of two-thirds or more of the credit hours that a law school requires for the award of the J.D. degree, all of the requirements set forth in Interpretation 105-2 apply to the establishment of such a Satellite campus except the requirement concerning provisional approval.*

### Interpretation 105-6

*The Council has delegated to the Accreditation Committee the authority to grant acquiescence in the types of major changes listed in Interpretations 105-1 (4), (5), (6), and (16).*

## Standard 106. DEFINITIONS

**As used in the Standards and Interpretations:**

(1) **"Accreditation Committee" means the Accreditation Committee of the Section.**

(2) **"Approved law school" means a law school that appears on the list of law schools approved by the American Bar Association.**

(3) **"Association" means the American Bar Association.**

(4) **"Branch campus" means a separate location at which the law school offers sufficient courses that a student could earn at the separate location all of the credit hours that the law school requires for the J.D. degree.**

(5) **"Consultant" means the Consultant on Legal Education to the American Bar Association.**

(6) **"Council" means the Council of the Section.**

(7) **"Dean" includes an acting or interim dean.**

(8) **"Governing board" means a board of trustees, board of regents, or comparable body that has ultimate policy making authority for a law school or the university of which the law school is a part.**

(9) **"House" means the House of Delegates of the American Bar Association.**

**(10)** **"Interpretations" mean the Interpretations of the Standards for Approval of Law Schools.**

**(11)** **"J.D. degree" means the first professional degree in law granted by a law school.**

**(12)** **"President" includes the chief executive officer of a university or, if the university has more than one administratively independent unit, of the unit of which a law school is a part.**

**(13)** **"Probation" is a public status indicating that the law school is in substantial non-compliance with the Standards and is at risk of being removed from the list of approved law schools.**

**(14)** **"Rules" mean the Rules of Procedure for the Approval of Law Schools by the American Bar Association.**

**(15)** **"Satellite campus" means a separate location (other than one approved under the Criteria for Approval of Semester Abroad Programs) which is not within reasonable proximity to the main law school campus and at which a student could take the equivalent of 16 or more semester credit hours toward the law school's J.D. degree but which does not constitute a Branch campus.**

**(16)** **"Section" means the Section of Legal Education and Admissions to the Bar of the American Bar Association.**

**(17)** **"Standards" mean the Standards for the Approval of Law Schools.**

**(18)** **"University" means a post secondary educational institution that confers a baccalaureate degree and may grant other degrees, whether it is called university, college, or other name.**

# CHAPTER 2
# Organization and Administration

## Standard 201. RESOURCES FOR PROGRAM

**(a)** **The present and anticipated financial resources of a law school shall be adequate to sustain a sound program of legal education and accomplish its mission.**

**(b)** **A law school shall be so organized and administered that its resources are used to provide a sound program of legal education and to accomplish its mission.**

*Interpretation 201-1*
*A law school does not comply with the Standards if its financial resources are so inadequate as to have a negative and material effect on the education students receive.*

*Interpretation 201-2*
*A law school may not base the compensation paid any person for service to the law school (other than compensation paid a student or associate for reading and correcting papers or similar activity) on the number of persons enrolled in the law school or in any class or on the number of persons applying for admission to or registering in the law school.*

## Standard 202. SELF STUDY

Before each site evaluation visit the dean and faculty of a law school shall develop a written self study, which shall include a mission statement. The self study shall describe the program of legal education, evaluate the strengths and weaknesses of the program in light of the school's mission, set goals to improve the program, and identify the means to accomplish the law school's unrealized goals.

### Interpretation 202-1
*A current self study shall be submitted by a law school seeking provisional approval, a provisionally approved law school before its annual site evaluation, and a fully approved law school before any regular or special site evaluation.*

## Standard 203. STRATEGIC PLANNING AND ASSESSMENT

In addition to the self study described in Standard 202, a law school shall demonstrate that it regularly identifies specific goals for improving the law school's program, identifies means to achieve the established goals, assesses its success in realizing the established goals and periodically re-examines and appropriately revises its established goals.

## Standard 204. GOVERNING BOARD OF AN INDEPENDENT LAW SCHOOL

A law school that is not part of a university shall be governed by a governing board composed of individuals dedicated to the maintenance of a sound program of legal education.

### Interpretation 204-1
*The governing board of a law school that is not part of a university should authorize the dean to serve as chief executive, or chief academic officer of the law school, or both, and shall define the scope of the dean's authority in compliance with the Standards. The dean shall be responsible to the governing board. The dean may be a member of the board but should not serve as chairperson of the board.*

## Standard 205. GOVERNING BOARD AND LAW SCHOOL AUTHORITY

(a)  A governing board may establish general policies that are applicable to a law school if they are consistent with the Standards.

(b)  The dean and faculty shall formulate and administer the educational program of the law school, including curriculum; methods of instruction; admissions; and academic standards for retention, advancement, and graduation of students; and shall recommend the selection, retention, promotion, and tenure (or granting of security of position) of the faculty.

### Interpretation 205-1
*An action of a university committee may violate the Standards if it deprives the dean and faculty of a law school of their appropriate roles for recommending faculty promotion and tenure or security of position.*

*Interpretation 205-2*
*Admission of a student to a law school without the approval of the dean and faculty of the law school violates the Standards.*

## Standard 206. DEAN

(a)  A law school shall have a full-time dean, selected by the governing board or its designee, to whom the dean shall be responsible.

(b)  A law school shall provide the dean with the authority and support needed to discharge the responsibilities of the position and those contemplated by the Standards.

(c)  Except in extraordinary circumstances, a dean shall also hold appointment as a member of the faculty with tenure.

(d)  The faculty or a representative body of it shall advise, consult, and make recommendations to the appointing authority in the selection of a dean.

*Interpretation 206-1*
*The faculty or a representative body of it should have substantial involvement in the selection of a dean. Except in circumstances demonstrating good cause, a dean should not be appointed or reappointed to a new term over the stated objection of a substantial majority of the faculty.*

## Standard 207. ALLOCATION OF AUTHORITY BETWEEN DEAN AND FACULTY

The allocation of authority between the dean and the law faculty is a matter for determination by each institution as long as both the dean and the faculty have a significant role in determining educational policy.

## Standard 208. INVOLVEMENT OF ALUMNI, STUDENTS AND OTHERS

A law school may involve alumni, students, and others in a participatory or advisory capacity; but the dean and faculty shall retain control over matters affecting the educational program of the law school.

## Standard 209. NON-UNIVERSITY AFFILIATED LAW SCHOOLS

If a law school is not part of a university or, although a part, is physically remote from the rest of the university, the law school should seek to provide its students and faculty with the benefits that usually result from a university connection, such as by enlarging its library collection to include materials generally found only in a university library and by developing working relationships with other educational institutions in the community.

# Standard 210. LAW SCHOOL-UNIVERSITY RELATIONSHIP

(a) **If a law school is part of a university, that relationship shall serve to enhance the law school's program.**

(b) **If a university's general policies do not adequately facilitate the recruitment and retention of competent law faculty, appropriate separate policies should be established for the law school.**

(c) **The resources generated by a law school that is part of a university should be made available to the law school to maintain and enhance its program of legal education.**

(d) **A law school shall be given the opportunity to present its recommendations on budgetary matters to the university administration before the budget for the law school is submitted to the governing board for adoption.**

### Interpretation 210-1
*A law school does not comply with the Standards if the charges and costs assessed against the law school's revenue by the university leave the law school with financial resources so inadequate as to have a negative and material effect on the education students receive.*

### Interpretation 210-2
*The resources generated by a law school that is part of a university should be made available to the law school to maintain and enhance its program of legal education. "Resources generated" includes law school tuition and fees, endowment restricted to the law school, gifts to the law school, and income from grants, contracts, and property of the law school. The university should provide the law school with a satisfactory explanation for any use of resources generated by the law school to support non-law school activities and central university services. In turn, the law school should benefit on a reasonable basis in the allocation of university resources.*

# Standard 211. NON-DISCRIMINATION AND EQUALITY OF OPPORTUNITY

(a) **A law school shall foster and maintain equality of opportunity in legal education, including employment of faculty and staff, without discrimination or segregation on the basis of race, color, religion, national origin, gender, sexual orientation, age or disability.**

(b) **A law school shall not use admission policies or take other action to preclude admission of applicants or retention of students on the basis of race, color, religion, national origin, gender, sexual orientation, age or disability.**

(c) **This Standard does not prevent a law school from having a religious affiliation or purpose and adopting and applying policies of admission of students and employment of faculty and staff that directly relate to this affiliation or purpose so long as (i) notice of these policies has been given to applicants, students, faculty, and staff before their affiliation with the law school, and (ii) the religious affiliation, purpose, or policies do not contravene any other Standard, including Standard 405(b) concerning academic freedom. These policies may provide a preference for persons adhering to the religious affiliation or purpose of the law school, but shall not be applied to use admission policies or take other action to preclude admission of applicants or retention**

of students on the basis of race, color, religion, national origin, gender, sexual orientation, age or disability. This Standard permits religious affiliation or purpose policies as to admission, retention, and employment only to the extent that these policies are protected by the United States Constitution. It is administered as though the First Amendment of the United States Constitution governs its application.

(d)    Non-discrimination and equality of opportunity in legal education includes equal opportunity to obtain employment. A law school shall communicate to every employer to whom it furnishes assistance and facilities for interviewing and other placement functions the school's firm expectation that the employer will observe the principles of non-discrimination and equality of opportunity on the basis of race, color, religion, national origin, gender, sexual orientation, age and disability in regard to hiring, promotion, retention and conditions of employment.

### Interpretation 211-1

*Schools may not require applicants, students, faculty or employees to disclose their sexual orientation, although they may provide opportunities for them to do so voluntarily.*

### Interpretation 211-2

*As long as a school complies with the requirements of Standard 211(c), the prohibition concerning sexual orientation does not require a religiously affiliated school to act inconsistently with the essential elements of its religious values and beliefs. For example, it does not require a school to recognize or fund organizations whose purposes or objectives with respect to sexual orientation conflict with the essential elements of the religious values and beliefs held by the school.*

### Interpretation 211-3

*Standard 211(d) applies to all employers, including government agencies, to which a school furnishes assistance and facilities for interviewing and other placement services. However, this Standard does not require a law school to implement its terms by excluding any employer unless that employer discriminates unlawfully.*

### Interpretation 211-4

*The denial by a law school of admission to a qualified applicant is treated as made upon the basis of race, color, religion, national origin, gender, sexual orientation, age or disability if the basis of denial relied upon is an admissions qualification of the school which is intended to prevent the admission of applicants on the basis of race, color, religion, national origin, gender, sexual orientation, age or disability though not purporting to do so.*

### Interpretation 211-5

*The denial by a law school of employment to a qualified individual is treated as made upon the basis of race, color, religion, national origin, gender, sexual orientation, age or disability if the basis of denial relied upon is an employment policy of the school which is intended to prevent the employment of individuals on the basis of race, color, religion, national origin, gender, sexual orientation, age or disability though not purporting to do so.*

# Standard 212. EQUAL OPPORTUNITY AND DIVERSITY

**(a)  Consistent with sound legal education policy and the Standards, a law school shall demonstrate by concrete action a commitment to providing full opportunities for the study of law and entry into the profession by members of underrepresented groups, particularly racial and ethnic minorities, and a commitment to having a student body that is diverse with respect to gender, race, and ethnicity.**

**(b)  Consistent with sound educational policy and the Standards, a law school shall demonstrate by concrete action a commitment to having a faculty and staff that are diverse with respect to gender, race and ethnicity.**

### Interpretation 212-1

*The requirement of a constitutional provision or statute that purports to prohibit consideration of gender, race, ethnicity or national origin in admissions or employment decisions is not a justification for a school's non-compliance with Standard 212. A law school that is subject to such constitutional or statutory provisions would have to demonstrate the commitment required by Standard 212 by means other than those prohibited by the applicable constitutional or statutory provisions.*

### Interpretation 212-2

*Consistent with the U.S. Supreme Court's decision in Grutter v. Bollinger, 529 U.S. 306 (2003), a law school may use race and ethnicity in its admissions process to promote equal opportunity and diversity. Through its admissions policies and practices, a law school shall take concrete actions to enroll a diverse student body that promotes cross-cultural understanding, helps break down racial and ethnic stereotypes, and enables students to better understand persons of different races, ethnic groups and backgrounds.*

### Interpretation 212-3

*This Standard does not specify the forms of concrete actions a law school must take to satisfy its equal opportunity and diversity obligations. The determination of a law school's satisfaction of such obligations is based on the totality of the law school's actions and the results achieved. The commitment to providing full educational opportunities for members of underrepresented groups typically includes a special concern for determining the potential of these applicants through the admission process, special recruitment efforts, and programs that assist in meeting the academic and financial needs of many of these students and that create a more favorable environment for students from underrepresented groups.*

# Standard 213. REASONABLE ACCOMMODATION FOR QUALIFIED INDIVIDUALS WITH DISABILITIES

**Assuring equality of opportunity for qualified individuals with disabilities, as required by Standard 211, may require a law school to provide such students, faculty and staff with reasonable accommodations.**

### Interpretation 213-1

*For the purpose of this Standard and Standard 211, disability is defined as in Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. Section 794, as further defined by the regulations on post secondary education, 45 C.F.R. Section 84.3(k)(3) and by the Americans with Disabilities Act, 42 U.S.C. Sections 12101 et seq.*

### Interpretation 213-2

*As to those matters covered by Section 504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act, neither this Standard nor Standard 211 imposes obligations upon law schools beyond those provided by those statutes.*

### Interpretation 213-3

*Applicants and students shall be individually evaluated to determine whether they meet the academic standards requisite to admission and participation in the law school program. The use of the term "qualified" in the Standard requires a careful and thorough consideration of each applicant and each student's qualifications in light of reasonable accommodations. Reasonable accommodations are those that are consistent with the fundamental nature of the school's program of legal education, that can be provided without undue financial or administrative burden, and that can be provided while maintaining academic and other essential performance standards.*

# CHAPTER 3
# Program of Legal Education

## Standard 301. OBJECTIVES

(a)  **A law school shall maintain an educational program that prepares its students for admission to the bar, and effective and responsible participation in the legal profession.**

(b)  **A law school shall ensure that all students have reasonably comparable opportunities to take advantage of the school's educational program, co-curricular programs, and other educational benefits.**

### Interpretation 301-1
*A law school shall maintain an educational program that prepares its students to address current and anticipated legal problems.*

### Interpretation 301-2
*A law school may offer an educational program designed to emphasize certain aspects of the law or the legal profession.*

### Interpretation 301-3

*Among the factors to be considered in assessing the extent to which a law school complies with this Standard are the rigor of its academic program, including its assessment of student performance, and the bar passage rates of its graduates.*

### Interpretation 301-4

*Among the factors to consider in assessing compliance with Standard 301(b) are whether students have reasonably comparable opportunities to benefit from regular interaction with full-time faculty and other students, from such co-curricular programs as journals and competition teams, and from special events such as lecture series and short-time visitors.*

### Interpretation 301-5

*For schools providing more than one enrollment or scheduling option, the opportunities to take advantage of the school's educational program, co-curricular activities, and other educational benefits for students enrolled under one option shall be deemed reasonably comparable to the opportunities of students enrolled under other options if the opportunities are roughly proportional based upon the relative number of students enrolled in various options.*

### Interpretation 301-6 *[For further guidance regarding compliance with 301-6 and for the explanation of the application of 301-6 for provisionally approved schools, see Appendix 3.]*

A.    *A law school's bar passage rate shall be sufficient, for purposes of Standard 301(a), if the school demonstrates that it meets any one of the following tests:*

1)    *That for students who graduated from the law school within the five most recently completed calendar years:*

   (a)   *75 percent or more of these graduates who sat for the bar passed a bar examination, or*

   (b)   *in at least three of these calendar years, 75 percent of the students graduating in those years and sitting for the bar have passed a bar examination.*

*In demonstrating compliance under sections (1)(a) and (b), the school must report bar passage results from as many jurisdictions as necessary to account for at least 70% of its graduates each year, starting with the jurisdiction in which the highest number of graduates took the bar exam and proceeding in descending order of frequency.*

2)    *That in three or more of the five most recently completed calendar years, the school's annual first-time bar passage rate in the jurisdictions reported by the school is no more than 15 points below the average first-time bar passage rates for graduates of ABA-approved law schools taking the bar examination in these same jurisdictions.*

*In demonstrating compliance under section (2), the school must report first-time bar passage data from as many jurisdictions as necessary to account for at least 70 percent of its graduates each year, starting with the jurisdiction in which the highest number of graduates took the bar exam and proceeding in descending order of frequency. When more than one jurisdiction is reported, the weighted average of the results in each of the reported jurisdictions shall be used to determine compliance.*

B.    *A school shall be out of compliance with the bar passage portion of 301(a) if it is unable to demonstrate that it meets the requirements of paragraph A (1) or (2).*

C.    *A school found out of compliance under paragraph B and that has not been able to come into compliance within the two year period specified in Rule 13(b) of the Rules of Procedure for Approval of Law*

*Schools, may seek to demonstrate good cause for extending the period the school has to demonstrate compliance by submitting evidence of:*

(i) *The school's trend in bar passage rates for both first-time and subsequent takers: a clear trend of improvement will be considered in the school's favor, a declining or flat trend against it.*

(ii) *The length of time the school's bar passage rates have been below the first-time and ultimate rates established in paragraph A: a shorter time period will be considered in the school's favor, a longer period against it.*

(iii) *Actions by the school to address bar passage, particularly the school's academic rigor and the demonstrated value and effectiveness of the school's academic support and bar preparation programs: value-added, effective, sustained and pervasive actions to address bar passage problems will be considered in the school's favor; ineffective or only marginally effective programs or limited action by the school against it.*

(iv) *Efforts by the school to facilitate bar passage for its graduates who did not pass the bar on prior attempts: effective and sustained efforts by the school will be considered in the school's favor; ineffective or limited efforts by the school against it.*

(v) *Efforts by the school to provide broader access to legal education while maintaining academic rigor: sustained meaningful efforts will be viewed in the school's favor; intermittent or limited efforts against it.*

(vi) *The demonstrated likelihood that the school's students who transfer to other ABA-approved schools will pass the bar examination: transfers by students with a strong likelihood of passing the bar will be considered in the school's favor, providing the school has undertaken counseling and other appropriate efforts to retain its well-performing students.*

(vii) *Temporary circumstances beyond the control of the school, but which the school is addressing: for example, a natural disaster that disrupts the school's operations or a significant increase in the standard for passing the relevant bar examination(s).*

