UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA
*ex rel.* PAULA C. LORONA, and
REID POTTER,

Plaintiff,

Case No. 3:15-cv-959-J-34JRK

v.

INFILAW CORPORATION, ARIZONA SUMMIT LAW SCHOOL, LLC, FLORIDA COASTAL SCHOOL OF LAW, CHARLOTTE SCHOOL OF LAW, and BARBRI, INC.,

Defendants.
________________________________________/

**DEFENDANT BARBRI, INC.'S DISPOSITIVE MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**

Defendant BARBRI, Inc. ("BARBRI"), by and through undersigned counsel, moves to dismiss Count III of the Third Amended Complaint (doc. 36) pursuant to Rules 8, 9(b), and 12(b)(6) of the Federal Rules of Civil Procedure and Local Rule 3.01 for failure to state a claim upon which relief can be granted. Count III of the Third Amended Complaint is the only Count in which BARBRI is named. In support thereof, Defendant BARBRI offers the following memorandum.

## I. INTRODUCTION

Plaintiffs are former students at, and employees of, Arizona Summit Law School ("ASLS"), an institution that is owned and operated by Infilaw Corporation ("Infilaw") along with Charlotte School of Law ("CSL"), and Florida Coastal School of Law ("FCSL" and, collectively with ASLS and CSL, "Defendant Institutions"). (doc. 36, ¶¶ 2-7). The essence of

Plaintiffs' Third Amended Complaint, as it relates to BARBRI, is that Infilaw, the Defendant Institutions, and BARBRI conspired to engage in a scheme to circumvent the requirement under Title IV of the Higher Education Act of 1965, as amended ("Title IV"), and implementing regulations that an institution derive more than ten percent of its revenue from sources other than the programs authorized under Title IV ("Title IV Programs"), also known as the "90/10 Rule." 20 U.S.C. § 1094(a)(24). Plaintiffs allege that this conspiracy was a violation of the federal False Claims Act, and specifically 31 U.S.C. § 3729(a)(1)(C).

The Third Amended Complaint contains additional allegations related to misrepresentations by the Defendant Institutions (doc. 36, ¶¶ 127-197) and circumvention of American Bar Association accreditation requirements (doc. 36, ¶¶ 198-205), but BARBRI is not mentioned in any of these allegations. Despite the Third Amended Complaint only mentioning BARBRI in one portion of the allegations related to violations of the 90/10 Rule (doc. 36, ¶¶ 76-126), Plaintiffs inexplicably incorporate ¶¶ 22-205 by reference into Count III, the only Count brought against BARBRI.

## II. ARGUMENT

### A. Standard on Motion to Dismiss

Rule 12(b)(6) of the *Federal Rules of Civil Procedure* ("FRCP") provides for dismissal of an action for failure to state a claim upon which relief may be granted. In determining whether to grant a motion to dismiss, the court must construe the allegations in the complaint in a light most favorable to the plaintiff. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)*; Cole v. United States,* 755 F.2d 873, 878 (11th Cir. 1985). However, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To be considered plausible on its face, the complaint must plead sufficient

factual content to allow "the court to draw the reasonable inference that the defense is liable for the alleged misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The Supreme Court has further explained that:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

*Twombly,* 550 U.S. at 555 (internal citations omitted). In other words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678.

As Count III alleges a violation of the False Claims Act, Plaintiffs must meet the pleading standards set forth in both FRCP 8 and 9(b). *See Urquilla-Diaz v. Kaplan Univ.*, 780 F.3d 1039, 1051 (11th Cir. 2015) ("*Urquilla-Diaz*"). Because Count III of Plaintiffs' Third Amended Complaint does not comply with FRCP 8 or the heightened pleading standard in FRCP 9(b), and fails to state a claim on which relief may be granted pursuant to FRCP 12(b)(6), Count III should be dismissed with prejudice as to BARBRI.