(viii) *Other factors, consistent with a school's demonstrated and sustained mission, which the school considers relevant in explaining its deficient bar passage results and in explaining the school's efforts to improve them.*

## Standard 302. CURRICULUM

(a) **A law school shall require that each student receive substantial instruction in:**

    (1) **the substantive law generally regarded as necessary to effective and responsible participation in the legal profession;**

    (2) **legal analysis and reasoning, legal research, problem solving, and oral communication;**

    (3) **writing in a legal context, including at least one rigorous writing experience in the first year and at least one additional rigorous writing experience after the first year;**

    (4) **other professional skills generally regarded as necessary for effective and responsible participation in the legal profession; and**

    (5) **the history, goals, structure, values, rules and responsibilities of the legal profession and its members.**

**(b)**  **A law school shall offer substantial opportunities for:**

**(1)**  **live-client or other real-life practice experiences, appropriately supervised and designed to encourage reflection by students on their experiences and on the values and responsibilities of the legal profession, and the development of one's ability to assess his or her performance and level of competence;**

**(2)**  **student participation in pro bono activities; and**

**(3)**  **small group work through seminars, directed research, small classes, or collaborative work.**

### Interpretation 302-1
*Factors to be considered in evaluating the rigor of writing instruction include: the number and nature of writing projects assigned to students; the opportunities a student has to meet with a writing instructor for purposes of individualized assessment of the student's written products; the number of drafts that a student must produce of any writing project; and the form of assessment used by the writing instructor.*

### Interpretation 302-2
*Each law school is encouraged to be creative in developing programs of instruction in professional skills related to the various responsibilities which lawyers are called upon to meet, using the strengths and resources available to the school. Trial and appellate advocacy, alternative methods of dispute resolution, counseling, interviewing, negotiating, problem solving, factual investigation, organization and management of legal work, and drafting are among the areas of instruction in professional skills that fulfill Standard 302 (a)(4).*

### Interpretation 302-3
*A school may satisfy the requirement for substantial instruction in professional skills in various ways, including, for example, requiring students to take one or more courses having substantial professional skills components. To be "substantial," instruction in professional skills must engage each student in skills performances that are assessed by the instructor.*

### Interpretation 302-4
*A law school need not accommodate every student requesting enrollment in a particular professional skills course.*

### Interpretation 302-5
*The offering of live-client or real-life experiences may be accomplished through clinics or field placements. A law school need not offer these experiences to every student nor must a law school accommodate every student requesting enrollment in any particular live-client or other real-life practice experience.*

### Interpretation 302-6
*A law school should involve members of the bench and bar in the instruction required by Standard 302(a)(5).*

*Interpretation 302-7 [Reserved]*

*Interpretation 302-8*
*A law school shall engage in periodic review of its curriculum to ensure that it prepares the school's graduates to participate effectively and responsibly in the legal profession.*

*Interpretation 302-9*
*The substantial instruction in the history, structure, values, rules, and responsibilities of the legal profession and its members required by Standard 302(a)(5) includes instruction in matters such as the law of lawyering and the Model Rules of Professional Conduct of the American Bar Association.*

*Interpretation 302-10*
*Each law school is encouraged to be creative in developing substantial opportunities for student participation in pro bono activities. Pro bono opportunities should at a minimum involve the rendering of meaningful law-related service to persons of limited means or to organizations that serve such persons; however volunteer programs that involve meaningful services that are not law-related also may be included within the law school's overall program. Law-related pro bono opportunities need not be structured to accomplish any of the professional skills training required by Standard 302(a)(4). While most existing law school pro bono programs include only activities for which students do not receive academic credit, Standard 302(b)(2) does not preclude the inclusion of credit-granting activities within a law school's overall program of pro bono opportunities so long as law-related non-credit bearing initiatives are also part of that program.*

## Standard 303. ACADEMIC STANDARDS AND ACHIEVEMENTS

**(a)   A law school shall have and adhere to sound academic standards, including clearly defined standards for good standing and graduation.**

**(b)   A law school shall monitor students' academic progress and achievement from the beginning of and periodically throughout their studies.**

**(c)   A law school shall not continue the enrollment of a student whose inability to do satisfactory work is sufficiently manifest so that the student's continuation in school would inculcate false hopes, constitute economic exploitation, or detrimentally affect the education of other students.**

*Interpretation 303-1*
*Scholastic achievement of students shall be evaluated by examinations of suitable length and complexity, papers, projects, or by assessment of performances of students in the role of lawyers.*

*Interpretation 303-2*
*A law school shall provide academic advising to students to communicate effectively to them the school's academic standards and graduation requirements, and guidance regarding course selection and sequencing. Academic advising should include assisting each student with planning a program of study consistent with that student's goals.*

### Interpretation 303-3
*A law school shall provide the academic support necessary to assure each student a satisfactory opportunity to complete the program, graduate, and become a member of the legal profession. This obligation may require a school to create and maintain a formal academic support program.*

## Standard 304. COURSE OF STUDY AND ACADEMIC CALENDAR

(a) A law school shall have an academic year of not fewer than 130 days on which classes are regularly scheduled in the law school, extending into not fewer than eight calendar months. The law school shall provide adequate time for reading periods, examinations, and breaks, but such time does not count toward the 130-day academic year requirement.

(b) A law school shall require, as a condition for graduation, successful completion of a course of study in residence of not fewer than 58,000 minutes of instruction time, except as otherwise provided. At least 45,000 of these minutes shall be by attendance in regularly scheduled class sessions at the law school.

(c) A law school shall require that the course of study for the J.D. degree be completed no earlier than 24 months and no later than 84 months after a student has commenced law study at the law school or a law school from which the school has accepted transfer credit.

(d) A law school shall require regular and punctual class attendance.

(e) A law school shall not permit a student to be enrolled at any time in coursework that, if successfully completed, would exceed 20 percent of the total coursework required by that school for graduation (or a proportionate number for schools on other academic schedules, such as a quarter system).

(f) A student may not be employed more than 20 hours per week in any week in which the student is enrolled in more than twelve class hours.

### Interpretation 304-1
*This Standard establishes a minimum period of academic instruction as a condition for graduation. While the academic year is typically divided into two equal terms of at least thirteen weeks, that equal division is not required. The Standard accommodates deviations from a conventional semester system, including quarter systems, trimesters, and mini-terms.*

### Interpretation 304-2
*A law school may not count more than five class days each week toward the 130-day requirement.*

### Interpretation 304-3
*In calculating the 45,000 minutes of "regularly scheduled class sessions" for the purpose of Standard 304(b), the time may include:*

(a) *coursework at a law school for which a student receives credit toward the J.D. degree by the law school, so long as that work itself meets the requirements of Standard 304;*

(b) *coursework for which a student receives credit toward the J.D. degree that is work done in a foreign study program that qualifies under Standard 307;*

(c) *law school coursework that meets the requirements of Standard 306(c);*

(d)  in a seminar or other upper-level course other than an independent research course, the minutes allocated for preparation of a substantial paper or project if the time and effort required and anticipated educational benefit are commensurate with the credit awarded; and

(e)  in a law school clinical course, the minutes allocated for clinical work so long as (i) the clinical course includes a classroom instructional component, (ii) the clinical work is done under the direct supervision of a member of the law school faculty or instructional staff whose primary professional employment is with the law school, and (iii) the time and effort required and anticipated educational benefit are commensurate with the credit awarded.

A law school shall not include in the 45,000 minutes required by Standard 304(b) to be by attendance in regularly scheduled class sessions at the law school any other coursework, including but not limited to (i) work qualifying for credit under Standard 305;(ii) coursework completed in another department, school or college of the university with which the law school is affiliated or at another institution of higher learning; and (iii) co-curricular activities such as law review, moot court, and trial competitions.

### Interpretation 304-4

Law schools may find the following examples useful. Law schools on a conventional semester system typically require 700 minutes of instruction time per "credit," exclusive of time for an examination. A quarter hour of credit requires 450 minutes of instruction time, exclusive of time for an examination. To achieve the required total of 58,000 minutes of instruction time, a law school must require at least 83 semester hours of credit, or 129 quarter hours of credit.

If a law school on a semester system offers classes in units of 50 minutes per credit, it can provide 700 minutes of instruction in 14 classes. If such a law school offers classes in units of 55 minutes per class, it can provide 700 minutes of instruction in 13 classes. If such a law school offers classes in units of 75 minutes per class, it can provide 700 minutes of instruction in 10 classes.

If a law school on a quarter system offers classes in units of 50 minutes per class, it can provide 450 minutes of instruction in 9 classes. If such a law school offers classes in units of 65 minutes per class, it can provide 450 minutes of instruction in 8 classes. If such a law school offers classes in units of 75 minutes per class, it can provide 450 minutes of instruction in 6 classes.

In all events, the 130-day requirement of Standard 304(a) and the 58,000-minute requirement of Standard 304(b) should be understood as separate and independent requirements.

### Interpretation 304-5

Credit for a J.D. degree shall only be given for course work taken after the student has matriculated in a law school. A law school may not grant credit toward the J.D. degree for work taken in a pre-admission program.

### Interpretation 304-6

A law school shall demonstrate that it has adopted and enforces policies insuring that individual students satisfy the requirements of this Standard, including the implementation of policies relating to class scheduling, attendance, and limitation on employment.

### Interpretation 304-7

Subject to the provisions of this Interpretation, a law school shall require a student who has completed work in an LL.M. or other post J.D. program to complete all of the work for which it will award the J.D. degree

*following the student's regular enrollment in the school's J.D. program. A law school may accept transfer credit as otherwise allowed by the Standards.*

*A law school may award credit toward a J.D. degree for work undertaken in a LL.M. or other post J.D. program offered by it or another law school if:*

(a) *that work was the successful completion of a J.D. course while the student was enrolled in a post-J.D. law program;*

(b) *the law school at which the course was taken has a grading system for LL.M. students in J.D. courses that is comparable to the grading system for J.D. students in the course, and*

(c) *the law school accepting the transfer credit will require that the student successfully complete a course of study that satisfies the requirements of Standards 302(a)-(b) and that meets all of the school's requirement for the awarding of the J.D. degree.*

## Standard 305. STUDY OUTSIDE THE CLASSROOM

(a) **A law school may grant credit toward the J.D. degree for courses or a program that permits or requires student participation in studies or activities away from or outside the law school or in a format that does not involve attendance at regularly scheduled class sessions.**

(b) **Credit granted shall be commensurate with the time and effort required and the anticipated quality of the educational experience of the student.**

(c) **Each student's academic achievement shall be evaluated by a faculty member. For purposes of Standard 305 and its Interpretations, the term "faculty member" means a member of the full-time or part-time faculty. When appropriate a school may use faculty members from other law schools to supervise or assist in the supervision or review of a field placement program.**

(d) **The studies or activities shall be approved in advance and periodically reviewed following the school's established procedures for approval of the curriculum.**

(e) **A field placement program shall include:**

(1) **a clear statement of the goals and methods, and a demonstrated relationship between those goals and methods to the program in operation;**

(2) **adequate instructional resources, including faculty teaching in and supervising the program who devote the requisite time and attention to satisfy program goals and are sufficiently available to students;**

(3) **a clearly articulated method of evaluating each student's academic performance involving both a faculty member and the field placement supervisor;**

(4) **a method for selecting, training, evaluating, and communicating with field placement supervisors;**

(5) **periodic on-site visits or their equivalent by a faculty member if the field placement program awards four or more academic credits (or equivalent) for field work in any academic term or if on-site visits or their equivalent are otherwise necessary and appropriate;**

(6) **a requirement that students have successfully completed one academic year of study prior to participation in the field placement program;**

(7) **opportunities for student reflection on their field placement experience, through a seminar, regularly scheduled tutorials, or other means of guided reflection. Where a student can earn four or more academic credits (or equivalent) in the program for fieldwork, the seminar, tutorial, or other means of guided reflection must be provided contemporaneously.**

### Interpretation 305-1

*Activities covered by Standard 305(a) include field placement, moot court, law review, and directed research programs or courses for which credit toward the J.D. degree is granted, as well as courses taken in parts of the college or university outside the law school for which credit toward the J.D. degree is granted.*

### Interpretation 305-2

*The nature of field placement programs presents special opportunities and unique challenges for the maintenance of educational quality. Field placement programs accordingly require particular attention from the law school and the Accreditation Committee.*

### Interpretation 305-3

*A law school may not grant credit to a student for participation in a field placement program for which the student receives compensation. This Interpretation does not preclude reimbursement of reasonable out-of-pocket expenses related to the field placement.*

### Interpretation 305-4

*(a)   A law school that has a field placement program shall develop, publish and communicate to students and field instructors a statement that describes the educational objectives of the program.*

*(b)   In a field placement program, as the number of students involved or the number of credits awarded increases, the level of instructional resources devoted to the program should also increase.*

### Interpretation 305-5

*Standard 305 by its own force does not allow credit for Distance Education courses.*

## Standard 306. DISTANCE EDUCATION

**(a)   A law school may offer credit toward the J.D. degree for study offered through distance education consistent with the provisions of this Standard and Interpretations of this Standard. Such credit shall be awarded only if the academic content, the method of course delivery, and the method of evaluating student performance are approved as part of the school's regular curriculum approval process.**

**(b)   Distance education is an educational process characterized by the separation, in time or place, between instructor and student. It includes courses offered principally by means of:**

**(1)   technological transmission, including Internet, open broadcast, closed circuit, cable, microwave, or satellite transmission;**

**(2)   audio or computer conferencing;**

**(3)   video cassettes or discs; or**

**(4)   correspondence.**

(c)  **A law school may award credit for distance education and may count that credit toward the 45,000 minutes of instruction required by Standard 304(b) if:**

    (1)  **there is ample interaction with the instructor and other students both inside and outside the formal structure of the course throughout its duration; and**

    (2)  **there is ample monitoring of student effort and accomplishment as the course progresses.**

(d)  **A law school shall not grant a student more than four credit hours in any term, nor more than a total of 12 credit hours, toward the J.D. degree for courses qualifying under this Standard.**

(e)  **No student shall enroll in courses qualifying for credit under this Standard until that student has completed instruction equivalent to 28 credit hours toward the J.D. degree.**

(f)  **No credit otherwise may be given toward the J.D. degree for any distance education course.**

(g)  **A law school shall establish a process that is effective for verifying the identity of students taking distance education courses and protects student privacy. If any additional student charges are associated with verification of student identity, students must be notified at the time of registration or enrollment.**

### Interpretation 306-1
*To allow the Council and the Standards Review Committee to review and adjust this Standard, law schools shall report each year on the distance education courses that they offer.*

### Interpretation 306-2
*Distance education presents special opportunities and unique challenges for the maintenance of educational quality. Distance education accordingly requires particular attention from the law school and by site visit teams and the Accreditation Committee.*

### Interpretation 306-3
*Courses in which two-thirds or more of the course instruction consists of regular classroom instruction shall not be treated as "distance education" for purposes of Standards 306(d) and (e) even though they also include substantial on-line interaction or other common components of "distance education" courses so long as such instruction complies with the provisions of subsections (1) and (2) of Standard 306(c).*

### Interpretation 306-4
*Law schools shall take steps to provide students in distance education courses opportunities to interact with instructors that equal or exceed the opportunities for such interaction with instructors in a traditional classroom setting.*

### Interpretation 306-5
*Law schools shall have the technological capacity, staff, information resources, and facilities required to provide the support needed for instructors and students involved in distance education at the school.*

### Interpretation 306-6
*Law schools shall establish mechanisms to assure that faculty who teach distance education courses and students who enroll in them have the skills and access to the technology necessary to enable them to participate effectively.*

### Interpretation 306-7

*Faculty approval of credit for a distance education course shall include a specific explanation of how the course credit was determined. Credit shall be awarded in a manner consistent with the requirement of Interpretation 304-4 that requires 700 minutes of instruction for each credit awarded.*

### Interpretation 306-8

*A law school that offers more than an incidental amount of credit for distance education shall adopt a written plan for distance education at the law school and shall periodically review the educational effectiveness of its distance education courses and programs.*

### Interpretation 306-9

*"Credits" in this Standard means semester hour credits as provided in Interpretation 304-4. Law schools that use quarter hours of credit shall convert these credits in a manner that is consistent with the provisions of Interpretation 304-4.*

### Interpretation 306-10

*Methods to verify student identity as required in 306(g) include, but are not limited to: (i) a secure login and pass code; (ii) proctored examinations; and (iii) new or other technologies and practices that are effective in verifying student identity. As part of the verification process, a law school must verify that the student who registers for a class is the same student that participates and takes the exam for the class.*

# Standard 307. PARTICIPATION IN STUDIES OR ACTIVITIES IN A FOREIGN COUNTRY

**A law school may grant credit for student participation in studies or activities in a foreign country only if the studies or activities are approved in accordance with the Rules of Procedure and Criteria as adopted by the Council.**

### Interpretation 307-1

*In addition to studies or activities covered by Criteria adopted by the Council, a law school may grant credit for (a) studies or activities in a foreign country that meet the requirements of Standard 305 and (b) brief visits to a foreign country that are part of a law school course approved through the school's regular curriculum approval process.*

# Standard 308. DEGREE PROGRAMS IN ADDITION TO J.D.

**A law school may not establish a degree program other than its J.D. degree program without obtaining the Council's prior acquiescence. A law school may not establish a degree program in addition to its J.D. degree program unless the school is fully approved. The additional degree program may not detract from a law school's ability to maintain a J.D. degree program that meets the requirements of the Standards.**

### Interpretation 308-1

*Reasons for withholding acquiescence in the establishment of an advanced degree program include:*

*(1)   Lack of sufficient full-time faculty to conduct the J.D. degree program;*

(2)   *Lack of adequate physical facilities, which has a negative and material effect on the education students receive;*

(3)   *Lack of an adequate law library to support both a J.D. and an advanced degree program; and*

(4)   *A J.D. degree curriculum lacking sufficient diversity and richness in course offerings.*

### Interpretation 308-2

*Acquiescence in a degree program other than the first degree in law is not an approval of the program itself, and, therefore, a school may not announce that the program is approved by the American Bar Association.*

# CHAPTER **4**
# The Faculty

## Standard 401. QUALIFICATIONS

A law school shall have a faculty whose qualifications and experience are appropriate to the stated mission of the law school and to maintaining a program of legal education consistent with the requirements of Standards 301 and 302. The faculty shall possess a high degree of competence, as demonstrated by its education, experience in teaching or practice, teaching effectiveness, and scholarly research and writing.