**B. Count III Fails to Comply with FRCP 8(a)(2).**

FRCP 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." However, Plaintiffs continue to resort to a "shotgun" manner of pleading, despite prior admonishment from this Court for precisely this defect. (doc. 35). Count III incorporates by reference ¶¶ 22-205 of the Third Amended Complaint. However, only ¶¶ 76-126 contain substantive allegations against BARBRI, and Count III does not explain how BARBRI conspired to commit any wrongdoing related to the

remaining allegations.[1] In addition to incorporating by reference allegations that never mention BARBRI, Count III contains a substantive allegation that the Defendants, including BARBRI, conspired to "defraud the DOE by accepting students who otherwise could not attend law school; by submitting falsified revenue data to feign compliance with the 90/10 Rule; and by fabricating bar passage and career prospect statistics." (doc. 36, ¶ 232). While a charitable reading of the allegations against BARBRI could be read to include a conspiracy related to "submitting falsified revenue data to feign compliance with the 90/10 Rule," BARBRI is not mentioned once in any allegations related to the acceptance of unqualified students or fabricated bar passage and career prospect statistics (doc. 36, ¶¶ 127-205). Plaintiffs make the same mistake in ¶ 233 when they allege that Infilaw and the Defendant Institutions conspired with BARBRI to manipulate 90/10 *and bar passage rates*.

The failure of Plaintiffs to comply with FRCP 8(a)(2) and "state their claims intelligibly so as to inform the defendants of the legal claims being asserted" places BARBRI and this Court in the untenable position of trying to determine which of the allegations in the Third Amended Complaint are truly applicable to the conspiracy claim brought against BARBRI. *Mann v. Boatright*, 477 F.3d 1140, 1148 (10th Cir. 2007); *see also United States ex rel. Brooks v. Stevens-Henager College*, 305 F.Supp.3d 1279, 1307-08 (D. Utah 2018) ("*Brooks*") ("Relators do not distinguish between individual defendants in their claims for relief, nor do they state separate claims for relief based on the distinct sets of false statements."). This task is even more difficult given Plaintiffs' statement later in ¶ 232 that the list of acts in which the Defendants,

[1] BARBRI is mentioned in the portion of the Third Amended Complaint describing the parties (¶ 12), describing the employment of Plaintiff Potter (¶ 29, which includes similar allegations to those in ¶¶ 76-126), and alleging that Infilaw and the Defendant Institutions created an internal bar exam preparation program to compete with BARBRI, but not alleging any acts by BARBRI (¶¶ 61, 64, 71). BARBRI is not mentioned in any other substantive allegations, despite Plaintiffs incorporating other allegations into Count III by reference.

including BARBRI, conspired "is without limitation" and that Defendants "committed other overt acts in furtherance of the conspiracy." As noted, this Court has already admonished Plaintiffs *sua sponte* for the shotgun nature of their pleading. (doc. 35) (striking Plaintiffs' Second Amended Complaint and noting that the Court had already struck Plaintiffs' original Complaint). The Eleventh Circuit has required district courts which have dismissed complaints on shotgun pleadings grounds to *sua sponte* allow litigants one chance to remedy the pleading deficiencies, but has noted that implicit in the repleading order is the notion that the court will strike the pleading or dismiss the case if a plaintiff files a second pleading with the same deficiency. *Vibe Micro, Inc. v. Shabanets*, 878 F. 3d 1291, 1295 (11th Cir. 2018) (interpreting *Byrne v. Nezhat*, 261 F.3d 1075 (11th Cir. 2001) and *Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541 (11th Cir. 2002)). The Eleventh Circuit specifically held:

> When a litigant filed a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must sua sponte give him one chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds. In the repleading order, the district court should explain how the offending pleading violates the shotgun pleading rule so that the party may properly avoid future shotgun pleadings. Although the *Byrne* line of cases requires one sua sponte chance to amend a shotgun pleading, *Daewoo* operates in the background. After that one *Byrne* opportunity to replead comes and goes, *Daewoo*'s rule operates to allow the district court to dismiss with prejudice if the party has still neither filed a compliant pleading nor asked for leave to amend. This holding "ensures that the issues get defined at the earliest stages of litigation," while also weighing the important concerns upon which *Daewoo* rested, including judicial efficiency, finality, and limiting lengthy delays or abuse of the courts.