## Standard 402. SIZE OF FULL-TIME FACULTY

(a)  A law school shall have a sufficient number of full-time faculty to fulfill the requirements of the Standards and meet the goals of its educational program. The number of full-time faculty necessary depends on:

   (1)  the size of the student body and the opportunity for students to meet individually with and consult faculty members;

   (2)  the nature and scope of the educational program; and

(3) **the opportunities for the faculty adequately to fulfill teaching obligations, conduct scholarly research, and participate effectively in the governance of the law school and in service to the legal profession and the public.**

(b) **A full-time faculty member is one whose primary professional employment is with the law school and who devotes substantially all working time during the academic year to the responsibilities described in Standard 404(a), and whose outside professional activities, if any, are limited to those that relate to major academic interests or enrich the faculty member's capacity as a scholar and teacher, are of service to the legal profession and the public generally, and do not unduly interfere with one's responsibility as a faculty member.**

## Interpretation 402-1

*In determining whether a law school complies with the Standards, the ratio of the number of full-time equivalent students to the number of full-time equivalent faculty members is considered.*

*(1) In computing the student/faculty ratio, full-time equivalent teachers are those who are employed as full-time teachers on tenure track or its equivalent who shall be counted as one each plus those who constitute "additional teaching resources" as defined below. No limit is imposed on the total number of teachers that a school may employ as additional teaching resources, but these additional teaching resources shall be counted at a fraction of less than 1 and may constitute in the aggregate up to 20 percent of the full-time faculty for purposes of calculating the student/faculty ratio.*

*(A) Additional teaching resources and the proportional weight assigned to each category include:*

*(i) teachers on tenure track or its equivalent who have administrative duties beyond those normally performed by full-time faculty members: 0.5;*

*(ii) clinicians and legal writing instructors not on tenure track or its equivalent who teach a full load: 0.7; and*

*(iii) adjuncts, emeriti faculty who teach, non-tenure track administrators who teach, librarians who teach, and teachers from other units of the university: 0.2.*

*(B) These norms have been selected to provide a workable framework to recognize the effective contributions of additional teaching resources. To the extent a law school has types or categories of teachers not specifically described above, they shall be counted as appropriate in accordance with the weights specified above. It is recognized that the designated proportional weights may not in all cases reflect the contributions to the law school of particular teachers. In exceptional cases, a school may seek to demonstrate to site evaluation teams and the Accreditation Committee that these proportional weights should be changed to weigh contributions of individual teachers.*

*(2) For the purpose of computing the student/faculty ratio, a student is considered full-time or part-time as determined by the school, provided that no student who is enrolled in fewer than ten credit hours in a term shall be considered a full-time student, and no student enrolled in more than 13 credit hours shall be considered a part-time student. A part-time student is counted as a two-thirds equivalent student.*

*(3) If there are graduate or non-degree students whose presence might result in a dilution of J.D. program resources, the circumstances of the individual school are considered to determine the adequacy of the teaching resources available for the J.D. program.*

## Interpretation 402-2

*Student/faculty ratios are considered in determining a law school's compliance with the Standards.*

(1) *A ratio of 20:1 or less presumptively indicates that a law school complies with the Standards. However, the educational effects shall be examined to determine whether the size and duties of the full-time faculty meet the Standards.*

(2) *A ratio of 30:1 or more presumptively indicates that a law school does not comply with the Standards.*

(3) *At a ratio of between 20:1 and 30:1 and to rebut the presumption created by a ratio of 30:1 or greater, the examination will take into account the effects of all teaching resources on the school's educational program, including such matters as quality of teaching, class size, availability of small group classes and seminars, student/faculty contact, examinations and grading, scholarly contributions, public service, discharge of governance responsibilities, and the ability of the law school to carry out its announced mission.*

### Interpretation 402-3
*A full-time faculty member who is teaching an additional full-time load at another law school may not be considered as a full-time faculty member at either institution.*

### Interpretation 402-4
*Regularly engaging in law practice or having an ongoing relationship with a law firm or other business creates a presumption that a faculty member is not a full-time faculty member under this Standard. This presumption may be rebutted if the law school is able to demonstrate that the individual has a full-time commitment to teaching, research, and public service, is available to students, and is able to participate in the governance of the institution to the same extent expected of full-time faculty.*

## Standard 403. INSTRUCTIONAL ROLE OF FACULTY

(a) **The full-time faculty shall teach the major portion of the law school's curriculum, including substantially all of the first one-third of each student's coursework.**

(b) **A law school shall ensure effective teaching by all persons providing instruction to students.**

(c) **A law school should include experienced practicing lawyers and judges as teaching resources to enrich the educational program. Appropriate use of practicing lawyers and judges as faculty requires that a law school shall provide them with orientation, guidance, monitoring, and evaluation.**

### Interpretation 403-1
*The full-time faculty's teaching responsibility will usually be determined by the proportion of student credit hours taught by full-time faculty in each of the law school's programs or divisions (such as full-time, part-time evening study, and part-time weekend study). For purposes of Standard 403(a), a faculty member is considered full-time if that person's primary professional employment is with the law school.*

### Interpretation 403-2
*Efforts to ensure teaching effectiveness may include: a faculty committee on effective teaching, class visitations, critiques of videotaped teaching, institutional review of student evaluation of teaching, colloquia on effective teaching, and recognition of creative scholarship in law school teaching methodology. A*

*law school shall provide all new faculty members with orientation, guidance, mentoring, and periodic evaluation.*

## Standard 404. RESPONSIBILITIES OF FULL-TIME FACULTY

(a) **A law school shall establish policies with respect to a full-time faculty member's responsibilities in teaching, scholarship, service to the law school community, and professional activities outside the law school. The policies need not seek uniformity among faculty members, but should address:**

    (1) **Faculty teaching responsibilities, including carrying a fair share of the law school's course offerings, preparing for classes, being available for student consultation, participating in academic advising, and creating an atmosphere in which students and faculty may voice opinions and exchange ideas;**

    (2) **Research and scholarship, and integrity in the conduct of scholarship, including appropriate use of student research assistants, acknowledgment of the contributions of others, and responsibility of faculty members to keep abreast of developments in their specialties;**

    (3) **Obligations to the law school and university community, including participation in the governance of the law school;**

    (4) **Obligations to the profession, including working with the practicing bar and judiciary to improve the profession; and**

    (5) **Obligations to the public, including participation in pro bono activities.**

(b) **A law school shall evaluate periodically the extent to which each faculty member discharges her or his responsibilities under policies adopted pursuant to Standard 404(a).**

## Standard 405. PROFESSIONAL ENVIRONMENT

(a) **A law school shall establish and maintain conditions adequate to attract and retain a competent faculty.**

(b) **A law school shall have an established and announced policy with respect to academic freedom and tenure of which Appendix 1 herein is an example but is not obligatory.**

(c) **A law school shall afford to full-time clinical faculty members a form of security of position reasonably similar to tenure, and non-compensatory perquisites reasonably similar to those provided other full-time faculty members. A law school may require these faculty members to meet standards and obligations reasonably similar to those required of other full-time faculty members. However, this Standard does not preclude a limited number of fixed, short-term appointments in a clinical program predominantly staffed by full-time faculty members, or in an experimental program of limited duration.**

(d) **A law school shall afford legal writing teachers such security of position and other rights and privileges of faculty membership as may be necessary to (1) attract and retain a faculty that is well qualified to provide legal writing instruction as required by Standard 302(a)(3), and (2) safeguard academic freedom.**

### Interpretation 405-1

*A fixed limit on the percent of a law faculty that may hold tenure under any circumstances violates the Standards.*

### Interpretation 405-2

*A law faculty as professionals should not be required to be a part of the general university bargaining unit.*

### Interpretation 405-3

*A law school shall have a comprehensive system for evaluating candidates for promotion and tenure or other forms of security of position, including written criteria and procedures that are made available to the faculty.*

### Interpretation 405-4

*A law school not a part of a university in considering and deciding on appointment, termination, promotion, and tenure of faculty members should have procedures that contain the same principles of fairness and due process that should be employed by a law school that is part of a university. If the dean and faculty have made a recommendation that is unfavorable to a candidate, the candidate should be given an opportunity to appeal to the president, chairman, or governing board.*

### Interpretation 405-5

*If the dean and faculty have determined the question of responsibility for examination schedules and the schedule has been announced by the authority responsible for it, it is not a violation of academic freedom for a member of the law faculty to be required to adhere to the schedule.*

### Interpretation 405-6

*A form of security of position reasonably similar to tenure includes a separate tenure track or a program of renewable long-term contracts. Under a separate tenure track, a full-time clinical faculty member, after a probationary period reasonably similar to that for other full-time faculty, may be granted tenure. After tenure is granted, the faculty member may be terminated only for good cause, including termination or material modification of the entire clinical program.*

*A program of renewable long-term contracts shall provide that, after a probationary period reasonably similar to that for other full-time faculty, during which the clinical faculty member may be employed on short-term contracts, the services of a faculty member in a clinical program may be either terminated or continued by the granting of a long-term renewable contract. For the purposes of this Interpretation, "long-term contract" means at least a five-year contract that is presumptively renewable or other arrangement sufficient to ensure academic freedom. During the initial long-term contract or any renewal period, the contract may be terminated for good cause, including termination or material modification of the entire clinical program.*

### Interpretation 405-7

*In determining if the members of the full-time clinical faculty meet standards and obligations reasonably similar to those provided for other full-time faculty, competence in the areas of teaching and scholarly research and writing should be judged in terms of the responsibilities of clinical faculty. A law school should develop criteria for retention, promotion, and security of employment of full-time clinical faculty.*

### Interpretation 405-8

*A law school shall afford to full-time clinical faculty members participation in faculty meetings, committees, and other aspects of law school governance in a manner reasonably similar to other full-time faculty members. This Interpretation does not apply to those persons referred to in the last sentence of Standard 405(c).*

### Interpretation 405-9

*Subsection (d) of this Standard does not preclude the use of short-term contracts for legal writing teachers, nor does it preclude law schools from offering fellowship programs designed to produce candidates for full-time teaching by offering individuals supervised teaching experience.*

# CHAPTER 5
# Admissions and Student Services

## Standard 501. ADMISSIONS

**(a)** A law school shall maintain sound admission policies and practices, consistent with the objectives of its educational program and the resources available for implementing those objectives.

**(b)** A law school shall not admit applicants who do not appear capable of satisfactorily completing its educational program and being admitted to the bar.

### Interpretation 501-1
*Sound admissions policies and practices may include consideration of admission test scores, undergraduate course of study and grade point average, extracurricular activities, work experience, performance in other graduate or professional programs, relevant demonstrated skills, and obstacles overcome.*

### Interpretation 501-2
*A law school's admission policies shall be consistent with Standards 211 and 212.*

## Interpretation 501-3
*Among the factors to consider in assessing compliance with Standard 501(b) are the academic and admission test credentials of the law school's entering students, the academic attrition rate of the law school's students, the bar passage rate of its graduates, and the effectiveness of the law school's academic support program.*

## Interpretation 501-4
*A law school may not permit financial considerations detrimentally to affect its admission and retention policies and their administration. A law school may face a conflict of interest whenever the exercise of sound judgment in the application of admission policies or academic standards and retention policies might reduce enrollment below the level necessary to support the program.*

# Standard 502. EDUCATIONAL REQUIREMENTS

(a)   A law school shall require for admission to its J.D. degree program a bachelor's degree, or successful completion of three-fourths of the work acceptable for a bachelor's degree, from an institution that is accredited by an accrediting agency recognized by the Department of Education.

(b)   In an extraordinary case, a law school may admit to its J.D. degree program an applicant who does not possess the educational requirements of subsection (a) if the applicant's experience, ability, and other characteristics clearly show an aptitude for the study of law. The admitting officer shall sign and place in the admittee's file a statement of the considerations that led to the decision to admit the applicant.

## Interpretation 502-1
*Before an admitted student registers, or within a reasonable time thereafter, a law school shall have on file the student's official transcript showing receipt of a bachelor's degree, if any, and all academic work undertaken. "Official transcript" means a transcript certified by the issuing school to the admitting school or delivered to the admitting school in a sealed envelope with seal intact. A copy supplied by the Law School Data Assembly Service is not an official transcript, even though it is adequate for preliminary determination of admission.*

# Standard 503. ADMISSION TEST

A law school shall require each applicant for admission as a first year J.D. student to take a valid and reliable admission test to assist the school and the applicant in assessing the applicant's capability of satisfactorily completing the school's educational program. In making admissions decisions, a law school shall use the test results in a manner that is consistent with the current guidelines regarding proper use of the test results provided by the agency that developed the test.

## Interpretation 503-1
*A law school that uses an admission test other than the Law School Admission Test sponsored by the Law School Admission Council shall establish that such other test is a valid and reliable test to assist the school in assessing an applicant's capability to satisfactorily complete the school's educational program.*

*Interpretation 503-2*
*This Standard does not prescribe the particular weight that a law school should give to an applicant's admission test score in deciding whether to admit or deny admission to the applicant.*

*Interpretation 503-3*
*A pre-admission program of coursework taught by members of the law school's full-time faculty and culminating in an examination or examinations, offered to some or all applicants prior to a decision to admit to the J.D. program, also may be useful in assessing the capability of an applicant to satisfactorily complete the school's educational program, to be admitted to the bar, and to become a competent professional.*

*Interpretation 503-4*
*The "Cautionary Policies Concerning LSAT Scores and Related Services" published by the Law School Admission Council is an example of the testing agency guidelines referred to in Standard 503. [See Appendix 2]*

## Standard 504. CHARACTER AND FITNESS

**(a)  A law school shall advise each applicant that there are character, fitness and other qualifications for admission to the bar and encourage the applicant, prior to matriculation, to determine what those requirements are in the state(s) in which the applicant intends to practice. The law school should, as soon after matriculation as is practicable, take additional steps to apprise entering students of the importance of determining the applicable character, fitness and other qualifications.**

**(b)  The law school may, to the extent it deems appropriate, adopt such tests, questionnaires, or required references as the proper admission authorities may find useful and relevant, in determining the character, fitness or other qualifications of the applicants to the law school.**

**(c)  If a law school considers an applicant's character, fitness or other qualifications, it shall exercise care that the consideration is not used as a reason to deny admission to a qualified applicant because of political, social, or economic views that might be considered unorthodox.**

## Standard 505. PREVIOUSLY DISQUALIFIED APPLICANT

**A law school may admit or readmit a student who has been disqualified previously for academic reasons upon an affirmative showing that the student possesses the requisite ability and that the prior disqualification does not indicate a lack of capacity to complete the course of study at the admitting school. In the case of admission to a law school other than the disqualifying school, this showing shall be made either by a letter from the disqualifying school or, if two or more years have elapsed since that disqualification, by the nature of interim work, activity, or studies indicating a stronger potential for law study. For every admission or readmission of a previously disqualified individual, a statement of the considerations that led to the decision shall be placed in the admittee's file.**

*Interpretation 505-1*
*The two year period begins on the date of the original determination to disqualify the student for academic reasons.*

*Interpretation 505-2*
*A student who enrolled in a pre-admission program but was not granted admission is not a student who was disqualified for academic reasons under this Standard.*

# Standard 506. APPLICANTS FROM LAW SCHOOLS NOT APPROVED BY THE ABA

(a)  A law school may admit a student with advanced standing and allow credit for studies at a law school in the United States that is not approved by the American Bar Association ("non-ABA approved law school") if:

   (1)  the non-ABA approved law school has been granted the power to confer the J.D. degree by the appropriate governmental authority in the unapproved law school's jurisdiction, or graduates of the non-ABA approved law school are permitted to sit for the bar examination in the jurisdiction in which the school is located;

   (2)  the studies were "in residence" as provided in Standard 304(b), or qualify for credit under Standard 305 or Standard 306; and (3) the content of the studies was such that credit therefore would have been granted towards satisfaction of degree requirements at the admitting school.

(b)  Advanced standing and credit hours granted for study at a non-ABA approved law school may not exceed one-third of the total required by an admitting school for its J.D. degree.

# Standard 507. APPLICANTS FROM FOREIGN LAW SCHOOLS

(a)  A law school may admit a student with advanced standing and allow credit for studies at a law school outside the United States if:

   (1)  the studies were "in residence" as provided in Standard 304, or qualify for credit under Standard 305;

   (2)  the content of the studies was such that credit therefore would have been granted towards satisfaction of degree requirements at the admitting school; and

   (3)  the admitting school is satisfied that the quality of the educational program at the foreign law school was at least equal to that required by an approved school.

(b)  Advanced standing and credit hours granted for foreign study may not exceed one-third of the total required by an admitting school for its J.D. degree.

*Interpretation 507-1*
*This Standard applies only to graduates of foreign law schools or students enrolled in a first degree granting law program in a foreign educational institution.*

# Standard 508. ENROLLMENT OF NON-DEGREE CANDIDATES

Without requiring compliance with its admission standards and procedures, a law school may enroll individuals in a particular course or limited number of courses, as auditors, non-degree candidates,

or candidates for a degree other than a law degree, provided that such enrollment does not adversely affect the quality of the course or the law school program.

## Standard 509. REQUIRED DISCLOSURES

(a) All information that a law school reports, publicizes or distributes shall be complete, accurate and not misleading to a reasonable law school student or applicant. Schools shall use due diligence in obtaining and verifying such information. Violations of these obligations may result in sanctions under Rule 16 of the Rules of Procedure for Approval of Law School.

(b) A law school shall publicly disclose on its website, in the form and manner and for the time frame designated by the Council, the following information:

   (1) admissions data;

   (2) tuition and fees, living costs, and financial aid;

   (3) conditional scholarships;

   (4) enrollment data, including academic, transfer, and other attrition;

   (5) numbers of full-time and part-time faculty, professional librarians, and administrators;

   (6) class sizes for first year and upper class courses; number of seminar, clinical and co-curricular offerings;

   (7) employment outcomes; and

   (8) bar passage data.

(c) A law school shall publicly disclose on its website, in a readable and comprehensive manner, the following information on a current basis:

   (1) refund policies;

   (2) curricular offerings, academic calendar, and academic requirements; and

   (3) policies regarding the transfer of credit earned at another institution of higher education. The law school's transfer of credit policies must include, at a minimum:

      (i) A statement of the criteria established by the law school regarding the transfer of credit earned at another institution; and

      (ii) A list of institutions, if any, with which the law school has established an articulation agreement.

(d) A law school shall distribute the data required under Standard 509(b)(3) to all applicants being offered conditional scholarships at the time the scholarship offer is extended.