*Id*. at 1296 (internal citations omitted).

The shotgun nature of the Third Amended Complaint does not comply with FRCP 8(a)(2) because it fails to specify which substantive allegations incorporated by cross-reference are

applicable to BARBRI.[2] Count III also fails to comply with FRCP 8(a)(2) because it states that BARBRI conspired with other Defendants with regard to schemes alleged in portions of the Third Amended Complaint that never reference BARBRI. This Court has already stricken two versions of the Plaintiffs' complaint as impermissible shotgun pleadings, but the Third Amended Complaint still suffers from this defect. Therefore, BARBRI respectfully requests that the Court dismiss Count III with prejudice as to BARBRI for failure to meet the pleading requirements set forth in FRCP 8 and the Court's *sua sponte* order.

### C. Count III Fails to State a Claim Against BARBRI under 31 U.S.C. § 3729(a)(1)(C).

To state a False Claims Act conspiracy claim pursuant to 31 U.S.C. § 3729(a)(1)(C), a relator must establish "(1) that the defendant conspired with at least one person to get a false or fraudulent claim paid by the Government; and (2) that at least one of the conspirators performed an overt act to get a false or fraudulent claim paid." *United States ex rel. Chase v. LifePath Hospice, Inc.*, No. 8:10-cv-1061-T-30TGW, 2016 WL 5239863, at *8 (M.D. Fla. Sept. 22, 2016) ("*Chase*"). Furthermore, a conspiracy in the context of a False Claims Act claim requires a meeting of the minds to defraud the government. *Id*. Complaints that allege violations of the False Claims Act must meet the pleading standard set forth in FRCP 9(b). *Urquilla-Diaz* at 1051. To comply with this heightened pleading standard, relators must allege "facts as to time, place, and substance of the defendant's alleged fraud" and "the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them. *Id*. (citations omitted). This includes an obligation to plead, with particularity, the actual presentment of a claim to the

[2] With respect to those portions of the Third Amended Complaint incorporated by reference into Count III that never mention BARBRI, Plaintiffs also fail to meet the higher pleading standard under FRCP 9(b) as they state no facts related to BARBRI, whether with particularity or otherwise.

government. *Id*. at 1052. Conspiracy claims brought under the False Claims Act must also meet the heightened pleading standard in FRCP 9(b) and courts have held that "a failure to adequately allege the existence of a false claim is fatal to a conspiracy claim." *Chase* at *9.

The Third Amended Complaint fails to plead the elements of a False Claims Act conspiracy claim against BARBRI with the specificity required by FRCP 9(b) and the Court should therefore dismiss this Count III as to BARBRI.

*1. Background on the 90/10 Rule.*

The Third Amended Complaint provides a very brief description of the 90/10 Rule, (doc. 36, ¶¶ 37-38), but does not discuss how institutions calculate the percentage of total revenue attributable to Title IV funds ("90/10 Rate"). As brief background, institutions report a 90/10 Rate on financial statements that are submitted annually to the U.S. Department of Education. 34 C.F.R. § 668.23(d). These financial statements must be audited by independent auditors prior to submission. *Id*. The financial statements must include a footnote disclosing the 90/10 Rate calculation including the numerator, denominator, and individual revenue amounts. *Id*. at (d)(3). To comply with the 90/10 Rule, an institution must report a 90/10 Rate for a given fiscal year reflecting that at least ten percent of its revenue was derived from sources other than Title IV funds. 34 C.F.R. § 668.28(a)(1).