(e) If a law school elects to make a public disclosure of its status as a law school approved by the Council, it shall do so accurately and shall include the name and contact information of the Council.

*Interpretation 509-1*

*Current curricular offerings, for the purposes of Standard 509(c), are only those courses offered in the current and past two academic years.*

*Interpretation 509-2*

*A law school may publicize or distribute information in addition to that required by this Standard, including but not limited to the employment outcomes of its graduates, as long as such information complies with the requirements of subsection (a).*

*Interpretation 509-3*

*A conditional scholarship is any financial aid award, the retention of which is dependent upon the student maintaining a minimum grade point average or class standing, other than that ordinarily required to remain in good academic standing.*

## Standard 510. STUDENT LOAN PROGRAMS

**A law school shall take reasonable steps to minimize student loan defaults, including provision of debt counseling at the inception of a student's loan obligations and prior to graduation.**

*Interpretation 510-1*

*The student loan default rates of a law school's graduates, including any results of financial or compliance audits and reviews, shall be considered in assessing the extent to which a law school complies with this Standard.*

*Interpretation 510-2*

*For law schools not affiliated with a university, the school's student loan cohort default rate shall be sufficient, for purposes of Standard 510, if it is not greater than 10% for any of the three most recently published annual cohort default rates. If the school's cohort student loan default rate is not sufficient under this Interpretation, the school must submit a plan for approval by the Accreditation Committee for coming into compliance with this requirement.*

*Failure to comply with title IV or having a student loan cohort default rate greater than the rate permitted by title IV is cause for review of a law school's overall compliance with the Standards. Schools shall demonstrate that they have resolved all areas of deficiency identified in financial or compliance audits, program reviews or other information provided by the United States Department of Education.*

*Interpretation 510-3*

*The law school's obligation shall be satisfied if the university, of which the law school is a part, provides to law students the reasonable steps described in this Standard.*

## Standard 511. STUDENT SUPPORT SERVICES

**A law school shall provide all its students, regardless of enrollment or scheduling option, with basic student services, including maintenance of accurate student records, academic advising and counseling, financial aid counseling, and an active career counseling service to assist students in making sound career choices and obtaining employment. If a law school does not provide these types**

of student services directly, it must demonstrate that its students have reasonable access to such services from the university of which it is a part or from other sources.

## Standard 512. STUDENT COMPLAINTS IMPLICATING COMPLIANCE WITH THE STANDARDS

(a)   A law school shall establish, publish, and comply with policies with respect to addressing student complaints.

(b)   A law school shall maintain a record of student complaints submitted during the most recent accreditation period.  The record shall include the resolution of the complaints.

(c)   A "complaint" is a communication in writing that seeks to bring to the attention of the law school a significant problem that directly implicates the school's program of legal education and its compliance with the Standards.

*Interpretation 512-1*
*A law school's policies on student complaints must address, at a minimum, procedures for filing and addressing complaints, appeal rights if any, and timelines.*

# CHAPTER 6
# Library and Information Resources

## Standard 601. GENERAL PROVISIONS

(a)  A law school shall maintain a law library that is an active and responsive force in the educational life of the law school. A law library's effective support of the school's teaching, scholarship, research and service programs requires a direct, continuing and informed relationship with the faculty, students and administration of the law school.

(b)  A law library shall have sufficient financial resources to support the law school's teaching, scholarship, research, and service programs. These resources shall be supplied on a consistent basis.

(c)  A law school shall keep its library abreast of contemporary technology and adopt it when appropriate.

### Interpretation 601-1
*Cooperative agreements may be considered when determining whether faculty and students have efficient and effective access to the resources necessary to meet the law school's educational needs. Standard 601 is not satisfied solely by arranging for students and faculty to have access to other law libraries within the region, or by providing electronic access.*

# Standard 602. ADMINISTRATION

**(a)**  A law school shall have sufficient administrative autonomy to direct the growth and development of the law library and to control the use of its resources.

**(b)**  The dean and the director of the law library, in consultation with the faculty of the law school, shall determine library policy.

**(c)**  The director of the law library and the dean are responsible for the selection and retention of personnel, the provision of library services, and collection development and maintenance.

**(d)**  The budget for the law library should be determined as part of, and administered in the same manner as, the law school budget.

## Interpretation 602-1

*This Standard recognizes that substantial operating autonomy rests with the dean, the director of the law library and the faculty of a law school with regard to the operation of the law school library. The Standards require that decisions that materially affect the law library be enlightened by the needs of the law school educational program. This envisions law library participation in university library decisions that may affect the law library. While the preferred structure for administration of a law school library is one of law school administration, a law school library may be administered as part of a general university library system if the dean, the director of the law library, and faculty are responsible for the determination of basic law library policies.*

# Standard 603. DIRECTOR OF THE LAW LIBRARY

**(a)**  A law library shall be administered by a full-time director whose principal responsibility is the management of the law library.

**(b)**  The selection and retention of the director of the law library shall be determined by the law school.

**(c)**  A director of a law library should have a law degree and a degree in library or information science and shall have a sound knowledge of and experience in library administration.

**(d)**  Except in extraordinary circumstances, a law library director shall hold a law faculty appointment with security of faculty position.

## Interpretation 603-1

*The director of the law library is responsible for all aspects of the management of the law library including budgeting, staff, collections, services and facilities.*

## Interpretation 603-2

*The dean and faculty of the law school shall select the director of the law library.*

## Interpretation 603-3

*The granting of faculty appointment to the director of the law library under this Standard normally is a tenure or tenure-track appointment. If a director is granted tenure, this tenure is not in the administrative position of director.*

*Interpretation 603-4*
*It is not a violation of Standard 603(a) for the director of the law library also to have other administrative or teaching responsibilities, provided sufficient resources and staff support are available to ensure effective management of library operations.*

## Standard 604. PERSONNEL

**The law library shall have a competent staff, sufficient in number to provide appropriate library and informational resource services.**

*Interpretation 604-1*
*Factors relevant to the number of librarians and informational resource staff needed to meet this Standard include the following: the number of faculty and students, research programs of faculty and students, a dual division program in the school, graduate programs of the school, size and growth rate of the collection, range of services offered by the staff, formal teaching assignments of staff members, and responsibilities for providing informational resource services.*

## Standard 605. SERVICES

**A law library shall provide the appropriate range and depth of reference, instructional, bibliographic, and other services to meet the needs of the law school's teaching, scholarship, research, and service programs.**

*Interpretation 605-1*
*Appropriate services include having adequate reference services, providing access (such as indexing, cataloging, and development of search terms and methodologies) to the library's collection and other information resources, offering interlibrary loan and other forms of document delivery, enhancing the research and bibliographic skills of students, producing library publications, and creating other services to further the law school's mission.*

## Standard 606. COLLECTION

(a)  **The law library shall provide a core collection of essential materials accessible in the law library.**

(b)  **In addition to the core collection of essential materials, a law library shall also provide a collection that, through ownership or reliable access,**

    (1)  **meets the research needs of the law school's students, satisfies the demands of the law school curriculum, and facilitates the education of its students;**

    (2)  **supports the teaching, scholarship, research, and service interests of the faculty; and**

    (3)  **serves the law school's special teaching, scholarship, research, and service objectives.**

(c)  **A law library shall formulate and periodically update a written plan for development of the collection.**

**(d)  A law library shall provide suitable space and adequate equipment to access and use all information in whatever formats are represented in the collection.**

### Interpretation 606-1

*All materials necessary to the programs of the law school shall be complete and current and in sufficient quantity or with sufficient access to meet faculty and student needs. The library shall ensure continuing access to all information necessary to the law school's programs.*

### Interpretation 606-2

*The appropriate mixture of collection formats depends on the needs of the library and its clientele. A collection that consists of a single format may violate Standard 606.*

### Interpretation 606-3

*Agreements for the sharing of information resources, except for the core collection, satisfy Standard 606 if:*

*(1)  the agreements are in writing; and*

*(2)  the agreements provide faculty and students with the ease of access and availability necessary to support the programs of the law school.*

### Interpretation 606-4

*Off-site storage for non-essential material does not violate the Standards so long as the material is organized and readily accessible in a timely manner.*

### Interpretation 606-5

*A law library core collection shall include the following:*

*(1)  all reported federal court decisions and reported decisions of the highest appellate court of each state;*

*(2)  all federal codes and session laws, and at least one current annotated code for each state;*

*(3)  all current published treaties and international agreements of the United States;*

*(4)  all current published regulations (codified and uncodified) of the federal government and the codified regulations of the state in which the law school is located;*

*(5)  those federal and state administrative decisions appropriate to the programs of the law school;*

*(6)  U.S. Congressional materials appropriate to the programs of the law school;*

*(7)  significant secondary works necessary to support the programs of the law school, and*

*(8)  those tools, such as citators and periodical indexes, necessary to identify primary and secondary legal information and update primary legal information.*

### Interpretation 606-6

*The dean, faculty, and director of the law library should cooperate in formulation of the collection development plan.*

### Interpretation 606-7

*This Standard requires the law library to furnish the equipment to print microform and electronic documents and to view and listen to audio-visual materials in the collection.*



# CHAPTER 7
# Facilities

## Standard 701. GENERAL REQUIREMENTS

**A law school shall have physical facilities that are adequate both for its current program of legal education and for growth anticipated in the immediate future.**

*Interpretation 701-1*
*Inadequate physical facilities are those that have a negative and material effect on the education students receive or fail to provide reasonable access for persons with disabilities. If equal access for persons with disabilities is not readily achievable, the law school shall provide reasonable accommodation to such persons.*

*Interpretation 701-2*
*Adequate physical facilities shall include:*

*(1) suitable class and seminar rooms in sufficient number and size to permit reasonable scheduling of all classes and seminars;*

*(2) suitable space for conducting its professional skills courses and programs, including clinical, pretrial, trial, and appellate programs;*

(3) an office for each full-time faculty member adequate for faculty study and for faculty-student conferences, and sufficient office space for part-time faculty members adequate for faculty-student conferences;

(4) space for co-curricular, as opposed to extra-curricular, activities as defined by the law school;

(5) suitable space for all staff; and

(6) suitable space for equipment and records in proximity to the individuals and offices served.

### Interpretation 701-3
To obtain full approval, a law school's facilities shall be completed and occupied by the law school; plans or construction in progress are insufficient.

### Interpretation 701-4
A law school must demonstrate that it is and will be housed in facilities that are adequate to carry out its program of legal education. If facilities are leased or financed, factors relevant to whether the law school is or will be housed in facilities that are adequate include overall lease or financing terms and duration, lease renewal terms, termination or foreclosure provisions, and the security of the school's interest.

### Interpretation 701-5
A law school's physical facilities should be under the exclusive control and reserved for the exclusive use of the law school. If the facilities are not under the exclusive control of the law school or are not reserved for its exclusive use, the arrangements shall permit proper scheduling of all law classes and other law school activities.

## Standard 702. LAW LIBRARY

**The physical facilities for the law library shall be sufficient in size, location, and design in relation to the law school's programs and enrollment to accommodate the law school's students and faculty and the law library's services, collections, staff, operations, and equipment.**

### Interpretation 702-1
A law library shall have sufficient seating to meet the needs of the law school's students and faculty.

## Standard 703. RESEARCH AND STUDY SPACE

**A law school shall provide, on site, sufficient quiet study and research seating for its students and faculty. A law school should provide space that is suitable for group study and other forms of collaborative work.**

## Standard 704. TECHNOLOGICAL CAPACITIES

**A law school shall have the technological capacities that are adequate for both its current program of legal education and for program changes anticipated in the immediate future.**

### Interpretation 704-1

*Inadequate technological capacities are those that have a negative and material effect on the education students receive.*

### Interpretation 704-2

*Adequate technological capacity shall include:*

(1) *sufficient and up-to-date hardware and software resources and infrastructure to support the teaching, scholarship, research, service and administrative needs of the school;*

(2) *sufficient staff support and space for staff operations;*

(3) *sufficient financial resources to adopt and maintain new technology as appropriate.*

# CHAPTER 8

# Council Authority, Variances and Amendments

## Standard 801. COUNCIL AUTHORITY

The Council shall have the authority to adopt, revise, amend or repeal the Standards, Interpretations and Rules. A decision of the Council to adopt, revise, amend or repeal the Standards, Interpretations or Rules shall not become effective until it has been reviewed by the House. Review of such decisions by the House shall be conducted pursuant to the procedures set forth in Standard 803 and the Rules of Procedure of the House.

## Standard 802. VARIANCE

A law school proposing to offer a program of legal education a portion of which is inconsistent with a Standard may apply for a variance. If the Council finds that the proposal is nevertheless consistent with the general purposes of the Standards, the Council may grant the variance, may impose conditions, and shall impose time limits it considers appropriate. Council may terminate a variance prior to the end of the stated time limit if the school fails to comply with any conditions imposed by the Council. As a general rule, the duration of a variance should not exceed three years.

### Interpretation 802-1

*Variances are generally limited to proposals based on one or more of the following:*

(a) *a response to extraordinary circumstances that would create extreme hardship for students or for an approved law school; or*

(b) *an experimental program based on all of the following:*

    (1) *good reason to believe that there is a likelihood of success;*

    (2) *high quality experimental design;*

    (3) *clear and measurable criteria for assessing the success of the experimental program;*

    (4) *strong reason to believe that the benefits of the experiment will be greater than its risks; and*

    (5) *adequately informed participation by students involved in the experiment.*

### Interpretation 802-2

*A school applying for a variance has the burden of demonstrating that the variance should be granted. The application should include, at a minimum, the following:*

(a) *a precise statement of the variance sought;*

(b) *an explanation of the bases and reasons for the variance; and*

(c) *additional information needed to support the application.*

### Interpretation 802-3

*The Chair of the Accreditation Committee or the Consultant may appoint one or more fact finders to elicit facts relevant to consideration of the application for a variance. Thus an application for a variance must be filed well in advance of consideration of the application by the Accreditation Committee and the Council.*

### Interpretation 802-4

*The Consultant, the Accreditation Committee or the Council may from time to time request written reports from the school concerning the variance.*

### Interpretation 802-5

*Variances are school-specific and based on the circumstances existing at the law school filing the request.*

## Standard 803. AMENDMENT OF STANDARDS, INTERPRETATIONS AND RULES

**(a) A decision by the Council to adopt, revise, amend or repeal the Standards, Interpretations or Rules does not become effective until it has been reviewed by the House. After the meeting of the Council at which it decides to adopt, revise, amend or repeal the Standards, Interpretations or Rules, the Chairperson of the Council shall furnish a written statement of the Council action to the House.**

**(b) Once the action of the Council is placed on the calendar of a meeting of the House, the House shall at that meeting either agree with the Council's decision or refer the decision back to the Council for further consideration. If the House refers a decision back to the Council, the House shall provide the Council with a statement setting forth the reasons for its referral.**

**(c)** **A decision by the Council to adopt, revise, amend or repeal the Standards, Interpretations or Rules is subject to a maximum of two referrals back to the Council by the House. If the House refers a Council decision back to the Council twice, then the decision of the Council following the second referral will be final and will not be subject to further review by the House.**

**(d)** **Proposals for amendments to the Standards, Interpretations or Rules may be submitted to the Consultant, who shall refer the proposal to the Standards Review Committee or other appropriate committee. The committee to which any such proposal is referred shall report its recommendation concerning that proposal to the Council within twelve months after the proposal had been referred to the Committee.**

# Criteria for Approval of Foreign Summer and Intersession Programs Established by ABA-Approved Law Schools

## Preamble

The Council has adopted three sets of Criteria applicable to study abroad: Criteria for Approval of Foreign Summer and Intersession Programs Established by ABA-Approved Law Schools; Criteria for Approval of Semester and Year-Long Study Abroad Programs Established by ABA-Approved Law Schools; and Criteria for Student Study at a Foreign Institution.

Standard 307 provides that a law school may not grant credit toward the J.D. degree for studies in a foreign country unless those studies are approved in accordance with the *Rules of Procedure for Approval of Law Schools* and *Criteria* adopted by the American Bar Association's Council of the Section of Legal Education and Admissions to the Bar.

The ABA's oversight role with regard to study abroad programs is designed to provide assurance of a sound educational experience in a study abroad program sponsored by an ABA-approved law school.

The Criteria related to study abroad provide a framework for law schools to grant students credit toward the J.D. degree for studies abroad. They seek to provide flexibility for a school to design programs and to permit study abroad consistent with the law school's mission while maintaining a level of oversight of the school's program of legal education that is consistent with the role and scope of the *Standards for the Approval of Law Schools*.

These Criteria recognize that the primary responsibility for determining the quality of the educational experience that students receive during a study abroad experience rests with the faculty and administration of the law school.

The ABA Standards and Rules of Procedure for the Approval of Law Schools shall apply to study abroad programs except as modified by the Criteria or by necessary implication.

## I.    The Program

A.  The dean and faculty of the sponsoring law school (or schools if there is more than one sponsoring law school) are responsible for formulating and administering the foreign summer or intersession program.

B.  The faculty of each of the sponsoring law school(s) must approve the academic content of the program in the same manner as the curriculum of the sponsoring school's on-campus program.

C.  The academic content of the program must meet the same standards, including evaluation of student performance, as the on-campus program of the sponsoring school(s).

D.  A substantial portion of the academic program must relate to the socio-legal environment of the host country or have an international or comparative focus.

E.  The number of students enrolled in the program shall not exceed the number appropriate for the academic content of the program, available facilities, the number and availability of faculty members, the administrative support structure, and any special educational program goals.

## II.    Faculty and Staff

A.  Faculty Oversight

   1.  The sponsoring law school(s) shall assign at least one tenured, tenure-track or full-time faculty member from the law school (or one of the co-sponsoring law schools) to the foreign summer or intersession program who will be present on site for the duration of the program.

   2.  A visiting professor to a sponsoring law school is not considered a full-time faculty member for purposes of this provision.

   3.  The faculty member assigned to fulfill subsection A.1. may also serve as the program director.

   4.  The faculty member assigned to fulfill subsection A.1. must be well qualified by experience with the sponsoring law school (or one of the co-sponsoring law schools) to provide leadership and appropriate faculty oversight of the program for the sponsoring law school(s).

   5.  The requirement of a continuous presence of a tenured, tenure-track or full-time faculty member from the sponsoring law school(s) may be satisfied by having different faculty members from the sponsoring law school(s) participating in the program at different times as long as each fulfills subsection A.1. and one such faculty member is on site at all times.

B.  Program Director

   1.  The sponsoring law school(s) must provide a program director who will be present on site for the duration of the program and who must be appointed with the approval of each of the sponsoring law schools.