Even a cursory review of 34 C.F.R. 668 Subpart B, Appendix C, which sets forth the mechanics of the 90/10 Rate calculation, demonstrates that there are many variables that must be taken into account to determine what revenue factors into the equation and how that revenue is allocated between the numerator and denominator. For example, only revenue generated from certain programs and activities is included in the 90/10 Rate calculation and certain funds are specifically excluded from revenues. 34 C.F.R. § 668.28(a)(3) and (a)(7). Institutions report a

90/10 Rate on an aggregate student basis, but Title IV and non-Title IV revenue are determined and summed on a student by student basis. 34 C.F.R. 668 Subpart B, Appendix C. The ultimate 90/10 Rate calculation consists of a numerator (Adjusted Student Title IV Revenue) and a denominator (Adjusted Student Title IV Revenue plus Student Non-Title IV Revenue plus Total Revenue from Other Sources). *Id.*

Plaintiffs fail to allege how the 90/10 Rate or Rates reported by any Defendant Institution did not comply with 34 C.F.R. § 668.28 or 34 C.F.R. 668 Subpart B, Appendix C.

*2. Plaintiffs fail to allege the existence of a false claim.*

The Third Amended Complaint contains several allegations regarding various efforts by Infilaw and the Defendant Institutions to manipulate or falsify their 90/10 Rates, only one of which involves BARBRI. The Third Amended Complaint sets forth the publicly available 90/10 Rates for the Defendant Institutions in the 2009-10, 2012-13, and 2013-14 fiscal years. (doc. 36, ¶¶ 40-42). Notably, none of the rates listed for any of the Defendant Institutions is above 90%. Nowhere does the Third Amended Complaint allege that, but for the alleged attempts to manipulate the 90/10 Rates, any Defendant Institutions would have had a 90/10 Rate above 90%. More specifically, the Third Amended Complaint fails to allege that the arrangement between BARBRI, Infilaw, and the Defendant Institutions discussed in ¶¶ 76-126 would have caused any of the Defendant Institutions to have a failing 90/10 Rate. The most the Third Amended Complaint can muster is to state that, prior to the creation of the internal bar preparation program, the Defendant Institutions "were in danger of violating the 90/10 Rule." (doc. 36, ¶ 89).

Even if one of the Defendant Institutions had reported a 90/10 Rate above 90% for a given fiscal year, it would have remained eligible to participate in the Title IV Programs on a

provisional basis for two fiscal years following the fiscal year in which it exceeded 90%. 20 U.S.C. § 1094(d)(2)(B); 34 C.F.R. § 668.28(c)(2). A Defendant Institution would only lose eligibility to participate in the Title IV Programs if it failed to comply with the 90/10 Rule for two consecutive fiscal years. 20 U.S.C. § 1094(d)(2)(A); 34 C.F.R. § 668.28(c)(1).

As noted above, "a failure to adequately allege the existence of a false claim is fatal to a conspiracy claim." *Chase* at *9. The only "claims" that the Third Amended Complaint alleges were presented to the government were the Program Participation Agreements ("PPAs") whereby the Defendant Institutions agree to comply with Title IV Program rules and regulations. (doc. 36, ¶¶ 30-36). With respect to the allegations of 90/10 noncompliance, which are the only allegations that mention BARBRI, the Third Amended Complaint alleges that the PPAs were falsely certified because the Defendant Institutions "failed to comply with and fraudulently circumvented the 90/10 Rule." (doc. 36, ¶ 210). However, without having alleged that any Defendant Institution would have reported a 90/10 Rate above 90%, let alone a 90/10 Rate above 90% for two consecutive fiscal years, Plaintiffs failed to allege facts supporting their theory that the PPAs were falsely certified.

Courts that have evaluated similar False Claims Act claims premised on manipulation of 90/10 Rates have held that relators must allege with particularity that an institution received more than 90% of its revenues from the Title IV Programs or received less than 10% of its revenue from non-Title IV Program sources. *Urquilla-Diaz* at 1056. In the *Urquilla-Diaz* case, the relator alleged that an institution was attempting to manipulate its 90/10 Rate by creating a scholarship program for employees that came from Title IV Program revenue but was treated as cash payments from students. *Id*. In dismissing this portion of the relator's claim, the Eleventh Circuit held that a general allegation of 90/10 manipulation "does not make it plausible (as

opposed to merely possible) that the school violated the 90/10 rule" and added that the relator's allegations "were merely consistent with Kaplan having violated this rule, but that is not enough to state a claim under the False Claims Act." *Id*.