   2.  The same person may serve as both the program director and as the faculty member assigned to fulfill subsection A.1.

   3.  The requirement of a continuous presence of the program director may be satisfied by having more than one program director at different times as long as one program director who fulfills subsection B.1. is on site at all times and there is provision for continuity of administration and oversight.

   4.  The director may not participate concurrently in another program.

    5.    The director shall have had some experience with the same or a similar program or possess a background that is an adequate substitute for such experience.

C.   Program Faculty

    1.    Faculty members who are not from the sponsoring law school(s) shall possess academic credentials equivalent to those of the faculty at the sponsoring law school(s) and must be approved to teach in the program in the same manner as required for an adjunct faculty appointment at the sponsoring law school(s).

    2.    All faculty teaching in the program must be able to communicate effectively with the students in the language of instruction used in the program.

D.   The program director or at least one member of the full-time faculty or on-site staff must:

    1.    Be fluent in both English and the language of the host country, and

    2.    Be familiar with the country in which the program is offered.

## III.   Program Administration

A.   The program must have a staffed administrative office or other mechanism in place that is convenient to students and through which the students may communicate effectively with staff and faculty in a timely manner.

B.   Students must be provided with the name and contact information of the program director or another responsible person on site who can be reached at all times during the program.

## IV.   Educational Program

A.   Length of program

    1.    Foreign summer and intersession programs must provide adequate time for class preparation, reflection and intellectual maturation similar to that provided in the regular semester.

    2.    No student shall receive more than 1.5 semester credit hours for each week of the program.

    3.    No student shall be in class more than 220 minutes per day, excluding breaks.

B.   Credit shall be stated in terms of credit hours according to the following formula: one semester hour for each 700 minutes of class time or equivalent or one quarter hour for each 450 minutes of class time or equivalent.

C.   Instruction Conducted in a Foreign Language

    1.    When instruction is offered in a foreign language with consecutive English interpretation, the time expended in class is not commensurate with class time spent when instruction is in English. For purposes of calculating required class minutes for required credit hours, classes in which consecutive interpretation is needed may not count more than fifty (50) percent of actual class time expended.

    2.    When instruction is offered in a foreign language with simultaneous English interpretation, the time expended in class is commensurate with class time spent when instruction is in English. For purposes of calculating required class minutes for required credit hours, classes in which a

simultaneous interpretation is needed may be counted at one hundred (100) percent of actual class time expended.

D.  If credit is given for externship placements (e.g., in a law firm, government office, or corporation), then faculty supervision must be individualized and integrated with classroom work to ensure that the credit allowed is commensurate with the educational benefit to the participating student. Additionally, the program must meet the other requirements of Standard 305(d) and (e) and Interpretations thereof (i.e., a clear statement of goals and methods; adequate instructional resources to supervise program and be available to students; clearly articulated methods for evaluating student performance involving both a faculty member and a field placement supervisor; methods for selecting, training, evaluating and communicating with field placement supervisors; periodic review following the school's established procedures for approval of the curriculum).

E.  If credit is given for Distance Education courses, those courses and credits must comply with the requirements of Standard 306 and the Interpretation of that Standard.

F.  The sponsoring law school(s) determine(s) whether specific prerequisites are required for enrollment in certain courses.

G.  Although a student in an ABA-approved law school may be permitted to take courses in foreign segment programs during the course of study toward the J.D. degree, the total credits in foreign segments shall not exceed one-third of the credits required for the J.D. degree at the law school in which the student is enrolled.

H.  Visits to legal institutions

   1.  The program shall include at least two visits to legal institutions in the host country.

   2.  Time or a portion of the time allocated for visits to legal institutions is not included in the 220 maximum class minutes per day but may be calculated in the 700 minutes per class credit hour only when the content of the visit is academic in nature and specifically related to the class for which the credit is being awarded.

I.  If course materials, including all case, statutory, and text materials needed for full understanding of the course and completion of assignments, are not self-contained, then adequate library resources must be available.

J.  The sponsoring law school(s) shall offer students at or shortly after the conclusion of the program an opportunity to evaluate in writing both the study abroad program and the faculty and courses offered in the program.

## V.    Students

A.  The sponsoring law school(s) determines the academic criteria for admission to the program.

B.  Students enrolling in a foreign summer or intersession program for credit toward a J.D. degree must have completed at least one year of full- or part-time law study at an ABA-approved law school or a law school described in Standard 506(a)(1) prior to enrolling.

C.  All students must furnish a letter or other documentation from their dean or registrar certifying their current good standing.

D. The sponsoring law school(s) may include participants other than those described in V.B., provided that such participation does not detract from the law school's ability to maintain a program that meets the requirements of these Criteria and the Standards.

## VI.   Physical Facilities

A. Faculty members should be provided with appropriate work space.

B. Classrooms must provide adequate seating with writing surfaces for students, sufficient lighting, and adequate soundproofing.

C. Equipment necessary for the teaching of scheduled courses and administration of the program must be provided.

D. If course work depends upon library facilities, then those facilities must be convenient and accessible to students during normal working hours.

E. Adequate facilities for studying must be available to students.

F. Housing

    1. Students must be informed if the housing made available by the program is significantly lower in quality or safety than housing normally used by law students in the U.S. and must be provided with information regarding the cost and availability of better quality housing in the same area.

    2. If the program does not provide housing, information on the availability, quality, approximate cost, and location of housing must be provided.

## VII.   Cancellation, Change, or Termination of Programs

A. Program Cancellation

    1. If a program is subject to cancellation for insufficient enrollment or any other reason, the circumstances under which cancellation will occur must be disclosed in accordance with Section VIII.

    2. For cancellation that occurs after a deposit has been paid, the program director must use his or her best efforts to make arrangements for each student enrolled to attend a similar program, if the student so desires.

B. If changes are made in the course offerings or other significant aspects of the program, those changes must be communicated promptly to any registrant who has paid a deposit or registered for the program, and an opportunity must be provided for that person to withdraw.

C. State Department Travel Information

    1. As part of the registration materials for the program, the school shall supply the U.S. State Department Country-Specific Information for the country(ies) in which the program will be conducted. If the Country-Specific Information for the country(ies) is revised prior to or during a program the updated information must be distributed promptly to students.

2.  Travel Warnings and Travel Alerts

    a.  If, prior to the commencement of a program, a U.S. State Department Travel Warning or Alert covering program dates and destinations is issued for the country(ies) in which the program will be conducted, all registrants must be notified promptly and be given an opportunity to withdraw from the program.

    b.  If, during the course of a program, a U.S. State Department Travel Warning or Alert covering program dates and destinations is issued for the country(ies) in which the program is being conducted, students must be notified promptly and given an opportunity to withdraw from the program.

D.  Refund Policy

1.  If students withdraw as permitted in Sections VII.B or VII.C.2.(a) prior to the commencement of the program, or if a program is canceled, students must receive a full refund of all monies advanced within twenty (20) days after the cancellation or withdrawal.

2.  If students withdraw as permitted in Sections VII.B. or VII.C.2.(b) during the course of the program, or if the program is terminated, students must be refunded fees paid except for room and board payments utilized prior to the date of termination or withdrawal.

## VIII.  Disclosures

The following information must be disclosed when program information is initially made available to prospective students (i.e., on the program website, in the initial announcement or brochure, and in any communication sent directly to prospective students):

1.  Dates, location(s), description of the program, and anticipated enrollment;

2.  The nature of the relationship with the foreign institution, if any, other than the provision of facilities and minimal services;

3.  The number of students who participated in the program the previous year from the sponsoring law school(s) and the number from other schools (if the program is open to other students);

4.  If the program is not limited to students from U.S. law schools, the countries likely to be represented and the expected number of students from those countries;

5.  Description of each course and number of credit hours;

6.  Schedule of classes with days and times for each class;

7.  Requirements for student performance and grading method;

8.  Enrollment limitations on any courses offered and criteria for enrollment, including prerequisites;

9.  A statement that acceptance of any credit or grade for any course taken in the program, including externships and other clinical offerings, is subject to determination by the student's home school;

10.  Descriptive biography of the program director;

11.  Descriptive biographies, including academic credentials and experience, of each faculty member responsible for teaching a course or any portion of a course;

12.  Name, address, telephone, e-mail and fax number of an informed contact person at (each of) the sponsoring law school(s);

13.  Complete statement of all tuition, fees, anticipated living costs, and other expected expenses;

14.  Description and location of classrooms and administrative offices;

15. The extent to which the country, city, and facilities are accessible to individuals with disabilities;

16. Circumstances under which the program is subject to cancellation, how cancellation will be communicated to the student; what arrangements will be made in the event of cancellation, and information about any prior cancellations, if any;

17. State Department Travel Information;

18. Refund policy in the event of student withdrawal as permitted in Section VII, or program cancellation or termination;

19. Description of the housing made available by the program. (See criterion VI.F.)

## IX.   Procedures for Approval

A. New Programs

1. A law school or schools seeking to establish a new program must submit a New Program Questionnaire in the year preceding the first offering of the new program by October 1 for Summer programs and March 1 for Intersession programs.

2. On the basis of the written submission, the Accreditation Committee will determine whether to approve the program for its first year of operation. Approval will be granted only if the law school demonstrates that the proposed program complies with the Criteria.

3. If the Accreditation Committee grants approval, the program will be evaluated with a site visit during its first year of operation. The Accreditation Committee will then determine whether to approve the program for further operation on the basis of the site evaluation and written materials submitted by the law school.

4. A law school may not advertise or market any program prior to submitting a request for approval of the program. Any advertising or marketing that is done prior to program approval must clearly indicate that the program is pending approval by the Accreditation Committee.

5. Approval after the first year, if granted, is effective for five years.

B. Monitoring of Approved Programs

1. A law school shall complete an Annual Questionnaire for each approved Foreign Summer and Intersession Program by October 31.

2. A site visit will be held five years after initial approval of a new program and every seven years thereafter.

3. For each program subject to a site visit, a law school shall file a Foreign Summer and Intersession Program Site Visit Questionnaire by March 1 for Foreign Summer programs and by October 1 for Foreign Intersession programs.

C. Significant Change in Program

1. If an approved program undergoes a significant change, written notice of such change shall be provided to the Consultant in the year prior to the implementation of the proposed change no later than October 1 for Summer programs and March 1 for Intersession programs.

2. The Accreditation Committee will review the information submitted concerning the proposed change and determine whether a site evaluation is necessary to evaluate the program's compliance with the Criteria in light of the changes in the program. If the Committee determines that such a

site evaluation is necessary, the sponsoring law school(s) will be required to pay the fee established for a Site Visit in Connection with a Significant Change in a Foreign Program.

3. Examples of changes that require approval by the Accreditation Committee include, without limitation:

   a. change in program location;

   b. significant changes in program administration;

   c. changes in the curriculum that significantly reduce the comparative or international focus of the program;

   d. significant increase in the enrollment expectations for the program;

   e. adding a new externship program or a substantial increase in the enrollment in existing externship programs;

   f. changes in the language of instruction in the program;

   g. new agreements to co-sponsor the program with another ABA-approved law school; or

   h. significant changes in the housing arrangements for students.

D. Additional Review

1. The Accreditation Committee may ask for further information or direct a site visit of an approved program in any year where responses to the questionnaire suggest that the program is out of compliance with these Criteria or that the program has so substantially changed its focus or operation that its compliance with the Criteria cannot be determined without further information and, potentially, a site visit.

2. Examples of actions or changes that might trigger this review include:

   a. failure to timely file the annual questionnaire;

   b. submitting an incomplete questionnaire;

   c. number and nature of the concerns raised in the most recent review of the program;

   d. failure to notify the Office of the Consultant of a significant change as required in part C; and

   e. a persistent pattern of complaints by students in the program regarding the quality of the educational experience or the administration of the program.

E. Withdrawal of Approval. If it is determined that a program is operating out of compliance with these Criteria, approval may be withdrawn by the Accreditation Committee in accordance with Rule 13 of the Rules of Procedure for Approval of Law Schools.

F. Request for Variance. A law school proposing to offer a program that is inconsistent with the Criteria adopted by the Council may apply for a variance in accordance with Standard 802 of the Standards for Approval of Law Schools.

G. Expiration of Approval. If an approved program is not offered in two consecutive years, approval is withdrawn and the sponsoring law school(s) must reapply for approval of the program as a new program. This requirement may be waived by the Accreditation Committee for good cause shown.

# Criteria for Accepting Credit for Student Study at a Foreign Institution

**Preamble**

The Council has adopted three sets of Criteria applicable to study abroad: Criteria for Approval of Foreign Summer and Intersession Programs Established by ABA-Approved Law Schools; Criteria for Approval of Foreign Semester and Year-Long Programs; and Criteria for Accepting Credit for Student Study at a Foreign Institution.

Standard 307 provides that a law school may not grant credit toward the J.D. degree for studies in a foreign country unless those studies are approved in accordance with the *Rules of Procedure for Approval of Law Schools* and *Criteria* adopted by the American Bar Association's Council of the Section of Legal Education and Admissions to the Bar.

The ABA's oversight role with regard to study abroad programs is designed to provide assurance of a sound educational experience in a study abroad program sponsored by an ABA-approved law school.

The Criteria related to study abroad provide a framework for law schools to grant students credit toward the J.D. degree for studies abroad. They seek to provide flexibility for a school to design programs and to permit study abroad consistent with the law school's mission while maintaining a level of oversight of the school's program of legal education that is consistent with the role and scope of the *Standards for the Approval of Law Schools.*

These Criteria recognize that the primary responsibility for determining the quality of the educational experience that students receive during a study abroad experience rests with the faculty and administration of the law school.

*The ABA Standards and Rules of Procedure for the Approval of Law Schools* shall apply to study abroad programs except as modified by the Criteria or by necessary implication.

For the purpose of these Criteria the following definitions apply:

▪ "law school" refers to an ABA-approved law school.

▪ "foreign institution" refers to the institution outside the United States at which a student from an ABA-approved law school is studying to receive credit toward the law school J.D. degree.

## I.    Criteria Applicable to all Student Study at a Foreign Institution

A.  Course of Study

1.  The law school must ensure that the content of the studies at the foreign institution is such that credit would have been granted towards satisfaction of degree requirements of the law school.

2.  To be approved for credit toward the J.D. degree, the course of study must be related either to the socio-legal environment of the country in which the foreign institution is located, or it must have an international or comparative focus.

3.  A law school that permits students to undertake foreign study under these Criteria shall develop and publish, prior to approving any foreign study, a statement that defines the educational objectives the law school seeks to achieve in allowing students to study abroad for credit toward the J.D. degree. Publication should usually be on a website, in an announcement or brochure, or in writing directly to prospective students.

4.  Academic Advisor

    (a)  The law school must appoint an academic advisor for any student studying at a foreign institution. The academic advisor must approve in advance the student's academic course of study to be undertaken at the foreign institution. The academic advisor must be a faculty member or a law school administrator who has the training or experience to permit effective approval and monitoring of foreign study by law students.

    (b)  The student and the academic advisor shall develop a written plan to define the educational objectives a student seeks to achieve during a period of study abroad. The plan shall specify the methods to be used in evaluating the student's attainment of those objectives. If changes occur, such as a course change or cancellation, the student and the academic advisor shall reexamine the written plan to determine whether the approved foreign study continues to satisfy the stated educational objectives.

5.  The law school must ensure that course materials and methods of evaluation of student performance are satisfactory for the award of credit at the law school.

6.  The law school must ensure that a student approved for foreign study under these Criteria is proficient in the language of instruction.

7.  The law school must ensure that any student who studies at a foreign institution has reliable access to library resources that are adequate to meet the educational objectives of the course of study.

8.  The law school must offer students at or shortly after the conclusion of the period of study abroad an opportunity to evaluate in writing the faculty, courses offered and the experience at the foreign institution.

9.  The law school must ensure that there is a contact person at the foreign institution and must provide the contact information for that person to each student studying at the foreign institution.

B.  The foreign institution. The foreign institution must be:

1.  government sanctioned or recognized, if educational institutions are state regulated within the country;

2.  recognized or approved by an accrediting agency, if such an agency exists within the country; or

3.  chartered to award first degrees in law by the appropriate authority within the country.

C.  Academic Credit

1.  Credits toward the J.D. degree for all foreign study shall not exceed one third of the credits required for the J.D. degree at the law school.

2.  An exception to Standard 304(a), regarding the length of the course of study, and to Standard 304(b) and Interpretation 304-4, regarding required minutes of instruction per credit, is inherent in the Criteria for Accepting Credit for Student Study at a foreign institution. In awarding credit, a law school must determine appropriate comparability between the foreign course and the regular law school curriculum.

3.  The law school shall ensure that no credit is given for field placements (e.g., in a law firm, government office, or corporation) unless the field placement is consistent with the requirements of Standard 305.

4.  The law school shall ensure that no credit is given for distance education unless the courses are consistent with the requirements of Standard 306.

D.  Students. Only students who have completed one year of full-time or part-time study and are in good standing at the law school may participate in foreign study under these Criteria.

E.  Fees. The law school shall make known to students any costs in addition to tuition that are charged by the foreign institution, including any fee that is charged for transferring or receiving credit earned at the foreign institution.

F.  State Department Travel Information

1.  The law school shall supply the U.S. State Department Country-Specific Information for the country(ies) in which the foreign study will be conducted. If the Country-Specific Information for the country(ies) is revised prior to or during the period of foreign study, the updated information must be distributed promptly to students.

2.  Travel Warnings and Travel Alerts

    a.  If, prior to the commencement of the foreign study, a U.S. State Department Travel Warning or Alert covering program dates and destinations is issued for the country(ies) in which the foreign study will be conducted, all students must be notified promptly and be given an opportunity to withdraw.

    b.  If, during the period of foreign study, a U.S. State Department Travel Warning or Alert covering program dates and destinations is issued for the country(ies) in which the foreign study is being conducted, students must be notified promptly and given an opportunity to withdraw.

G.  Refund Policy. The law school must adopt policies regarding the circumstances and timing of the refund of monies advanced by students.