Similarly, a District Court in Utah recently addressed allegations that an institution used a "scheme" involving textbooks to hide 90/10 Rule violations. *Brooks* at 1312. In dismissing the claim based on the alleged scheme, the *Brooks* court held that "Relators have not alleged with particularity whether this scheme actually resulted in 90/10 Rule violations" and "there are no allegations concerning whether the Colleges actually derived less than ten percent of their revenue from sources other than Title IV *for two consecutive years* because of the 'scheme.'" *Id*. (emphasis in original). The *Brooks* court also noted that relators' claims were undermined when, as here, the complaint alleges that the institutions derived less than 90% of their revenue from the Title IV Programs. *Id*. at n.23 ("Problematically, Relators do not explain what these percentages would be *but for* the textbook 'scheme.'") (emphasis in original); (doc. 36, ¶¶ 40-42).

To state a False Claims Act claim related to a violation of the 90/10 Rule, the Plaintiffs must allege with particularity that, absent the actions taken by Defendants, one or more of the Defendant Institutions would have received more than 90% of its total revenues from the Title IV Programs for two consecutive fiscal years. The Third Amended Complaint contains no such allegations and therefore fails to state a claim upon which relief may be granted. *Chase* at *9.

*3. Plaintiffs fail to adequately allege the extent of alleged 90/10 violations.*

Even if Plaintiffs had alleged that one or more of the Defendant Institutions would have received more than 90% of its total revenues from the Title IV Programs absent the alleged manipulation of 90/10 Rates, the Third Amended Complaint does not allege with particularity

that the arrangement between BARBRI, Infilaw, and the Defendant Institutions caused a Defendant Institution to have a failing 90/10 Rate, let alone a failing 90/10 Rate for two consecutive years. The portion of the Third Amended Complaint dedicated to potential 90/10 violations lists three ways in which Infilaw and the Defendant Institutions allegedly manipulated the 90/10 Rates: an institutional loan program, the implementation of the MyBar bar exam preparation program, and a check exchange arrangement with BARBRI.

The Third Amended Complaint fails to allege that the check exchange arrangement with BARBRI "moved the needle" on any Defendant Institution's 90/10 Rate such that it reported less than 90% of its total revenue from the Title IV Programs in a particular fiscal year when it would not have otherwise been able to do so.[3] To adequately plead such facts, Plaintiffs would have had to allege with particularity: 1) the extent to which each alleged 90/10 manipulation scheme altered a 90/10 Rate (including the dollar amount associated with each scheme and how it affected total revenue, Title IV Program revenue, and non-Title IV Program revenue), 2) the extent to which the 90/10 Rate of each individual Defendant Institution was affected,[4] and 3) the fiscal year in which the effect occurred. Plaintiffs failed to plead facts with particularity as to any of these three data points.

The only dollar amount mentioned in the Third Amended Complaint associated with the check exchange arrangement with BARBRI is $184,000, some portion of which Plaintiffs allege was reported as non-Title IV income by ASLS for the 2012 fiscal year. (doc. 36, ¶ 110). The

[3] Nor does the Third Amended Complaint allege whether or to what extent the institutional loan program or internal bar exam preparation course affected the 90/10 Rate of any Defendant Institution. Plaintiffs thus failed to plead with particularity what effect each alleged scheme had on 90/10 Rates, or even whether all alleged schemes taken together affected the 90/10 Rate of any Defendant Institution.

[4] As noted in ¶¶ 40-42 of the Third Amended Complaint, each Defendant Institution reports its own 90/10 Rate, so allegations of a scheme to manipulate a 90/10 Rate must state which Defendant Institution's 90/10 Rate was affected.

Third Amended Complaint does not include any dollar amounts attributable to the check exchange arrangement with BARBRI that relate to any Defendant Institution other than ASLS, or to any fiscal year other than 2012.[5] The Third Amended Complaint lists the 90/10 Rates and total revenues for each Defendant Institution for certain years (doc. 36, ¶¶ 40-42) but curiously does not provide the 90/10 Rates for the 2011-2012 fiscal year despite those rates being publicly available. The Plaintiffs therefore failed to allege the information needed to determine whether $184,000 would have been enough to cause ASLS to report a failing 90/10 Rate in that fiscal year. In addition, as the Third Amended Complaint only contains a dollar amount associated with the check exchange arrangement with BARBRI attributable to one fiscal year, Plaintiffs failed to plead facts sufficient to establish that ASLS would have reported failing 90/10 Rates in two consecutive fiscal years.