H.  Disclosures. When the law school has an ongoing or announced relationship with a foreign institution, the following information must be published to each prospective student in a timely fashion, usually on a website for that purpose, in the initial announcement or brochure, or in writing directly to prospective students, but, in any event, prior to the date when the student must commit or pay a nonrefundable deposit, whichever is earlier:

1.  The nature of the relationship with the foreign institution;

2.  The number of students from the law school who studied at the foreign institution in the previous year;

3.  Requirements for student performance and grading methods;

4.  Name, address, telephone and email address of the contact person at the foreign institution;

5.  The extent to which the country, city, and facilities are accessible to individuals with disabilities;

6.  Circumstances under which the study at the foreign institution is subject to cancellation, what arrangements will be made in the event of cancellation and information regarding prior cancellations, if any;

7.  Information on the availability, approximate cost, and location of housing;

8.  Refund polices, in accordance with Standard 509(c)(1).

## II.   Procedures for Review

A.  To assist the Accreditation Committee in monitoring compliance with these Criteria, a law school shall complete an Annual Questionnaire in the form specified by the Council.

B.  The law school must retain student evaluations done in accordance with Section I.A.8. and any student complaints for review by sabbatical site teams.

C.  The Accreditation Committee may ask for further information in any year where responses to the questionnaire suggest that the law school is out of compliance with these Criteria. Examples of actions or changes that might trigger this review include:

1.  failure to timely file the annual questionnaire;

2.  submitting an incomplete questionnaire;

3.  changes in the curriculum that significantly reduce the comparative or international focus of the course of study;

4.  a persistent pattern of complaints by students regarding the quality of the educational experience.

D.  If the Accreditation Committee has reason to believe that a law school is not operating in compliance with these Criteria, the Accreditation Committee shall proceed with an action under Rule 13(a).

# Criteria for Approval of Foreign Semester and Year-Long Study Abroad Programs Established by ABA-Approved Law Schools

## Preamble

The Council has adopted three sets of Criteria applicable to study abroad: Criteria for Approval of Foreign Summer and Intersession Programs Established by ABA-Approved Law Schools; Criteria for Approval of Semester and Year-Long Study Abroad Programs Established by ABA-Approved Law Schools; and Criteria for Student Study at a Foreign Institution.

Standard 307 provides that a law school may not grant credit toward the J.D. degree for studies in a foreign country unless those studies are approved in accordance with the *Rules of Procedure for Approval of Law Schools* and *Criteria* adopted by the American Bar Association's Council of the Section of Legal Education and Admissions to the Bar.

The ABA's oversight role with regard to study abroad programs is designed to provide assurance of a sound educational experience in a study abroad program sponsored by an ABA-approved law school.

The Criteria related to study abroad provide a framework for law schools to grant students credit toward the J.D. degree for studies abroad. They seek to provide flexibility for a school to design programs and to permit study abroad consistent with the law school's mission while maintaining a level of oversight of the school's program of legal education that is consistent with the role and scope of the *Standards for the Approval of Law Schools*.

These Criteria recognize that the primary responsibility for determining the quality of the educational experience that students receive during a study abroad experience rests with the faculty and administration of the law school.

The *ABA Standards and Rules of Procedure for the Approval of Law Schools* shall apply to study abroad programs except as modified by the Criteria or by necessary implication.

## I.    The Program

A.   The dean and faculty of the sponsoring law school (or schools if there is more than one sponsoring law school) are responsible for formulating and administering the foreign semester and year-long study abroad program.

B.  The faculty of each of the sponsoring law school(s) must approve the academic content of the program in the same manner as the curriculum of the sponsoring school's on-campus program.

C.  The academic content of the program must meet the same standards, including evaluation of student performance, as the on-campus program of the sponsoring school(s).

D.  A substantial portion of the academic program must relate to the socio-legal environment of the host country or have an international or comparative focus.

E.  The number of students enrolled in the program shall not exceed the number appropriate for the academic content of the program, available facilities, the number and availability of faculty members, the administrative support structure, and any special educational program goals.

## II.   Faculty and Staff

A.  Program Director

   1.  The sponsoring law school(s) must provide a program director who will be present onsite for the duration of the program and who must be appointed with the approval of each of the sponsoring law schools.

   2.  The program director must be a tenured, tenure-track or full-time faculty member from the law school (or one of the co-sponsoring law schools). A visiting professor at one of the co-sponsoring law schools is not considered a full-time faculty member for purposes this provision.

   3.  The program director must be well qualified by experience with the sponsoring law school (or one of the co-sponsoring law schools) to provide leadership and appropriate faculty oversight of the program for the sponsoring school(s).

   4.  The requirement of a continuous presence of the program director may be satisfied by having more than one program director serving at different times as long as one program director who satisfies subsection A.1. is on site at all times and there is provision for continuity of administration and oversight.

   5.  The director may not participate concurrently in another program.

   6.  The director shall have had some experience with the same or a similar program or possess a background that is an adequate substitute for such experience.

B.  Faculty and Additional Personnel

   1.  In addition to the director, the sponsoring law school(s) shall assign at least one other person from the law school (or one of the co-sponsoring law schools) who will be present onsite for the duration of the program.
       a.  The second person from the law school (or one of the co-sponsoring law schools) must be:
           i.   a tenured, tenure-track, or full-time faculty member;
           ii.  a full-time administrator who works with study abroad or international programs; or
           iii. a full-time visiting professor.
       b.  The requirement of a continuous presence of the second person may be satisfied by having different persons from the sponsoring law school(s) participating in the program at different times as long as one person who fulfills subsection B.1.(a) is on site at all times.

    2.    Faculty members who are not from the sponsoring law school(s) shall possess academic credentials equivalent to those of the faculty at the sponsoring law school(s) and must be approved to teach in the program in the same manner as required for an adjunct faculty appointment at the sponsoring law school(s).

    3.    All faculty teaching in the program must be able to communicate effectively with the students in the language of instruction used in the program.

C.   The program director or at least one member of the full-time faculty or on-site staff must:

    1.    be fluent in both English and the language of the host country, and

    2.    be familiar with the country in which the program is offered.

## III.   Program Administration

A.   The program must have a staffed administrative office or other mechanism in place that is convenient to students and through which the students may communicate effectively with staff and faculty in a timely manner.

B.   Students must be provided with the name and contact information of the program director or another responsible person on site who can be reached at all times during the program.

C.   The program director shall be provided with appropriate assistance, including secretarial and administrative support.

D.   Faculty members shall be provided with adequate secretarial support services.

## IV.   Educational Program

A.   Although a student in an ABA-approved law school may be permitted to take courses in foreign segment programs during the course of study toward the J.D. degree, the total credits in foreign segments shall not exceed one-third of the credits required for the J.D. degree at the law school in which the student is enrolled.

B.   Credit shall be stated in terms of credit hours according to the following formula: one semester hour for each 700 minutes of class time or equivalent or one quarter hour for each 450 minutes of class time or equivalent.

C.   Language of instruction

    1.    If instruction is not in English, students must be fluent in the foreign language in which courses are taught or provided with a translation.

    2.    When instruction is offered in a foreign language with consecutive English interpretation, the time expended in class is not commensurate with class time spent when instruction is in English. For purposes of calculating required class minutes for required class hours, classes in which consecutive translation is necessary may not count more than fifty (50) percent of actual class time expended.

    3.    When instruction is offered in a foreign language with simultaneous English interpretation, the time expended in class is commensurate with class time spent when instruction is in English. For purposes of calculating required class minutes for required credit hours, classes in which a

simultaneous interpretation is needed may be counted at one hundred (100) percent of actual class time expended.

D.  If credit is given for externship placements (e.g., in a law firm, government office, or corporation), then faculty supervision must be individualized and integrated with classroom work to ensure that the credit allowed is commensurate with the educational benefit to the participating student. Additionally, the program must meet the other requirements of Standard 305(d) and (e) and Interpretations thereof. (i.e., a clear statement of goals and methods; adequate instructional resources to supervise program and be available to students; clearly articulated methods for evaluating student performance involving both a faculty member and a field placement supervisor; methods for selecting, training, evaluating and communicating with field placement supervisors; periodic review following the school's established procedures for approval of the curriculum.)

E.  If credit is given for Distance Education courses, those courses and credits must comply with the requirements of Standard 306 and the Interpretation of that Standard.

F.  The sponsoring law school(s) shall determine whether specific prerequisites are required for enrollment in certain courses.

G.  The program shall include at least two visits to legal institutions in the host country. Time or a portion of the time allocated for visits to legal institutions may be calculated in the 700 minutes per class credit hour only when the content of the visit is academic in nature and specifically related to the class for which the credit is being awarded.

H.  The sponsoring law school(s) shall offer students at or shortly after the conclusion of the program an opportunity to evaluate in writing both the foreign study program and the faculty and courses offered in the program.


## V.    Library

A.  In accordance with Standards 601 and 702, the program must have or must provide acceptable access to a library and study facility adequate for its academic program. This requirement may entail development and supervision of the library holdings by the sponsoring law school librarian.

B.  Library holdings must be adequate to support the course offerings of the academic program, including any research component.


## VI.    Students

A.  The sponsoring law school(s) shall determine the academic criteria for admission to the program.

B.  Students enrolling in a semester or year-long study abroad program for credit toward a J.D. degree must have completed at least one year of full- or part-time law study at an ABA-approved law school or a law school described in Standard 506(a)(1) prior to enrolling.

C.  All students must furnish a letter or other documentation from their dean or registrar certifying their current good standing.

D. The sponsoring law school(s) may include participants other than those described in VI.B., provided that such participation does not detract from the law school's ability to maintain a program that meets the requirements of these Criteria and the Standards.

## VII.  Physical Facilities

A. The faculty shall be provided with office space adequate to achieve the purposes of the program.

B. Classrooms must provide adequate seating with writing surfaces for students, sufficient lighting, and adequate soundproofing.

C. Equipment necessary for the teaching of scheduled courses and administration of the program must be provided.

D. Adequate facilities for studying must be available to students.

E. Housing

   1. Students must be informed if the housing made available by the program is significantly lower in quality, sanitation, or safety than housing normally used by law students in the U.S. and must be provided with information regarding the cost and availability of better quality housing in the same area.

   2. If the program does not provide housing, information on the availability, quality, approximate cost, and location of housing must be provided.

## VIII.  Cancellation, Change, or Termination of Programs

A. If a program is subject to cancellation for insufficient enrollment or any other reason, the circumstances under which cancellation will occur must be disclosed in accordance with Section IX.15.

B. If a program is subject to cancellation, application materials must include information regarding what arrangements will be made in the event of cancellation, as well as any history of prior cancellations.

C. If changes are made in the course offerings or other significant aspects of the program, those changes must be communicated promptly to any registrant who has paid a deposit or registered for the program, and an opportunity must be provided for that person to withdraw.

D. State Department Travel Information

   1. As part of the registration materials for the program, the school shall supply the U.S. State Department Country-Specific Information for the country(ies) in which the program will be conducted. If the Country-Specific Information for the country(ies) is revised prior to or during a program the updated information must be distributed promptly to students.

   2. Travel Warnings and Travel Alerts

      a. If, prior to the commencement of a program, a U.S. State Department Travel Warning or Alert covering program dates and destinations is issued for the country(ies) in which the program will be conducted, all registrants must be notified promptly and be given an opportunity to withdraw from the program.

    b.    If, during the course of a program, a U.S. State Department Travel Warning or Alert covering program dates and destinations is issued for the country(ies) in which the program is being conducted, students must be notified promptly and given an opportunity to withdraw from the program.

E.   Refund Policy

1.    If students withdraw as permitted in Sections VIII.C. or VIII.D.2.(a) prior to the commencement of the program, or if a program is canceled, students must receive a full refund of all monies advanced within twenty (20) days after the cancellation or withdrawal.

2.    If students withdraw as permitted in Sections VIII.C. or VIII.D.2.(b) during the course of the program, or if the program is terminated, students must be refunded fees paid except for room and board payments utilized prior to the date of termination or withdrawal.

## IX.  Disclosures

The following information must be disclosed when program information is initially made available to prospective students (i.e., on the program website, in the initial announcement or brochure, and in any communication sent directly to prospective students):

1.    Dates, location(s), description of the program, and anticipated enrollment;

2.    The nature of the relationship with the foreign institution, if any, other than the provision of facilities and minimal services;

3.    The number of students who participated in the program the previous year from the sponsoring law school(s) and the number from other schools (if the program is open to other students);

4.    If the program is not limited to students from U.S. law schools, the countries likely to be represented and the expected number of students from those countries;

5.    Description of each course and number of credit hours;

6.    Schedule of classes with days and times for each class;

7.    Requirements for student performance and grading method;

8.    Enrollment limitations on any courses offered and criteria for enrollment, including prerequisites;

9.    A statement that acceptance of any credit or grade for any course taken in the program, including externships and other clinical offerings, is subject to determination by the student's home school;

10.   Descriptive biographies of program director;

11.   Descriptive biographies, including academic credentials and experience, of each faculty member responsible for teaching a course or any portion of a course;

12.   Name, address, telephone, e-mail and fax number of an informed contact person at (each of) the sponsoring law school(s);

13.   Complete statement of all tuition, fees, anticipated living costs, and other expected expenses;

14.   Description and location of classrooms and administrative offices;

15.   The extent to which the country, city, and facilities are accessible to individuals with disabilities;

16.   Circumstances under which the program is subject to cancellation, how cancellation will be communicated to the students; what arrangements will be made in the event of cancellation, and information about any prior cancellations, if any;

17.  State Department Travel Information; and

18.  Refund policy in the event of student withdrawal as permitted in Section VIII, or program cancellation or termination.

19.  Description of the housing made available by the program. (See criterion V.I.F.)


## X.    Procedures for Approval

A.  New Programs

1.  A law school or schools seeking to establish a new program must submit a New Program Questionnaire in the year preceding the first offering of the new program by October 1.

2.  On the basis of the written submission, the Accreditation Committee will determine whether to approve the program for its first year of operation. Approval will be granted only if the law school demonstrates that the proposed program complies with the Criteria.

3.  If the Accreditation Committee grants approval, the program will be evaluated with a site visit during its first year of operation. The Accreditation Committee will then determine whether to approve the program for further operation on the basis of the site evaluation and written materials submitted by the law school.

4.  A law school may not advertise or market any program prior to submitting a request for approval of the program.  Any advertising or marketing that is done prior to program approval must clearly indicate that the program is pending approval by the Accreditation Committee.

5.  Approval after the first year, if granted, is effective for five years.

B.  Monitoring of Approved Programs

1.  A law school shall complete an Annual Questionnaire for each approved Foreign Semester and Year-Long Study Abroad Program by October 31.

2.  A site visit will be held five years after initial approval of a new program and every seven years thereafter.

3.  For each program subject to a site visit, a law school shall file a Foreign Semester and Year-Long Study Abroad Program Site Visit Questionnaire by March 1.

C.  Significant Change in Program

1.  If an approved program undergoes a significant change, written notice of such change shall be provided to the Consultant in the year prior to the implementation of the proposed change no later than October 1.

2.  The Accreditation Committee will review the information submitted concerning the proposed change and determine whether a site evaluation is necessary to evaluate the program's compliance with the Criteria in light of the changes in the program. If the Committee determines that such a site evaluation is necessary, the sponsoring law school(s) will be required to pay the fee established for a Site Visit in Connection with a Significant Change in a Foreign Program.

3.  Examples of changes that require approval by the Accreditation Committee include, without limitation:

   a.  change in program location;

   b.  significant changes in program administration;

    c.   changes in the curriculum that significantly reduce the comparative or international focus of the program;

    d.   significant increase in the enrollment expectations for the program;

    e.   adding a new externship program or a substantial increase in the enrollment in existing externship programs;

    f.   changes in the language of instruction in the program;

    g.   new agreements to co-sponsor the program with another ABA-approved law school; or

    h.   significant changes in the housing arrangements for students.

D.  Additional Review

    1.   The Accreditation Committee may ask for further information or direct a site visit of an approved program in any year where responses to the questionnaire suggest that the program is out of compliance with these Criteria or that the program has so substantially changed its focus or operation that its compliance with the Criteria cannot be determined without further information and, potentially, a site visit.

    2.   Examples of actions or changes that might trigger this review include:

        a.   failure to timely file the annual questionnaire;

        b.   submitting an incomplete questionnaire;

        c.   number and nature of the concerns raised in the most recent review of the program;

        d.   failure to notify the Office of the Consultant of a significant change as required in part C; and

        e.   a persistent pattern of complaints by students in the program regarding the quality of the educational experience or the administration of the program.

E.  Withdrawal of Approval. If it is determined that a program is operating out of compliance with these Criteria, approval may be withdrawn by the Accreditation Committee in accordance with Rule 13 of the Rules of Procedure for Approval of Law Schools.

F.  Request for Variance. A law school proposing to offer a program that is inconsistent with the Criteria adopted by the Council may apply for a variance in accordance with Standard 802 of the Standards for Approval of Law Schools.

G.  Expiration of Approval. If an approved program is not offered in two consecutive years, approval is withdrawn and the sponsoring law school(s) must reapply for approval of the program as a new program. This requirement may be waived by the Accreditation Committee for good cause shown.

# Section Bylaws

(Approved by Section Council: August 7, 2010)

## ARTICLE I
### NAME, PURPOSES

## Section 1. Name.

This section shall be known as the Section of Legal Education and Admissions to the Bar and herein referred to as the "Section."

## Section 2. Purposes.

The purposes of this Section as stated in its Mission Statement are:

to be a creative national force in providing leadership and services to those responsible for and those who benefit from a sound program of legal education and bar admissions,

to provide a fair, effective, and efficient accrediting system for American law schools,

to serve, through its Council, as the nationally recognized accrediting body for American law schools.

In particular the Section through its Council shall:

(a) establish standards and procedures to be met and observed by law schools in obtaining and retaining the approval of the Council, which standards and procedures shall be publicly available;

(b) receive and process applications of law schools for provisional or full approval, grant or deny such applications, and withdraw, suspend or terminate approval of law schools;

(c) consider policies and resolutions referred to it by the Board of Governors or the House of Delegates;

(d) study and make recommendations in cooperation with the National Conference of Bar Examiners, the Conference of Chief Justices and bar admissions authorities for the improvement of the bar admission process; and

(e)  foster close cooperation among legal educators, practitioners, judges and law students through workshops, conferences and publications.

# ARTICLE II
## MEMBERSHIP

## Section 1. Members.

(a)  Any member of the Association in good standing shall be a member of the Section upon request to the Secretary of the Association and the payment of the annual Section dues.

(b)  Any member of the Law Student Division of the Association in good standing shall be enrolled as a Law Student Division member of the Section upon request to the Secretary of the Association and the payment of the annual Section dues applicable to members of the Law Student Division. Law Student Division members shall not be eligible to vote or serve as officers, but shall have the privilege of the floor at Section meetings, including the privilege to make motions and present resolutions, and shall receive Section publications on the same basis as lawyer members of the Section.