Even if the Third Amended Complaint had alleged that a Defendant Institution would have exceeded the 90% threshold, which it does not, it fails to plead with particularity which Defendant Institution was so affected, during which year or years, and whether the exceeding of that threshold was attributable to an alleged conspiracy involving BARBRI. Count III of the Third Amended Complaint therefore does not meet the heightened pleading standards set forth in FRCP 9(b) and should be dismissed as to BARBRI.

4. *Plaintiffs fail to adequately allege a conspiracy.*

As district courts in this circuit have held, relators must adequately allege a meeting of the minds to defraud the government in order to successfully plead a False Claims Act conspiracy claim. *Chase* at *8. The *Chase* court noted that the complaint in that case did not

---

[5] The Third Amended Complaint alleges that the check exchange arrangement also occurred in 2013, but again mentions only ASLS and fails to provide a dollar amount, making it impossible to determine what effect this arrangement could have had on ASLS's 2013 90/10 Rate.

allege a specific agreement for a benefit exchange related to patient referrals and "more important, nowhere does the complaint allege a specific agreement to engage in this exchange for the purpose of defrauding the government." *Id.* at *9. While Plaintiffs have alleged the existence of an agreement whereby BARBRI would provide Infilaw with materials for the creation of internal bar review programs at the Defendant Institutions, Plaintiffs do not allege with particularity that this agreement was for the purpose of defrauding the government.

All of the allegations in the Third Amended Complaint that bear upon the intent of BARBRI and the other Defendants in entering into the agreement are, at best, conclusory assertions that the Defendants knowingly conspired. For example:

- ¶ 96: "Barbri entered into its agreement with Infilaw in connection with the Defendant Schools' internal bar exam programs knowing full well that the purpose of the program was to inflate and falsify the Schools' non-Title IV revenue to avoid having the schools become automatically ineligible for Title IV funding."
- ¶ 97: "Relator Reid Potter was present during discussions with Barbri employees where this purpose (and its potential illegality) was discussed."
- ¶ 98: "Mary Goza was aware that inflating ASLS's non-Title IV revenue was the main purpose of the MyBar Program."
- ¶ 126: "Infilaw, the Defendant Schools, and Barbri conspired to manipulate and falsify the Defendant Schools' 90/10 Rule data by entering into an illegal price fixing and anti-competitive arrangement that limited students' ability choose between multiple competing live bar preparation programs, as well as eliminating discounts and other incentives that would typically be offered to students by Barbri and other established programs."

As the *Chase* court held, such bare legal conclusions that Defendants knowingly conspired "may very well fail to state a claim under Rule 8" and "certainly fail[] under Rule 9." *Id*. at *9. These allegations simply do not contain the detail necessary to pass muster under FRCP 9(b). For example, ¶ 97 does not identify the BARBRI employees or when such discussions took place. Similarly, ¶ 98 does not allege facts to support the notion that Mary Goza was aware that there was inflation of ASLS's non-Title IV revenue. In fact, the only allegation that provides specifics regarding Mary Goza's participation in the alleged scheme is ¶ 108 which excerpts an e-mail in which she is describing how the Defendant Institutions can "***ensure compliance with 90/10***." (emphasis in original).

Plaintiffs failed to allege facts with particularity supporting their allegation that BARBRI, Infilaw, and the Defendant Schools entered into an arrangement for the purpose of defrauding the government. Plaintiffs therefore fail to state a False Claims Act conspiracy claim against BARBRI.