(c)  Any individual who is an associate of the Association, upon payment of the dues as provided for Associates of the Section, shall be enrolled as an Associate of the Section. The privileges of Associates shall be prescribed by the Bylaws of the Association and by guidelines adopted by the Board of Governors.

## Section 2. Dues.

Upon recommendation of the Council, and, where necessary, approval of the Board of Governors, the Section may establish the amount of the annual dues to the Section for continued membership in the Section.

## Section 3. Termination of Membership.

Any member of the Section whose annual Section dues are more than six months past due shall cease to be a member of the Section. Any person who ceases to be a member of the Association shall also cease to be a member of the Section.

# ARTICLE III
## SECTION MEETINGS

## Section 1. Annual Meeting.

The Section shall meet immediately before or during the Annual Meeting of the Association, in the same city or place as the Annual Meeting of the Association, with such agenda, program and order of business as the Council or the Chairperson with the approval of the Council may arrange.

## Section 2. Special Meetings.

The Section may hold other meetings of its membership during the year, provided that the Board of Governors approves the times and places of other meetings.

## Section 3. Quorum.

The members of the Section present at a meeting of the membership shall constitute a quorum for the transaction of business.

## Section 4. Agenda.

The agenda of the annual meeting of the membership shall consist of the election of officers and members of the Council, the annual report of the Consultant, and such other matters as the Chairperson of the Section or the Council deems appropriate. The agenda shall be published on the Section's website by July 15. The agenda of a special meeting of the membership shall consist of those matters that the Chairperson of the Section or the Council deems appropriate and of which notice has been given by publication on the Section's website at least ten (10) business days before the date of the special meeting.

## Section 5. Voting.

Voting and privilege of the floor at any meeting of the Section is limited to Section members recorded 45 days prior to the meeting. The Secretary shall make this official membership roster open for inspection at any meeting to which it is applicable. All substantive action of the Section shall be by a majority vote of the members present and voting at a duly called meeting, except in those cases in which a referendum by mail ballot may be authorized by the Council pursuant to Article IV, Section (1)(e).

## Section 6. Parliamentary Authority.

The Chairperson shall preside at all meetings of the Section. The conduct of the meetings shall in general conform to these Bylaws and to Robert's Rules of Order.

## Section 7. Notice.

Unless otherwise specified in these Bylaws, all notices required or permitted in the Bylaws may be by written notice, e-mail, or other manner of electronic communication and/or publication on the Section website, as the Council may direct.

# ARTICLE IV
## COUNCIL

## Section 1. Powers and Functions.

(a)  The Council shall be vested with the powers and duties necessary for the administration of the business of the Section. It shall authorize all commitments for expenditures of Section monies.

(b)  The Council shall develop separate budgets for the Accreditation of Law Schools Project and for other activities of the Section. The Accreditation Project budget will not be subject to review of, approval by, or consultation with the Board of Governors of the Association or any other entity outside the Section. The budget for the activities of the Section other than the Accreditation Project will be subject to the Association's regular budget process. With respect to those activities other than the Accreditation Project, the Council shall not authorize commitments for expenditures in a fiscal year that would exceed the income and reserves of the Section for that fiscal year without approval of the Board of Governors.

(c)  The Council is authorized to establish and organize committees and other entities. The Council shall establish an appropriate chain of responsibility for any committee or entity that it creates. No Section committee or other entity shall have authority to speak for the Section unless specifically authorized by these Bylaws or by the Council.

(d)  Between meetings of the membership, the Council shall have authority to conduct the business of the Section. The Council shall report to the membership of the Section at each annual meeting any actions taken pursuant to this subsection since the last meeting of the membership of the Section.

(e)  The Council may direct a referendum by mail or electronic ballot of Section members as defined in Article III, Section 5. A majority of the votes cast in the referendum shall determine the policy of the Section with respect to the question submitted. Such referendum shall be conducted according to rules established by the Council and the results shall be certified by the Secretary.

(f)  At appropriate times, as determined by the Section Officers Conference, the Council is authorized to submit a nomination for a Section member-at-large of the Board of Governors. Notice of an opening for this position and the procedure to be followed for submitting nominations shall be published on the Section website at least sixty (60) days before the Council decides on the nominee. The selection of the nominee shall be made by the Council with due regard for the eligibility requirements for election to the Board of Governors.

## Section 2. Qualifications of Members of the Council.

Members of the Council of the Section shall be chosen without reference to their race, color, creed, gender, age, disability, sexual orientation or national origin. Members of the Council shall be persons of integrity and intelligence who have evidenced interest in legal education or admission to the bar and whose participation is likely to be guided by the interests of the public and by the high standards of the legal profession, rather than any personal interest. Members of the Council (with the exception of public members) shall be members of the Section.

## Section 3. Composition.

The Council shall be composed of the following voting members: the Officers of the Section; fifteen members-at-large, who shall include public members whose qualifications and election are consistent with the regulations of the United States Department of Education applicable to the accreditation of professional schools; and a representative of the Law Student Division to be selected for nomination by the Nominating Committee from a slate of three nominees recommended to the Section by the Law Student Division no later than May 1 of each year. The Council shall include legal educators, practitioners, members of the judiciary, and representatives of the public. No more than fifty percent of the voting members of the Council may be persons whose current primary professional employment is as a law school dean, faculty or staff member.

## Section 4. Terms.

The term of a member-at-large is three Association years beginning with the adjournment of the Annual Meeting during which the member is elected. The terms of at least one third of the members-at-large shall expire each year. No member-at-large may serve more than two successive three-year terms in that capacity or more than a total of six years as a member-at-large. Members may, however, be elected to serve additional terms as Officers.

## Section 5. Meetings.

(a)  The Council shall hold at least one regular meeting each year at the time and place of the Annual Meeting of the Association. The Chairperson may call other regular meetings of the Council at times and places determined by the Chairperson. The Chairperson shall, upon request of five members of the Council, call special meetings of the Council between annual meetings. Meetings of the Council other than the meeting at the Annual Meeting of the Association may be held by means of telecommunications which permit direct communication among all members participating. Subject to consent of the Chairperson, and when good cause prevents in-person participation, individual members of the Council may participate in meetings of the Council by means of telecommunications.

(b)  There shall be neither absentee nor proxy voting.

(c)  If a meeting of the Council is not feasible, the Chairperson of the Section shall, upon the written request of five members of the Council, submit in writing to each of the members of the Council any item upon which the Council may be authorized to act. The members of the Council may vote upon the proposition either by written or electronic ballot or by telephone vote, confirmed in writing, to the Secretary of the Section who shall record the proposition and votes on the matter.

## Section 6. Compensation.

No salary or compensation for services shall be paid to any Officer, member of the Council, or member of any committee, except as may be specifically authorized by the Board of Governors.

## Section 7. Vacancies.

If any member of the Council shall fail to attend two successive meetings of the Council, the member's seat on the Council shall be automatically vacated unless he or she is excused for good cause by action of the

Executive Committee. If there is a vacancy in the position of a member-at-large the vacancy shall be filled by the Council from one or more nominations received from the Nominating Committee (See Article VIII). Members so elected shall serve the remainder of the term for which their predecessors were elected. In the case of a vacancy in the position of the Law Student Division representative, the Council may request the Law Student Division to propose another representative.

## Section 8. Liaisons from Other Association Entities.

The Council shall permit a duly designated representative from the Young Lawyers Division and the Board of Governors to attend meetings of the Council in open and closed session and to have the privileges of the floor at such meetings. Such liaison representatives are not entitled to vote. Attendance at a closed session dealing with accreditation matters is limited to Council members and Section Delegates and those determined by the Council to be necessary for the conduct of its business. Attendance at other closed sessions may include the duly designated representative from the Young Lawyers Division and the Board of Governors. No liaisons appointed by other ABA entities may attend closed sessions of the Council.

# ARTICLE V
## OFFICERS

## Section 1. Officers.

The Officers of the Section shall be the Chairperson, the Chairperson-Elect, the Vice-Chairperson, the Secretary, and the Immediate Past Chairperson of the Section.

## Section 2. Chairperson.

The Chairperson shall:

(a) preside at all meetings of the members of the Section and of the Council;

(b) appoint the chairperson and members of all committees of the Section who are to be appointed during his or her term as Chairperson;

(c) plan the program of the Section during his or her term, subject to the directions and approval of the Council;

(d) oversee the performance of all activities of the Section;

(e) keep the Council informed of the activities of the Section and oversee the implementation of its decisions;

(f) communicate on a regular basis with the Consultant and serve as the Consultant's immediate supervisor; and

(g) perform such other duties and acts as usually pertain to the office of Chairperson or as may be designated by the Council.

## Section 3. Chairperson-Elect.

The Chairperson-Elect shall:

(a) aid the Chairperson in the performance of the Chairperson's responsibilities in the manner and to the extent as the Chairperson may request;

(b) preside at meetings of the Section and the Council in the absence of the Chairperson; and

(c) perform the duties and have the powers that usually pertain to the office or as may be designated by the Council or the Chairperson.

(d) In case of the death, resignation, or disability of the Chairperson, the Chairperson-Elect shall perform the duties of the Chairperson for the remainder of the Chairperson's term or disability.

## Section 4. Vice-Chairperson.

The Vice-Chairperson shall:

(a) aid the Chairperson in the performance of the responsibilities of the office of Chairperson in the manner and to the extent the Chairperson may request; and

(b) preside at meetings of the Section and the Council in the absence of the Chairperson and Chairperson-Elect.

## Section 5. Secretary.

The Secretary shall:

(a) consult with and assist the other Officers of the Section in the work of the Section in the manner and to the extent requested;

(b) be the liaison between the Section and the Association staff with respect to the retention and maintenance of books, papers, documents, and other property pertaining to the work of the Section; and

(c) supervise the keeping of a true record of the proceedings of all meetings of the Section and of the Council.

(d) confirm the eligibility of those nominated by petition.

## Section 6. Terms.

(a) The term of the Chairperson, Chairperson-Elect and the Vice-Chairperson is one Association year, beginning with the adjournment of the Annual Meeting of the Association during which he or she is elected.

(b) The Secretary shall serve a two year term beginning with the adjournment of the Annual Meeting of the Association during which he or she is elected. A Secretary may serve no more than two terms as Secretary.

(c) The Chairperson shall not be eligible for re-election as Chairperson or Chairperson-Elect. The Chairperson-Elect becomes the Chairperson upon the adjournment of the next Annual Meeting of the Association after he or she was elected Chairperson-Elect and is not again eligible for either office.

(d) The Immediate Past Chairperson shall serve a term of one year after expiration of his or her term as Chairperson.

## Section 7. Vacancies.

The office of an Officer who fails to attend two successive meetings of the Council shall be automatically vacated unless the officer is excused for good cause by action of the Executive Committee. The Council, between annual meetings of the Section, may fill vacancies in the office of Chairperson-Elect, Vice-Chairperson or Secretary. Officers so elected shall serve until the adjournment of the next Annual Meeting of the Association, except a person elected as secretary who shall serve the remainder of the term of his or her predecessor. In the event of a vacancy in the position of Immediate Past Chairperson, that position shall not be filled.

## Section 8. Consultant.

The Council of the Section shall employ a Consultant on Legal Education to the American Bar Association, who shall be responsible to the Council, and shall perform such duties relating to the business of the Council as shall be prescribed by the Chairperson and the Council and shall assist the Officers and Council in furthering the work of the Section and of the Association. The Consultant shall supervise all staff employees of the Section.

# ARTICLE VI
## EXECUTIVE COMMITTEE

## Section 1. Membership.

There shall be an Executive Committee of the Council comprised of the Officers and two members-at-large. The Chairperson of the Section shall appoint the members-at-large to serve on the Executive Committee for a one-year term beginning at the adjournment of the annual meeting at which the Chairperson is elected. The membership of the Executive Committee should include practitioners, members of the judiciary, and at least two legal educators.

## Section 2. Duties.

The Executive Committee shall act on behalf of the Council concerning any matters that require action before the next meeting of the Council and shall have such duties as prescribed by the Council. The Executive Committee may not:

(1) elect, appoint, or remove members of the Council or fill vacancies on the Council or any of its committees;

(2) adopt, amend, or repeal the Bylaws; or

(3) approve any action with respect to an accreditation matter, including variances or waivers of accreditation standards or rules.

## Section 3. Notice and Actions.

Each member of the Executive Committee shall receive notice of the meetings of the Committee. A vote of a majority of the total members of the Executive Committee shall be necessary for Executive Committee action. The Chairperson of the Section shall timely report the actions of the Executive Committee to the Council.

# ARTICLE VII
## SECTION DELEGATES

## Section 1. General.

The Section Delegates shall represent the Section in the House of Delegates. At appropriate times, as determined by the Section Officers Conference, the Section Delegate so designated by the Council shall serve on the Nominating Committee of the House of Delegates.

## Section 2. Eligibility.

To be eligible for the position of Section Delegate, a person must have served as a member-at-large on the Council. The term of a Section Delegate is three Association years beginning with the adjournment of the Annual Meeting of the Association during which the Delegate is elected. A Section Delegate may serve no more than two consecutive terms or more than a total of six years in this capacity for the Section. The terms of the Section Delegates shall be staggered.

## Section 3. Vacancies.

If a Section Delegate fails to attend two successive regular meetings of the Council and/or two successive meetings of the House of Delegates, the position shall be automatically vacated unless the Delegate is excused for good cause by action of the Executive Committee. In the event of the absence or inability of a Section Delegate to serve, the Council shall appoint an individual to serve the remainder of the vacated term.

## Section 4. Voting.

Section Delegates are entitled to attend meetings of the Council in open and closed session and to have the privileges of the floor at such meetings. Section Delegates are not entitled to vote at meetings of the Council.

# ARTICLE VIII
## NOMINATING COMMITTEE

## Section 1. Membership, Terms, and Qualifications.

The Nominating Committee shall consist of eight members. Six members of the Committee shall be appointed by the Chairperson of the Section from the Section membership and shall serve one three-year term. The terms of one-third of the appointed members shall expire every year. Each Immediate Past Chairperson of the Section shall serve a two-year term on the Nominating Committee and shall act as Chairperson of the Nominating Committee in the second year of his or her term on the Committee. Membership on the Committee should include legal educators, practitioners and members of the judiciary. Terms commence at the adjournment of the Annual Meeting of the Association.

## Section 2. Nominations for General Elections.

The Consultant shall solicit nominations from the membership of the Section to fill vacancies on the Council. One or more candidates may be nominated by the Nominating Committee for each position to be filled by election as provided in these Bylaws. The Nominating Committee shall report the identity of each nominee and shall include a brief statement of his or her activities in the Section, in legal education, and in the legal profession. The Nominating Committee shall submit its report to Section members no later than May 1. The report may be submitted to Section members by written notice, by e-mail or other digital communication, and/or publication on the Section website, as the Council may direct.

## Section 3. Nominations for Filling Vacancies.

If there is a vacancy in a member-at-large position on the Council, the Nominating Committee shall provide the Council with one or more names of persons to serve the remainder of the unexpired term (see Article IV, Section 7).

# ARTICLE IX
## ELECTION OF OFFICERS, COUNCIL MEMBERS,
## LAW STUDENT DIVISION REPRESENTATIVE, AND SECTION DELEGATES

## Section 1. Election.

Elections shall be held at the Annual Meeting of the Association. The seats of members-at-large shall be designated as legal educators, other legal professionals or public seats so as to cause the composition of the Council to comply with the provisions of Article IV, Section 3, and nominees must be qualified for the seat as so designated. Elections for positions for which there is more than one nominee shall be by written ballot, and each such position shall be voted upon separately. Election shall be by majority of the votes cast. If there are more than two candidates for a single office and no one of them receives a majority of the votes cast then there shall be a second ballot between the two candidates having the greatest number of votes on the first ballot. In the case of nominees of the Nominating Committee who are unopposed, election to fill such positions may be by voice vote.

## Section 2. Petition.

One or more additional nominations may be made for any designated seat on the Council, including officers of the Council (except Chairperson, Immediate Past Chairperson, and representative of the Young Lawyers Division), by petition signed by not less than 50 members of the Section in good standing, not more than 10 of whom are residents of any one state. A person so nominated shall be called the "petitioner". The petition shall specify which nominee the petitioner is challenging and shall state that the petitioner has agreed to the nomination and meets the criteria for the position being sought. The petition shall be delivered in person or by mail to the Section Office at the Association headquarters and must be received no later than June 1. The Secretary shall thereupon confirm that such individual is eligible to serve if elected.

## Section 3. Notice.

The Chairperson shall announce the nominees for the offices of Chairperson-Elect, Vice-Chairperson, Secretary, Section Delegate, Law Student Division representative, and members-at-large of the Council. If additional nominations are made pursuant to Article X, Section 2, the Chairperson shall distribute to the membership a final notice of nominations as soon as practical but no later than July 15.

# ARTICLE X
## COMMITTEES

## Section 1. Standing Committees.

The Section shall have the following standing committees:

**(a) Accreditation Committee.**
The Accreditation Committee shall act on matters relating to the accreditation of law schools. The Accreditation Committee shall include legal educators, practitioners, members of the judiciary, and public members. No more than fifty percent of the voting members of the Committee may be persons whose current primary professional employment is as a law school dean, faculty or staff member. A person may not serve simultaneously as a member of the Accreditation Committee and as a member of the Council. Accreditation Committee members must be guided by the interest of the public and by the standards of the legal profession.

The Chairperson of the Section shall appoint the members and chairperson of the Committee. Members shall serve two-year staggered terms. The chairperson shall serve a one-year term, renewable for a second year. Members shall not serve more than three terms, except that a person serving as chairperson of the Committee may serve up to eight years on the Committee. If five or more members of the Committee would otherwise be required to leave in a single year, the Chairperson of the Section may extend for an additional year the terms of up to three members whose terms are expiring.

Public members of the Committee shall include such number of representatives of the public as to bring the Committee into compliance with applicable regulations of the United States Department of Education with respect to recognition of the Council (see Article IV, Section 3).

**(b) Standards Review Committee.**
The Standards Review Committee shall conduct an ongoing review of the Standards for Approval of Law Schools, the Interpretations of the Standards and Rules of Procedures for Approval of Law Schools, propose

amendments and revisions thereto, solicit comments and conduct public hearings on proposed Standards, Interpretations and Rules, and make recommendations to the Council.