5. *Plaintiffs fail to adequately allege that BARBRI had any knowledge of the 90/10 Rates of the Defendant Institutions.*

In addition to failing to allege, with particularity, a meeting of the minds between BARBRI and the other Defendants to defraud the government, Plaintiffs fail to allege that BARBRI had knowledge of, or input regarding, the 90/10 Rates of any Defendant Institution. Plaintiffs do allege that BARBRI was aware that ASLS needed to comply with the 90/10 Rule during the check exchange arrangement, as evidence by Mary Goza's e-mail describing the need to ensure compliance with the 90/10 Rule. (doc. 36, ¶ 108). But the Plaintiffs do not allege that BARBRI was aware of how Infilaw or any Defendant Institution calculated 90/10 Rates each year or even what 90/10 Rates any Defendant Institution was reporting to the U.S. Department of Education. Nor do the Plaintiffs allege with particularity that BARBRI was aware of the

existence or terms of the PPAs or any requirement or certification that the Defendant Institutions comply with certain statutory or regulatory requirements, let alone the 90/10 Rule. As noted previously, the only "claims" alleged to have been submitted to the government are the PPAs. There are no allegations in the Third Amended Complaint stating when the PPAs were signed and whether Infilaw and the Defendant Institutions had entered into an arrangement with BARBRI before or after the PPAs were signed.

Having failed to allege BARBRI's knowledge of, or involvement in, the terms or signing of the PPAs, Plaintiffs failed to plead with particularity that BARBRI entered into an arrangement with Infilaw and/or the Defendant Institutions to defraud the government.

6. *Plaintiffs fail to adequately allege that BARBRI had the requisite scienter.*

A False Claims Act relator must demonstrate that the person responsible for making the claims for payment acted with knowledge that the claim was false, acted in deliberate ignorance of the falsity of the claim, or acted in reckless disregard of the truth or falsity of the claim. *See United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 996-97 (9th Cir. 2011). In the case of a corporation, if a lower level employee violates a regulation, False Claims Act liability does not attach unless that employee knows that he or she is causing the submission of a false claim. As the court noted in *Corinthian,*

> The Complaint fails to allege that the Individual Defendants had any role in making a false statement to the United States government. While it does assert that the individuals monitored Corinthian's recruiter compensation practices, it does not allege that the Individual Defendants participated in certifying HEA compliance to the DOE for the purpose of receiving federal funds.

*Id*. at 997-998. Therefore, if a lower level employee is not involved in, or aware of, the requirements involved in submitting a claim, he or she cannot be held liable for the submission of a false claim.

This same rationale applies to a conspiracy claim, as there is no support in the False Claims Act for imposing a less stringent scienter standard on a conspirator than on the party that actually submits the claim. Plaintiffs fail to allege any facts regarding Mary Goza, such as her position with BARBRI or responsibilities with respect to any arrangement between BARBRI and the Defendant Institutions or Infilaw, to indicate that she had any role in a Defendant Institution submitting a PPA or any other claim or certification of compliance. Nor do Plaintiffs allege any such facts as to any other BARBRI employee. Plaintiffs therefore fail to allege that BARBRI had the requisite scienter to violate the False Claims Act.

*7. Plaintiffs fail to adequately allege materiality.*

The Supreme Court's recent opinion in *Universal Health Servs., Inc. v. United States ex rel. Escobar*, ––– U.S. ––––, 136 S.Ct. 1989, 2016 WL 3317565 (2016) ("*Escobar*") specifically noted that relators must plead facts in compliance with FRCP 9(b) to support allegations that an alleged violation is material to the government's decision to pay. *Escobar* at 2004 n.6. The *Escobar* court emphasized that the materiality standard is "demanding." *Id.* at 2003.

As discussed above, Plaintiffs failed to plead with particularity that any Defendant Institution would have reported failing 90/10 Rates in two consecutive fiscal years as a result of the check exchange arrangement with BARBRI. Plaintiffs therefore failed to adequately allege that any conduct of BARBRI was material, as no Defendant Institution would have lost its institutional eligibility pursuant to 20 U.S.C. § 1094(d)(2)(A). Even if Plaintiffs had adequately alleged that any Defendant Institution would have reported a failing 90/10 Rate in one fiscal year but for the check exchange arrangement with BARBRI, which they did not, they still would have failed to allege that the arrangement was material to the government's decision to pay as the applicable statute and implementing regulations specifically allow institutions to continue

participating in the Title IV Programs unless they have failing 90/10 Rates in two consecutive years. 20 U.S.C. § 1094(d)(2); 34 C.F.R. § 668.28(c).