The Chairperson of the Section shall appoint the members and the chairperson of the Committee. Members shall serve two-year staggered terms. The chairperson shall serve a one-year term, renewable for a second year. In extraordinary circumstances, the Council may authorize a third one-year term for the chairperson of the Committee. Members shall not serve more than three terms except that a person serving as chairperson of the Committee may serve up to eight years on the Committee. The Standards Review Committee shall include legal educators, practitioners and members of the judiciary and may include public members. A person may not serve simultaneously as a member of the Council and as a member of the Standards Review Committee. The Standards Review Committee is an "accreditation-related" committee.

**(c) Governance Committee.**

The Governance Committee shall be responsible for interpretation of and compliance with these Bylaws and shall serve as the Section's grievance committee. The Council shall prescribe the duties of the Governance Committee.

The Chairperson of the Section shall appoint the members of the Governance Committee, who shall serve two-year staggered terms. The chairperson of the Governance Committee shall serve a one-year term, renewable for a second year. Members shall not serve more than three terms except that a person serving as chairperson of the Committee may serve up to eight years on the Committee.

**(d) Finance Committee.**

The Finance Committee shall have responsibility for overseeing the financial affairs of the Section, including the preparation of budgets and reporting to the Council on budget and Section financial matters. The Chairperson of the Section shall appoint its members, who shall serve two-year staggered terms. The chairperson of the Committee shall serve a one-year term, renewable for a second year. Members of the Finance Committee shall not serve more than three terms except that a person serving as chairperson of the Committee may serve up to eight years on the Committee. The development of the Section's accreditation budget is an "accreditation-related" activity.

# Section 2. Regular Committees.

In addition to Standing Committees, the Section may have such regular committees as created from time to time by the Council. The Chairperson of the Section shall appoint the members of the regular committees for two-year terms. Members may serve up to three terms on any regular committee. The Chairperson of the Section shall appoint the chairpersons of regular committees for one-year terms. The chairperson may serve a second term as chair of any regular committee.

# Section 3. Special Committees.

The Chairperson of the Section may create such special committees and task forces to serve the purposes of the Section. The term of members of a Special Committee shall be one year unless reappointed.

# ARTICLE XI
## REPRESENTATION OF ASSOCIATION POSITION

To be deemed an action by the American Bar Association, action by the Section must be approved by the House of Delegates or by the Board of Governors before the action can be effective. On request of the Council or the Section, the Chairperson or Section Delegate shall report any resolution or recommendation adopted or action taken by the Council or the members of the Section to the House of Delegates or to the Board of Governors for action by the Association. This Article shall not apply to the adoption and revision of Standards, Interpretations of the Standards and the Rules of Procedure for Approval of Law Schools or to any actions or decisions related to the Accreditation Project.

# ARTICLE XII
## AMENDMENTS

## Section 1. Method of Proposing an Amendment.

The Council may propose amendments to these Bylaws. Any member of the Section may propose an amendment to these Bylaws by submitting the proposed amendment and a statement of its purposes to the Secretary, who shall transmit the proposed amendment and the statement of purposes to the Governance Committee. The Governance Committee shall report its recommendation on the proposed amendment to the Council which shall consider the recommendation at the next Council meeting held 30 or more days thereafter. By majority vote the Council shall submit to the Section at the annual meeting such proposed amendments of the Bylaws, as it deems appropriate. Notice of proposed amendments shall be given to Section members by written notice, by e-mail or other means of electronic communication and/or publication on the Section website, as the Council may direct. If any amendment proposed by a member as described above is not reported favorably by the Council of the Section, the amendment shall be submitted to the Section membership at the following annual meeting if a petition signed by 100 or more Section members requesting its submission is filed with the Secretary no later than June 1 following the unfavorable report by the Council.

## Section 2. Adoption of an Amendment.

The Section may consider only those amendments to the Bylaws that are submitted to it by the procedures described in Article XII, Section 1. Such proposed amendments shall be submitted to a vote of the members of the Section present at the annual meeting of the Section and may be adopted by majority affirmative vote of the members of the Section present and voting. Amendments so adopted shall become effective upon approval of the Board of Governors.

# APPENDIX 1:
# Statement on Academic Freedom and Tenure*

The purpose of this statement is to promote public understanding and support of academic freedom and tenure and agreement upon procedures to assure them in colleges and universities. Institutions of higher education are conducted for the common good and not to further the interest of either the individual teacher or the institution as a whole. The common good depends upon the free search for truth and its free exposition.

Academic freedom is essential to these purposes and applies to both teaching and research. Freedom in research is fundamental to the advancement of truth. Academic freedom in its teaching aspect is fundamental for the protection of the rights of the teacher in teaching and of the student to freedom in learning. It carries with it duties correlative with rights.

Tenure is a means to certain ends; specifically: (1) freedom of teaching and research and of extramural activities, and (2) a sufficient degree of economic security to make the profession attractive to men and women of ability. Freedom and economic security, hence, tenure, are indispensable to the success of an institution in fulfilling its obligations to its students and to society.

## Academic Freedom

1. Teachers[1] are entitled to full freedom in research and in the publication of the results, subject to the adequate performance of their other academic duties; but research for pecuniary return should be based upon an understanding with the authorities of the institution.

2. Teachers are entitled to freedom in the classroom in discussing their subject, but they should be careful not to introduce into their teaching controversial matter which has no relation to their subject. Limitations of academic freedom because of religious or other aims of the institution should be clearly stated in writing at the time of the appointment.

3. College or university teachers are citizens, members of a learned profession, and officers of an educational institution. When they speak or write as a citizen, they should be free from institutional

---

* The text of the statement follows the "1940 Statement of Principles on Academic Freedom and Tenure" of the American Association of University Professors.

1. The word *teacher* as used in this document is understood to include the investigator who is attached to an academic institution without teaching duties.

censorship or discipline, but their special position in the community imposes special obligations. As scholars and educational officers, they should remember that the public may judge their profession and their institution by their utterances. Hence, they should at all times be accurate, should exercise appropriate restraint, should show respect for the opinions of others, and should make every effort to indicate that they are not speaking for the institution.

## Academic Tenure

After the expiration of a probationary period, teachers or investigators should have permanent or continuous tenure, and their service should be terminated only for adequate cause, except in the case of retirement for age, or under extraordinary circumstances because of financial exigencies.

In the interpretation of this principle it is understood that the following represents acceptable academic practice:

1.  The precise terms and conditions of every appointment should be stated in writing and be in the possession of both institution and teacher before the appointment is consummated.

2.  Beginning with appointment to the rank of full-time instructor or a higher rank, the probationary period should not exceed seven years, including within this period full-time service in all institutions of higher education; but subject to the proviso that when, after a term of probationary service of more than three years in one or more institutions, a teacher is called to another institution, it may be agreed in writing that the new appointment is for a probationary period of not more than four years, even though thereby the person's total probationary period in the academic profession is extended beyond the normal maximum of seven years. Notice should be given at least one year prior to the expiration of the probationary period if the teacher is not to be continued in service after the expiration of that period.

3.  During the probationary period a teacher should have the academic freedom that all other members of the faculty have.

4.  Termination for cause of a continuous appointment, or the dismissal for cause of a teacher previous to the expiration of a term appointment, should, if possible, be considered by both a faculty committee and the governing board of the institution. In all cases where the facts are in dispute, the accused teacher should be informed before the hearing in writing of the charges and should have the opportunity to be heard in his or her own defense by all bodies that pass judgment upon the case. The teacher should be permitted to be accompanied by an adviser of his or her own choosing who may act as counsel. There should be a full stenographic record of the hearing available to the parties concerned. In the hearing of charges of incompetence the testimony should include that of teachers and other scholars, either from the teacher's own or from other institutions. Teachers on continuous appointment who are dismissed for reasons not involving moral turpitude should receive their salaries for at least a year from the date of notification of dismissal whether or not they are continued in their duties at the institution.

5.  Termination of a continuous appointment because of financial exigency should be demonstrably bona fide.

# APPENDIX 2:
# LSAC Cautionary Policies Concerning LSAT Scores

These Cautionary Policies are intended for those who set policy and criteria for law school admission, interpret LSAT scores and Credential Assembly Service Law School Reports, and use other LSAC services. The Policies are intended to inform the use of these services by law schools, and to promote wise and equitable treatment of all applicants through their proper use.

## I. The Law School Admission Test

Because LSATs are administered under controlled conditions and each test form requires the same or equivalent tasks of everyone, LSAT scores provide a standard measure of an applicant's proficiency in the well-defined set of skills included in the test. Comparison of a law school's applicants both with other applicants to the same school and with all applicants who have LSAT scores thus becomes feasible. However, while LSAT scores serve a useful purpose in the admission process, they do not measure, nor are they intended to measure, all the elements important to success at individual institutions. LSAT scores must be examined in relation to the total range of information available about a prospective law student. It is in this context that the following restraints on LSAT score use are urged:

### Do not use the LSAT score as a sole criterion for admission.

The LSAT should be used as only one of several criteria for evaluation and should not be given undue weight solely because its use is convenient. Those who set admission policies and criteria should always keep in mind the fact that the LSAT does not measure every discipline-related skill necessary for academic work, nor does it measure other factors important to academic success.

### Evaluate the predictive utility of the LSAT at your school.

In order to assist in assuring that there is a demonstrated relationship between quantitative data used in the selection process and actual performance in your law school, such data should be evaluated regularly so that your school can use LSAT scores and other information more effectively. For this purpose, the Law School Admission Council annually offers to conduct correlation studies for member schools at no charge. Only by checking the relationship between LSAT scores, undergraduate grade-point average, and law school grades

will schools be fully informed about how admission data, including test scores, can be used most effectively by that school.

## Do not use LSAT scores without an understanding of the limitations of such tests.

Admission officers and members of admission committees should be knowledgeable about tests and test data and should recognize test limitations. Such limitations are set forth in the *Law School Admission Reference Manual* and are regularly discussed at workshops and conferences sponsored by the Law School Admission Council.

## Avoid improper use of cut-off scores.

Cut-off LSAT scores (those below which no applicants will be considered) are strongly discouraged. Such boundaries should be used only if the choice of a particular cut-off is based on a carefully considered and formulated rationale that is supported by empirical data, for example, one based on clear evidence that those scoring below the cut-off have substantial difficulty doing satisfactory law school work. Note that the establishment of a cut-off score should include consideration of the standard error of measurement in order to minimize distinctions based on score differences not sufficiently substantial to be reliable. Significantly, cut-off scores may have a greater adverse impact upon applicants from minority groups than upon the general applicant population. Normally, an applicant's LSAT score should be combined with the undergraduate grade-point average before any determination is made of the applicant's probability of success in law school.

## Do not place excessive significance on score differences.

Scores should be viewed as approximate indicators rather than exact measures of an applicant's abilities. Distinctions on the basis of LSAT scores should be made among applicants only when those score differences are reliable.

## Carefully evaluate LSAT scores earned under accommodated or nonstandard conditions.

LSAC has no data to demonstrate that scores earned under accommodated conditions have the same meaning as scores earned under standard conditions. Because the LSAT has not been validated in its various accommodated forms, accommodated tests are identified as nonstandard and an individual's scores from accommodated tests are not averaged with scores from tests taken under standard conditions. The fact that accommodations were granted for the LSAT should not be dispositive evidence that accommodations should be granted once a test taker becomes a student. The accommodations needed for a one-day, multiple choice test may be different from those needed for law school coursework and examinations.

## Avoid encouraging use of the LSAT for other than admission functions.

The LSAT was designed to serve admission functions only. It has not been validated for any other purpose. LSAT performance is subject to misunderstanding and misuse in other contexts, as in the making of an employment decision about an individual who has completed most or all law school work. These considerations suggest that LSAT scores should not be included on a law school transcript, nor routinely supplied to inquiring employers. Without the student's specific authorization, the Buckley Amendment would preclude the latter, in any event.

# APPENDIX 3:
# Guidance on Interpretation 301-6

In determining compliance with Interpretation 301-6(A)(2) [first-time bar passage] of the 2013-2014 Standards schools should collect the data necessary to complete the charts below. These data are required to be submitted for the most recently completed calendar year in the school's Annual Questionnaire and for the five most recently completed calendar years for schools undergoing a site visit and completing a Site Evaluation Questionnaire.

**Table 1**

**First-Time Bar Passage – Back-up Data**

| A | B | C | D | E | F |
|---|---|---|---|---|---|
| Calendar Year | Total Graduates in Calendar Year | Number of Graduates from Calendar Year NOT Taking Bar Exam | Graduates from Previous Years Taking Bar for FIRST Time in Calendar Year | Total First Time Takers Calendar Year (B minus C plus D) | 70% of Total First Time Takers |
| 2009 | | | | | |
| 2010 | | | | | |
| 2011 | | | | | |
| 2012 | | | | | |
| 2013 | | | | | |

**C** = e.g., August or December graduates who were unable to take the bar in their graduation year and May graduates who elected not to sit in their year of graduation.

**D** = e.g., Graduates from the previous year who sat for the bar for the FIRST time in the calendar year.

**E =**  Subtract C (non-takers) from B (graduates in calendar year) and add D (first-time takers from previous years). (B minus C plus D = E)

**F =**  Multiply E (total FIRST time takers in calendar year) x 70% = F (70% is the minimum number of first-time takers the school must report on for each calendar year.)

The school must account for a ***minimum*** of 70% of first-time takers in ***each*** of the five most recently completed calendar years. It does this by starting with the jurisdiction in which the largest number of its graduates sit for the bar for the ***first*** time and proceeding in descending order of frequency until a ***minimum*** of 70% of first-time takers in ***each*** calendar year is accounted for.

**Table 2**

**First-Time Bar Passage Reporting**

| A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|
| Calendar Year | Graduates Taking Bar FIRST Time in Calendar Year* | Percentage of School's FIRST Time Takers Reported for Calendar Year** | List Jurisdictions Reported | ABA First Time Weighted Average Pass Rate for Calendar Year | School's Weighted Average Pass Rate for Calendar Year | Difference in Weighted Averages (School minus ABA) |
| 2009 | | | | | | |
| 2010 | | | | | | |
| 2011 | | | | | | |
| 2012 | | | | | | |
| 2013 | | | | | | |

\* From Column E, Table 1

\*\* Must be at least 70% of Column B, Table 2

## Ultimate Bar Passage

The following two charts are for reporting **ultimate** bar pass rate under I 301-6 A.1(a) and (b), and **not** for first-time data collected under 301-6 A.(2). While all schools must report first-time bar pass data, schools may demonstrate compliance with 301-6 using either ultimate or first-time data.

**Table 3**

**Ultimate Bar Passage – Back-up Data**

| A | B | C | D | E | F |
|---|---|---|---|---|---|
| Graduation Year | Number of Students in Graduation Year | Number of Non-Persisters* | Number Never Attempting a Bar Examination | Net Bar Exam Takers (B minus C and D = E) | 70% of Net Takers |
| 2009 | | | | | |
| 2010 | | | | | |
| 2011 | | | | | |
| 2012 | | | | | |
| 2013 | | | | | |

• A non-persister is a graduate who took a bar examination once and failed but did not take a bar examination again in **any** jurisdiction over the next two examination opportunities.

**Table 4**

**Ultimate Bar Passage Reporting**

| A | B | C | D |
|---|---|---|---|
| Graduation Year | Number in Calculation for Graduation Year* | Passed Some Bar Examination | Never Passed a Bar Examination or Missing Information |
| 2009 | | | |
| 2010 | | | |
| 2011 | | | |
| 2012 | | | |
| 2013 | | | |
| | | | |
| 5-Year Total | | # (%) | # (%) |

\* See column F above in Table 3. Must equal or exceed column F in Table 3 for *each* graduation year.

## The Application of Interpretation 301-6 for Provisional Schools Seeking Full Approval

*(From the Commentary approved by the Council of the Section of Legal Education and Admissions to the Bar, February 2008.)*

The application of Interpretation 301-6 to provisionally approved schools seeking full approval tracks that of fully-approved schools: the cohort size (70 percent) is the same, the first-time pass rate (not more than 15 points below . . .) is the same, and the ultimate pass rate (at least 75 percent . . .) is the same. The one area where there is some difference in application is with respect to the time periods covered when a provisional school applies for full approval. Thus, when a provisionally approved school applies for full approval, the application of 301-6 necessarily takes into account the fewer number of bar exam sittings these schools have in order to demonstrate full compliance with the bar passage portion of Standard 301(a).

Interpretation 301-6 sets out three different ways for a school to demonstrate compliance with the bar passage portion of Standard 301(a). In applying for full approval, a provisionally approved school may demonstrate compliance under *any* of the three tests. As applied to provisionally approved schools seeking full approval, the three tests would work as follows:

1) That for students who graduated from the law school *since provisional approval was received*, at least 75 percent of these graduates who sat for a bar examination have passed a bar examination prior to the time in which the school is considered by the Council for full approval. (301-6(A)(1)(a)).

OR

2) That in each of at least *two* calendar years since the school received provisional approval, at least 75 percent of the graduates who took a bar examination in those same years have passed a bar examination prior to the time in which the school is considered by the Council for full approval. (301-6(A)(1)(b)).

In demonstrating compliance under either of the above requirements, the school must report bar passage results from as many jurisdictions as necessary to account for at least 70% of its graduates each year, starting with the jurisdiction in which the highest number of graduates took the bar exam and proceeding in descending order of frequency. Non-persisters (i.e., those who took a bar examination once and failed but did not take the bar examination again in *any* jurisdiction over the next two examination opportunities) must be identified as such but are not factored in when determining compliance under either of the two tests above.

OR

3)  In each of at least *two* calendar years since the school received provisional approval, the school's annual *first-time* bar passage rate in the jurisdictions reported by the school is no more than 15 points below the average first-time bar passage rates for graduates of ABA-approved law schools taking the bar examination in these same jurisdictions. (301-6(A)(2)).

    To demonstrate compliance under this test, the school must report first-time bar passage data from as many jurisdictions as necessary to account for at least 70 percent of its graduates each year, starting with the jurisdiction in which the highest number of graduates took the bar exam and proceeding in descending order of frequency. When more than one jurisdiction is reported, the weighted average of the results in each of the reported jurisdictions shall be used to determine compliance. (The application of weighted average is discussed elsewhere in the Commentary.)

Under all of the above tests, only those who graduated *after* the school received provisional approval are counted. Thus, if a school received provisional approval in February 2008, only those who graduated and took a bar exam after that date would be tracked and reported by the school. In determining "calendar" years, if the first opportunity for a school's graduates to take the bar from a provisionally approved school is in July, then that would count as the first calendar year. Subsequent calendar years would, of course, include the entire January – December period. Note that schools that receive full approval undergo a site visit three years after this approval and at that point they must meet the five-year look-back as set out in 301-6.