The Third Amended Complaint alleges that BARBRI was involved in a conspiracy to inflate, manipulate, or falsify 90/10 Rates, but these allegations are tied to the Title IV eligibility of the Defendant Institutions. (doc. 36, ¶ 96). The Third Amended Complaint also alleges that Infilaw and the Defendant Institutions, but not BARBRI, discussed "that it would be beneficial for the statistics to appear as though revenue was split 80/20, so that the government would not become suspicious and begin an investigation into actual compliance." (doc. 36, ¶ 44). Given the shotgun nature of the Third Amended Complaint, BARBRI is unsure of whether Plaintiffs are claiming that its alleged involvement in a conspiracy violated the False Claims Act even if the purpose of the conspiracy was to avoid regulatory scrutiny rather than incurring and reporting a failing 90/10 Rate.

To the extent Plaintiffs do so allege, this theory is inconsistent with how the Eleventh Circuit has evaluated allegations of manipulating 90/10 Rates. *See, e.g., Urquilla-Diaz* at 1056. Plaintiffs have failed to allege with particularity that the manipulation of a 90/10 Rate unrelated to whether a Defendant Institution reported a passing 90/10 Rate (i.e. to avoid regulatory scrutiny) would meet the demanding materiality standard set forth in *Escobar*. The *Escobar* court provided examples of facts that support an inference or non-inference of materiality, such as whether the government consistently refuses to pay, or continues to pay, claims when it is aware of a particular regulatory violation. *Escobar* at 2003-04. Plaintiffs have failed to allege any facts to support an allegation that minor manipulations of the 90/10 Rate that do not "move the needle" are nevertheless material to the government's decision to pay.

Having failed to allege that any Defendant Institution would have reported a failing 90/10 Rate for two consecutive years, or that the government would refuse to pay claims if it was aware of manipulation of 90/10 percentages that did not meaningfully affect a Defendant Institution's Title IV eligibility, Plaintiffs failed to plead with particularity that BARBRI's alleged conspiracy with Infilaw and/or the Defendant Institutions was material to the government's decision to pay.

## III. Conclusion

WHEREFORE, Defendant BARBRI respectfully requests that this Honorable Court grant its Motion to Dismiss and dismiss Count III for failure to state a claim against BARBRI.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 3.01(j), Defendant requests the opportunity to present oral argument in support of the instant motion. Defendant estimates the time required for oral argument is one hour.

Dated: September 21, 2018

Respectfully submitted:

**GUNSTER, YOAKLEY & STEWART, P.A.**

By /s/ David M. Wells

David M. Wells
Florida Bar Number 0309291
Lauren V. Purdy
Florida Bar Number 93943
225 Water Street, Suite 1750
Jacksonville, FL 32202
(904) 354-1980 phone
(904) 354-2170 facsimile
Primary email: dwells@gunster.com
Primary email: lpurdy@gunster.com
Secondary email: dculmer@gunster.com
Secondary email: aarmstrong@gunster.com
*Attorneys for Defendant BARBRI*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of September, 2018, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

Sean A. Woods
Robert T. Mills
MILLS + WOODS LAW PLLC
5055 North 12th Street, Suite 101
Phoenix, Arizona 85014
Phone: (480) 999-4556
Fax: (480) 999-4750
Email: docket@millsandwoods.com

-and-

Jesse L. Hoyer
JAMES HOYER, P.A.
2801 West Busch Boulevard
Suite 200
Tampa, Florida 33618
Phone: (813) 375-3700
Fax: (813) 375-3710
Email: jlhoyer@jameshoyer.com

*Attorneys for Relator Paula C. Lorona and Reid Potter*

/s/ *Lauren V. Purdy*
Lauren V. Purdy

JAX_ACTIVE 4044703.1